1   MORGAN, LEWIS & BOCKIUS LLP
    Eric Meckley, Bar No. 168181
2   eric.meckley@morganlewis.com
    Brian D. Berry, Bar No. 229893
3   brian.berry@morganlewis.com
    Kassia Stephenson, Bar No. 336175
4   kassia.stephenson@morganlewis.com
    One Market, Spear Street Tower
5   San Francisco, CA  94105-1596
    Tel:    +1.415.442.1000
6   Fax:    +1.415.442.1001

7   MORGAN, LEWIS & BOCKIUS LLP
    Ashlee N. Cherry, Bar No. 312731
8   ashlee.cherry@morganlewis.com
    1400 Page Mill Road
9   Palo Alto, CA  94304
    Tel:    +1.650.843.4000
10  Fax:    +1.650.843.4001

11  Attorneys for Defendant
    TWITTER, INC. and X CORP.
12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                 SAN FRANCISCO DIVISION

16

17  EITAN ADLER, on behalf of himself and all          Case No. 3:23-CV-01788-JD
    others similarly situated,
18                                                      **DEFENDANTS TWITTER, INC. AND
                    Plaintiff,                          X CORP.'S NOTICE OF MOTION
19                                                      AND MOTION TO COMPEL
           vs.                                          INDIVIDUAL ARBITRATION AND
20                                                      DISMISS CLASS AND
    TWITTER, INC. and X CORP.,                          REPRESENTATIVE PAGA CLAIMS;
21                                                      MEMORANDUM OF POINTS AND
                    Defendants.                         AUTHORITIES**
22
                                                        Date:      June 22, 2023
23                                                      Time:      10:00 a.m.
                                                        Judge:     Honorable James Donato
24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

1    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2    **PLEASE TAKE NOTICE** that on June 22, 2023, at 10:00 a.m. or as soon thereafter as

3  may be heard in Courtroom 11 of this Court, located at 450 Golden Gate Avenue, San Francisco,

4  California 94102, Defendants Twitter, Inc. and X Corp. (collectively "Defendants" or "Twitter"),

5  will and hereby do move this Court for an Order compelling Plaintiff Eitan Adler to arbitrate the

6  claims alleged in this action on an individual basis and to strike and dismiss Plaintiff's alleged

7  class action and representative PAGA claims. Plaintiff agreed to arbitrate any employment-

8  related disputes with Twitter on an individual basis only, and he did not timely opt out of his

9  arbitration agreement with Twitter. In contravention of his arbitration agreement, Plaintiff has

10  alleged employment-related claims in a putative class action against Twitter. Because Plaintiff

11  has refused to abide by his arbitration agreement, Twitter must seek relief from the Court. The

12  arbitration agreement, including its class action and PAGA waiver provision, is valid, binding,

13  and legally enforceable under the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1 *et seq.*; *Epic*

14  *Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1616, 1632 (2018). As a result, the Court should compel

15  Plaintiff to arbitrate his claims on an individual basis, and the Court should strike and/or dismiss

16  his class and representative PAGA claims.

17    This Motion is based on this Notice of Motion and Motion, the accompanying

18  Memorandum of Points and Authorities, the Declaration of Fidelma Callaghan and all exhibits

19  attached thereto, the evidence to which the Court may take judicial notice, the record in this

20  action, and any other evidence as may be presented by Twitter at or before the hearing on this

21  Motion.

22  Dated: May 12, 2023                    MORGAN, LEWIS & BOCKIUS LLP

23
                                          By   */s/ Eric Meckley*
24                                             Eric Meckley

25                                          Attorneys for Defendants
                                           TWITTER, INC. and X CORP.
26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II. RELEVANT FACTUAL BACKGROUND ................................................................... 1

    A.  Plaintiff Entered Into a Binding Dispute Resolution Agreement with
        Twitter. ................................................................................................................ 1

    B.  The Relevant Terms of the Agreement. ............................................................. 3

    C.  Despite His Agreement to Arbitrate on an Individual Basis Only, Plaintiff
        Filed a Putative Class Action in This Court. ...................................................... 4

III. ARGUMENT ................................................................................................................ 4

    A.  The Court Must Compel Plaintiff to Arbitration on an Individual Basis. ............... 5

        1.  Plaintiff Assented to the Agreement By Signing It and Remaining
            Employed for 30 Days Without Opting Out. ................................................. 5

        2.  The Agreement Encompasses the Claims Alleged in the FAC. ................. 7

        3.  The Class Action Waiver is Enforceable. ...................................................... 8

        4.  The Delegation Clause Is Enforceable ......................................................... 9

    B.  The Agreement Is Enforceable ............................................................................. 10

        1.  The Agreement Is Not Procedurally Unconscionable ............................... 10

        2.  The Agreement Is Not Substantively Unconscionable. ............................. 11

    C.  Plaintiff's Obligation to Arbitrate His Individual PAGA Claim is
        Enforceable. ......................................................................................................... 12

    D.  The Court Should Dismiss This Action After Compelling Arbitration. ............... 13

    E.  In The Alternative, The Court Should Stay the Representative PAGA
        Claim. ................................................................................................................... 15

IV. CONCLUSION ............................................................................................................ 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*24 Hour Fitness, Inc. v. Superior Court*,
    66 Cal.App.4th 1199 (1998)...................................................................................................... 10

5

6

*Allen v. McCurry*,
    449 U.S. 90 (1980)................................................................................................................. 14

7

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)................................................................................................................ 8

8

9

*Armendariz v. Foundation Health Psychare Services, Inc.*,
    24 Cal. 4th 83 (2000)................................................................................................ 10, 11, 12

10

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)................................................................................................................ 8

11

12

*Baltazar v. Forever 21, Inc.*,
    62 Cal. 4th 1237 (2016) ....................................................................................................... 10

13

14

*Beckman v. Zuffa LLC*,
    No. CV215570MWFAGRX, 2021 WL 5445464 (C.D. Cal. Nov. 15, 2021) ........................ 6

15

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015)............................................................................................... 4

16

17

*Callahan v. Paychex North America Inc.*,
    No. 21-CV-05670-CRB, 2022 WL 11902205 (N.D. Cal. Oct. 20, 2022) ............................ 13

18

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000)............................................................................................ 5, 7

19

20

*Circuit City Stores v. Ahmed*,
    283 F.3d 1198 (9th Cir. 2002)............................................................................................. 10

21

22

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003)................................................................................................................. 4

23

24

*Cornet v. Twitter, Inc.*,
    No. 3:22-CV-06857-JD, 2023 WL 187498 (N.D. Cal. Jan. 13, 2023) ................................. 1

25

*Davis v. Nordstrom, Inc.*,
    755 F.3d 1089 (9th Cir. 2014)............................................................................................... 5

26

27

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)............................................................................................................... 5

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

*Dean Witter Reynolds, Inc. v. Superior Court*,
    211 Cal.App.3d 758 (1989) ................................................................................................ 10

*Epic Systems Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ................................................................................................ 5, 8

*Espejo v. S. California Permanente Med. Grp.*,
    246 Cal.App.4th 1047 (2016) .............................................................................................. 5

*Ferguson v. Countrywide Credit Industries, Inc.*,
    298 F.3d 778 (9th Cir. 2002) ............................................................................................ 10

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ...................................................................................................... 5, 9

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ............................................................................................................ 10

*Hansber v. Ulta Beauty Cosmetics, LLC*,
    No. 121CV00022AWICDB, 2022 WL 15836627 (E.D. Cal. Nov. 9, 2022) ....................... 13

*Huell v. Bevmo Holdings, LLC, et al.*,
    No. 22CV01394WBSAC, 2023 WL 1823611 (E.D. Cal. Feb. 8, 2023) .............................. 14

*Iskanian v. CLS Transportation Los Angeles, LLC*,
    59 Cal. 4th 348 (2014) .................................................................................................... 12

*Jacobson v. Snap-on Tools Company*,
    No. 15-CV-02141-JD, 2015 WL 8293164 (N.D. Cal. Dec. 9, 2015) (Donato, J.) ............................................................................................................................... 8

*Johnmohammadi v. Bloomingdale's, Inc.*,
    755 F.3d 1072 (9th Cir. 2014) .......................................................................................... 9

*Johnson v. Lowes Home Centers LLC*,
    No. 221CV00087TLNJDP, 2022 WL 4387796 (E.D. Cal. Sept. 22, 2022) ....................... 14

*Jones-Mixon v. Bloomingdale's, Inc.*,
    No. 14-cv-01103-JCS, 2014 WL 2736020 (N.D. Cal. June 11, 2014) ................................ 6

*Kim v. Tinder, Inc.*,
    2018 WL 6694923 (C.D. Cal. July 12, 2018) .................................................................... 4

*Kinney v. United HealthCare Servs., Inc.*,
    70 Cal. App. 4th 1322 (1999) .......................................................................................... 11

*Lacour v. Marshalls of CA, LLC*,
    No. 20-CV-07641-WHO, 2021 WL 1700204 (N.D. Cal. Apr. 29, 2021) ....................... 8, 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

*Lang v. Skytap, Inc.*,
  347 F.Supp.3d 420 (N.D. Cal. 2018) ................................................................................. 10

*Lewis v. UBS Fin. Servs. Inc.*,
  818 F. Supp. 2d 1161 (N.D. Cal. 2011) ................................................................................ 9

*Louis v. Healthsource Global Staffing, Inc.*,
  No. 22-CV-02436-JD, 2022 WL 4960666 (N.D. Cal. Oct. 3, 2022) (Donato, J.) ................... 9

*Marchese v. Shearson Hayden Stone, Inc.*,
  734 F.2d 414 (9th Cir. 1984), *aff'd* 822 F.2d 876 (1987) ..................................................... 7

*Martinez v. Ross Stores, Inc.*,
  No. 18-CV-04636-JD, 2019 WL 4221704 (N.D. Cal. Sept. 5, 2019) (Donato,
  J.) ......................................................................................................................................... 8

*MediVas, LLC v. Marubeni Corp.*,
  741 F.3d 4 (9th Cir. 2014) ................................................................................................... 15

*Mohamed v. Uber Technologies, Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ............................................................................................... 9

*Momot v. Mastro*,
  652 F.3d 982 (9th Cir. 2011) ................................................................................................. 9

*Montana v. United States*,
  440 U.S. 147 (1979) ............................................................................................................ 14

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
  460 U.S. 1 (1983) .................................................................................................................. 7

*Nanavati v. Adecco USA, Inc.*,
  99 F.Supp.3d at 1076 ............................................................................................................ 6

*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*,
  55 Cal. 4th 223 (2012) ........................................................................................................ 10

*Radcliff v. San Diego Gas & Electric Company*,
  No. 20CV1555HMSB, 2022 WL 4229305 (S.D. Cal. Sept. 12, 2022) ................................. 14

*Robinson v. S. Counties Oil Co.*,
  53 Cal. App. 5th 476 (2020)................................................................................................. 15

*Rodriguez v. American Technologies*, Inc.,
  136 Cal.App.4th 1110 (2006)................................................................................................. 4

*Ruiz v. Moss Bros. Auto Grp., Inc.*,
  232 Cal.App.4th 836 (2014).................................................................................................. 6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

*Smith v. Rent-A-Center, Inc.*,
  No. 118CV01351LJOJLT, 2019 WL 1294443 (E.D. Cal. Mar. 21, 2019)...........................5

*Tagliabue v. J.C. Penney Corp., Inc.*,
  No. 1:15-CV-01443-SAB, 2015 WL 8780577 (E.D. Cal. Dec. 15, 2015) .............................6

*Thistlewaite v. United Parcel Service Inc.*,
  No. CV2201753PSG, 2022 WL 17578868 ..........................................................................14

*U.S. v. Sutcliffe*,
  505 F.3d 944 (9th Cir. 2007).................................................................................................4

*United States v. Trotter*,
  478 F.3d 918 (8th Cir. 2007) (per curiam)...........................................................................4

*Villacres v. ABM Industries Inc.*
  189 Cal. App. 4th 562 (2010)..............................................................................................14

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
  871 F.3d 791 (9th Cir. 2017)................................................................................................7

*Williams v. Eaze Sols., Inc.*,
  417 F. Supp. 3d 1233 (N.D. Cal. 2019) (Donato, J.) ...........................................................9

*Zieber v. BLB Res., Inc.*,
  839 F.3d 814 (9th Cir. 2016)...............................................................................................15

**Statutes**

9 U.S.C.A. § 3 ...........................................................................................................................11, 15

9 U.S.C. § 2 ...................................................................................................................................4, 5

Cal. Civ. Code § 1633.7(a) ................................................................................................................6

Cal. Civ. Code § 1633.9 .....................................................................................................................6

Cal. Labor Code § 2699 ...............................................................................................................13, 15

California WARN Act...........................................................................................................................7

Federal Arbitration Act ............................................................................................................. *passim*

Private Attorneys General Act ................................................................................................... *passim*

**Rules**

Fed. R. Evid. 901(a) ...........................................................................................................................6

Fed. R. Evid. 901(b)(4) .......................................................................................................................6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

I.      **INTRODUCTION**

Plaintiff Eitan Adler was not laid off as part of Defendant Twitter, Inc.'s November 4, 2022 reduction in force. Rather, on November 15, 2022, Plaintiff was lawfully terminated for misconduct. Nevertheless, and even though he was unaffected by the reduction in force, Plaintiff has filed a lawsuit against Twitter, Inc. and its successor-in-interest, X Corp. (collectively "Twitter") claiming that the reduction in force was not lawfully administered. Plaintiff's lawsuit, which was filed as a putative class action, disregards Plaintiff's contractual arbitration obligations. On May 30, 2015, Plaintiff signed a valid and enforceable arbitration agreement with a class action and PAGA waiver requiring him to arbitrate all disputes relating to his employment with or termination from Twitter on an individual basis. Plaintiff failed to timely opt out of his arbitration agreement with Twitter – specifically, although he submitted a Dispute Resolution Agreement Opt-Out Form (the "Opt-Out Form"), he did so *after* the 30-day deadline to do so. As a result, Plaintiff is bound to arbitrate his claims against Twitter on an individual basis.

As this Court is aware, the Federal Arbitration Act ("FAA") and applicable United States Supreme Court precedent dictate that where, as here, a plaintiff has entered into an arbitration agreement with a class action and PAGA waiver, their individual claims must be compelled to arbitration and the putative class and representative PAGA claims dismissed. Plaintiff cannot prosecute his claims before this Court because he agreed to binding arbitration, on an individual basis, as the exclusive means to resolve any employment-related disputes. The Court should compel Plaintiff to arbitrate his individual claims, strike and/or dismiss his putative class action and representative PAGA claims and dismiss this action in its entirety.[1]

II.     **RELEVANT FACTUAL BACKGROUND**

A.      **Plaintiff Entered Into a Binding Dispute Resolution Agreement with Twitter.**

When Twitter offers a job to an applicant for an employment position in the United States, a member of the Global People Services team prepares an offer packet in Twitter's internal OWL

---

[1] This Court previously considered the enforceability of the terms and conditions of this same Agreement in *Cornet, et al. v. Twitter, Inc*. *See Cornet v. Twitter, Inc.*, No. 3:22-CV-06857-JD, 2023 WL 187498, at *3 (N.D. Cal. Jan. 13, 2023) (Donato, J.). In that matter, the Court granted Defendant's motion to compel, finding the agreement (and its class action waiver) enforceable.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

system that includes an offer letter, a separate standalone Dispute Resolution Agreement (the "Agreement"), and other documents. Declaration of Fidelma Callaghan ("Callaghan Decl.") ¶ 3. Twitter sends the offer packet to the applicant via the email address provided by the applicant during the application process (or their @twitter.com email address if the offer was made in connection with a conversion from a contractor role to an employee position). *Id.* An applicant's offer letter explains the steps the applicant must take to accept the offer, including signing the offer letter and the Agreement (as well as other documents in the offer packet) and returning the signed documents to Twitter on or before the date on which the offer expires. *Id.* ¶ 7, Exh. A.

When an applicant receives an electronic link to an offer letter and clicks on the link, the internet-based Adobe Sign program launches and presents the applicant with the complete offer packet in PDF format.[2] *Id.* ¶ 5. The program allows the applicant to scroll up and down to review the text of each document on the applicant's computer screen; there is no time limit on this review and the applicant can take as long as desired to read the text of each document. *Id.* The program also identifies the portions of the documents that require an applicant's signature or initials, and the program allows the applicant to apply his or her electronic signature or initials via their choice of typing, drawing, or taking a picture of their signature. *Id.* When the applicant has completed reviewing and signing the documents, the applicant is prompted to click a button that finalizes and applies the electronic signatures, which submits the entire executed packet to Twitter, and also provides a hyperlink to the documents for the applicant to download. *Id.* The Adobe Sign system also sends a copy of the signed offer packet to the applicant's email address. *Id.* ¶ 6. When Twitter receives a copy of the signed offer letter and Agreement, Twitter saves the signed documents in the applicant's personnel file. *Id.*

On May 27, 2015, Twitter sent Plaintiff his offer packet. *Id.* ¶ 7, Exh. A. On May 30, 2015, Plaintiff electronically signed his offer letter, and separately signed the Agreement. *Id.* Plaintiff further manifested his assent to the Agreement by remaining employed by Twitter for an additional thirty (30) days without timely submitting an Opt-Out Form. *Id.* ¶ 9. On July 6, 2015, Plaintiff did

---

[2] Adobe Sign is a cloud-based electronic signature application program that allows users to send, sign, track, and manage signature processes using a browser or mobile device.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

2

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

submit an Opt-Out Form, but that was forty (40) days after receiving and signing his Agreement. *Id.*, Exh. B. Plaintiff's Opt-Out Form was not timely or effective, as the Agreement required employees to submit the Opt-Out Form to Twitter's Human Resources Department "within 30 days of the Employee's receipt of this Agreement." *Id.* ¶ 7, Exh. A § 8.

### B.     The Relevant Terms of the Agreement.

Plaintiff's Agreement contains the following material terms:

- Introductory Paragraph. The Agreement contains bolded prefatory language stating that the Agreement "**is a contract and covers important issues relating to your rights**" and advising employees that they are "**free to seek assistance from independent advisors of your choice…**" *Id.* ¶ 7, Exh. A.

- Governing Law. The Agreement expressly states that it is "governed by the [FAA] and evidences a transaction involving commerce." *Id.* § 1.

- Covered Claims. The Agreement states that it applies to "any dispute arising out of or related to Employee's employment with Twitter, Inc. . . . or termination of employment," including "all … state statutory and common law claims." *Id.*

- Commitment to Arbitrate Claims. The Agreement states that it is "intended to apply to the resolution of disputes that otherwise would be resolved in a court of law" and "requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." *Id.*

- Right to Opt Out. The Agreement explicitly states that "**[a]rbitration is not a mandatory condition of Employee's employment at the Company**." *Id*. § 8 (emphasis in original). The Agreement also specifies that an employee may opt out of the Agreement by "submit[ting] a signed and dated statement on a 'Dispute Resolution Agreement Opt Out Form' ('Form') … within 30 days of the Employee's receipt of this Agreement." *Id.* However, if an employee does not timely opt out of the Agreement within 30 days, "continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement…" *Id.*

- Delegation Clause. The Agreement contains a delegation clause that authorizes the arbitrator to resolve all "disputes arising out of or relating to [the] interpretation or application of

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

3

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

1  this Agreement, including the enforceability, revocability or validity of the Agreement or any

2  portion of the Agreement." *Id.* § 1.

3      • <u>Class Action and PAGA Waiver</u>. The Agreement contains a class action and PAGA

4  waiver requiring the parties to "bring any dispute in arbitration on an individual basis only, and not

5  on a class, collective, or private attorney general representative action basis." *Id.* § 5. Further, the

6  Agreement also expressly provides that the enforceability of the class action and PAGA waiver

7  may be determined only by a "court of competent jurisdiction" and not by an arbitrator. *Id.*

8      **C.**    <u>**Despite His Agreement to Arbitrate on an Individual Basis Only, Plaintiff Filed**</u>

9  <u>**a Putative Class Action in This Court.**</u>

10      On April 13, 2023, Plaintiff filed a complaint alleging putative class claims for violation of

11  the federal and California WARN Acts, failure to pay all wages and benefits immediately upon

12  termination, and a claim for civil penalties under the Private Attorneys General Act ("PAGA").

13  ECF No. 1. That same day, Plaintiff filed the operative First Amended Class Action Complaint

14  ("FAC") alleging the same claims. ECF No. 3. Each of these claims arises out of and relates to

15  Plaintiff's employment with Twitter and the termination thereof.

16  **III.**    **ARGUMENT**

17      Where, as here, an arbitration agreement has an express "FAA choice-of-law" provision,

18  the FAA governs the agreement. *Kim v. Tinder, Inc.*, 2018 WL 6694923, at *2 (C.D. Cal. July 12,

19  2018) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1129-1131 (9th Cir. 2015)); *Rodriguez v.*

20  *American Technologies*, Inc., 136 Cal.App.4th 1110, 1122 (2006). Even if the Agreement did not

21  expressly incorporate the FAA, the FAA still applies because Twitter's business plainly

22  "involve[es] commerce." *See* 9 U.S.C. § 2. Indeed, courts broadly construe the FAA's use of the

23  term "involving commerce" to cover any contract affecting interstate commerce to the full extent

24  of Congress's Commerce Clause power. *See Citizens Bank v. Alafabco, Inc*., 539 U.S. 52, 56 (2003)

25  (citation omitted)). As the Ninth Circuit has explained, "the Internet is an instrumentality and

26  channel of interstate commerce." *U.S. v. Sutcliffe*, 505 F.3d 944, 952-53 (9th Cir. 2007) (quoting

27  *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007) (per curiam)). The FAA plainly governs

28  the Agreement at issue here.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

Under the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The US Supreme Court has mandated that arbitration agreements governed by the FAA "must be enforced as written," subject only to generally applicable contract defenses such as fraud, duress, or unconscionability. *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018). The FAA "leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

In deciding a motion to compel arbitration under the FAA, the Court's role is limited to determining whether a valid agreement to arbitrate exists and, if so, whether the agreement encompasses the dispute or claims at issue. If the answer to both questions is "yes" as it is here, then the Court must compel arbitration. *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000).

A.    **The Court Must Compel Plaintiff to Arbitration on an Individual Basis.**

1.    **Plaintiff Assented to the Agreement By Signing It and Remaining Employed for 30 Days Without Opting Out.**

Courts generally apply state-law principles of contract formation when deciding whether parties assented to a contract. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). In California, an agreement to arbitrate may be either express or implied in fact. *Davis*, 755 F.3d at 1093. "A defendant may meet its initial burden to show an agreement to arbitrate by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature to the defendant's motion to compel arbitration." *Smith v. Rent-A-Center, Inc.*, No. 118CV01351LJOJLT, 2019 WL 1294443, at *4 (E.D. Cal. Mar. 21, 2019) (quoting *Espejo v. S. California Permanente Med. Grp.*, 246 Cal.App.4th 1047, 1060 (2016)).

The Uniform Electronic Transaction provides that a "signature may not be denied legal effect or enforceability solely because it is in electronic form[,]" and specifies that "[a] contract may not be denied legal effect or enforceability solely because an electronic record was used in its

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

formation." Cal. Civ. Code § 1633.7(a). A defendant must show by a preponderance of the evidence that the electronic signature on an agreement is attributable to a plaintiff (*i.e.*, that it is more likely than not it was the plaintiff's act that caused the signature to be created). Fed. R. Evid. 901(a); *see, e.g., Beckman v. Zuffa LLC,* No. CV215570MWFAGRX, 2021 WL 5445464, at *4 (C.D. Cal. Nov. 15, 2021) (granting motion to compel arbitration in employment case where the employee affixed electronic signature to the agreement using Adobe Sign). This "may be shown in any manner," including by circumstantial evidence, and it "is not a difficult evidentiary burden to meet." *Ruiz v. Moss Bros. Auto Grp., Inc.*, 232 Cal.App.4th 836, 843-844 (2014) (citing Cal. Civ. Code § 1633.9); *see also Nanavati v. Adecco USA, Inc.*, 99 F.Supp.3d at 1076 (holding that a detailed declaration "easily satisfies Defendant's low burden to authenticate Plaintiff's electronic signature and establish the existence of a valid arbitration agreement"). Fed. R. Evid. 901(b)(4) allows consideration of the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances to authenticate a document." Declarations from company representatives are sufficient to authenticate electronic signatures. *See Nanavati v. Adecco USA, Inc.*, 99 F.Supp.3d 1072, 1076 (N.D. Cal. 2014); *Jones-Mixon v. Bloomingdale's, Inc.*, No. 14-cv-01103-JCS, 2014 WL 2736020, at *4 (N.D. Cal. June 11, 2014). In *Tagliabue v. J.C. Penney Corp., Inc.*, No. 1:15-CV-01443-SAB, 2015 WL 8780577, at *3 (E.D. Cal. Dec. 15, 2015), the plaintiff disputed the validity of his electronic signature on an arbitration agreement. The employer submitted evidence regarding its onboarding system and process for new hires to complete designated steps, including electronically signing an arbitration agreement, to complete the hire process. *Id.* The court in *Tagliabue* found that this evidence, coupled with the fact the plaintiff's electronic signature appeared on other documents presented to him during onboarding, established that the plaintiff more likely than not had signed the agreement. *Id.*; *see also Beckman*, 2021 WL 5445464, at *4.

Here, Plaintiff cannot dispute that he electronically signed his Agreement: his signature appears on the Agreement and his offer letter, and he could not have been hired by Twitter without signing the Agreement. Callaghan Decl. ¶ 7, Exh. A. Plaintiff further manifested his assent to the Agreement by remaining employed at Twitter for 30 days without submitting the Opt-Out Form.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

1    *Id.* § 8 (the Agreement clearly states: "Should an Employee not opt out of this Agreement within

2    30 days of the Employee's receipt of this Agreement, continuing the Employee's employment

3    constitutes mutual acceptance of the terms of this Agreement by Employee and the Company").

4    Although Plaintiff ultimately submitted an Opt-Out Form, he did not do so until July 6, 2015—40

5    days after Plaintiff received the Agreement and 10 days after the deadline to opt out of the

6    Agreement had expired. Plaintiff will likely argue that his Opt-Out Form is valid, even though it

7    was not timely submitted. However, such argument relates to "the enforceability … or validity of

8    the Agreement or any portion of the Agreement" and thus constitutes a threshold issue of

9    arbitrability, an issue that the Agreement expressly delegates to the arbitrator. *Id.* ¶ 7, Exh. A § 1.

10                  **2.       The Agreement Encompasses the Claims Alleged in the FAC.**

11           To determine the scope of an arbitration agreement, the Court must look to the express terms

12   of the parties' agreement. *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,

13   871 F.3d 791, 796 (9th Cir. 2017) (citing *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d

14   1126, 1130 (9th Cir. 2000)). "If the text is plain and unambiguous, that is the end of our analysis in

15   this case because we must rigorously enforce arbitration agreements according to their terms."

16   *United States ex rel. Welch*, 871 F.3d at 796 (citations omitted). A claim is subject to arbitration

17   "unless it may be said with positive assurance that the arbitration clause is not susceptible of an

18   interpretation that covers the asserted dispute." *Marchese v. Shearson Hayden Stone, Inc.*, 734

19   F.2d 414, 419 (9th Cir. 1984), *aff'd* 822 F.2d 876 (1987). "[A]ny doubts concerning the scope of

20   arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v.

21   Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

22           Here, Plaintiff's FAC alleges claims for violations of the federal and California WARN Act,

23   failure to pay all wages owed upon termination, and for civil penalties under PAGA, all of which

24   are premised on Plaintiff's employment with and termination from Twitter and therefore fall

25   squarely within the scope of the Agreement. FAC, pp. 5-6. Plaintiff's WARN Act claims arise from

26   and relate to his alleged layoff; his claim for failure to provide all final pay and accrued benefits

27   immediately upon termination is based on Twitter's alleged failure to remit all sums owed to

28   Plaintiff at the time of his termination; and Plaintiff's PAGA claim is derivative and predicated on

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

his second and third claims for relief. *Id.* Plaintiff cannot dispute that the claims in the FAC are covered by and subject to arbitration under the plain terms of his Agreement.

### 3.    The Class Action Waiver is Enforceable.

Class waivers in arbitration agreements are enforceable under the FAA. Courts must "rigorously enforce" arbitration agreements according to their terms, including terms that "specify *with whom* [the parties] choose to arbitrate their disputes." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (italics and brackets in original) (citations omitted). There is no "entitlement to class proceedings for the vindication of statutory rights." *Id*. at 234. The Supreme Court overruled prior California law barring enforcement of class action waivers. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341-52 (2011). Recognizing that "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings," the Supreme Court held that California law restricting class action waivers was "inconsistent with the FAA." *Id*. at 344. In *Epic Systems Corp. v. Lewis*, 138 S. Ct. at 1632, the Supreme Court confirmed that arbitration agreements in the employment context are no exception to the rule that class waivers are enforceable under the FAA.

Here, Plaintiff expressly waived his right to file or participate in a class action when he entered into the Agreement. Callaghan Decl., ¶ 7, Exh. A § 5. Further, this provision is expressly carved out from the delegation clause and therefore only the Court is authorized to resolve the enforceability of the class action waiver. *Id*.[3]  Because the plain language in the Agreement clearly prohibits arbitration on a class basis, and because such waivers are enforceable as a matter of law, the Court should compel Plaintiff, individually, to submit his claims to arbitration on an individual basis only. *See, e.g., Martinez v. Ross Stores, Inc.,* No. 18-CV-04636-JD, 2019 WL 4221704, at *3 (N.D. Cal. Sept. 5, 2019) (Donato, J.) (acknowledging the validity of class action waiver); *Jacobson v. Snap-on Tools Company*, No. 15-CV-02141-JD, 2015 WL 8293164, at *6 (N.D. Cal. Dec. 9, 2015) (Donato, J.) (enforcing class action waiver and ordering plaintiff to submit his claims to

---

[3] Such a determination should be made in the Court's order compelling Plaintiff's individual claims to arbitration, and not be deferred pending any challenges to the Agreement's enforceability. *See, e.g., Lacour v. Marshalls of CA, LLC*, No. 20-CV-07641-WHO, 2021 WL 1700204, at *6 (N.D. Cal. Apr. 29, 2021) (enforcing the class action waiver while ordering the arbitrator to determine all other issues of enforceability).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

arbitration on an individual basis); *Lacour*, 2021 WL 1700204 at \*6 (striking class claims and compelling individual arbitration).

Further, the Court should exercise its discretion to dismiss this lawsuit given that all of the Plaintiff's individual claims are subject to an arbitration agreement. *See Johnmohammadi v. Bloomingdale's, Inc.,* 755 F.3d 1072, 1074-75 (9th Cir. 2014) ("a district court may either stay the action or dismiss it out right when . . . the court determines that all of the claims raised in the action are subject to arbitration"); *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) (enforcing class action waiver and dismissing lawsuit with prejudice); *Louis v. Healthsource Global Staffing, Inc.,* No. 22-CV-02436-JD, 2022 WL 4960666, at \*3 (N.D. Cal. Oct. 3, 2022) (Donato, J.) (granting a motion to compel arbitration and dismissing the action).

### 4.   The Delegation Clause Is Enforceable

Parties may agree to delegate gateway issues of arbitrability to an arbitrator so long as there is "clear and unmistakable" evidence of their intent to do so. *Momot v. Mastro*, 652 F.3d 982, 987-988 (9th Cir. 2011) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016). Here, Plaintiff's Agreement expressly states that it "is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law," including "disputes arising out of or relating to [the] interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement." Callaghan Decl. ¶ 7, Exh. A § 1.

Because these terms clearly and unmistakably manifest the Parties' intent to delegate "all … disputes" that "otherwise would be resolved in a court of law," expressly including any issues of "interpretation or application" of the Agreement and issues of "enforceability, revocability or validity" to the arbitrator, the Agreement's delegation clause is enforceable. The Court should decide questions of contract formation and enforceability of the class action waiver and defer to the arbitrator questions related to the interpretation, enforceability, and revocability of the Agreement. *See, e.g., Louis v. Healthsource Glob. Staffing, Inc.,* No. 22-CV-02436-JD, 2022 WL 4960666, at \*2 (N.D. Cal. Oct. 3, 2022) (Donato, J.) (enforcing delegation clause); *Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233, 1241 (N.D. Cal. 2019) (Donato, J.) (enforcing delegation clause).

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

9

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B. The Agreement Is Enforceable.

Since Twitter has shown that a valid agreement to arbitrate exists and applies to the claims at issue, Plaintiff bears the burden of proving that the agreement is not valid or enforceable. *Lang v. Skytap, Inc.*, 347 F.Supp.3d 420, 426 (N.D. Cal. 2018); *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 226 (2012). The Agreement can be invalidated only if there is a showing that the agreement is both procedurally and substantively unconscionable. *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 783 (9th Cir. 2002); *see also Armendariz v. Foundation Health Psychare Services, Inc.,* 24 Cal. 4th 83, 114 (2000). "These two elements, however, need not both be present in the same degree." *Ferguson*, 298 F.3d at 783. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Armendariz*, 24 Cal. 4th at 114.)   These issues are delegated to the arbitrator. However, if the Court chooses to address them, it should find that the Agreement is enforceable.

### 1. The Agreement Is Not Procedurally Unconscionable.

Procedural unconscionability refers to "oppression" or "surprise" due to unequal bargaining power that results in no real negotiation and an absence of meaningful choice. *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199, 1213 (1998). The procedural element to unconscionability may arise in connection with adhesion contracts, but the finding of an adhesion contract does not "per se" render an arbitration agreement unenforceable. *See*, *e.g.*, *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245, 1251 (2016) (enforcing arbitration agreement where acceptance was a condition of employment). Further, the U.S. Supreme Court has recognized that "there often will be unequal bargaining power between employers and employees." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). However, "[m]ere inequality in bargaining power" does not render an employee's arbitration agreement unenforceable. *Id.* Further, the "freedom to choose whether or not to enter a contract of adhesion is a factor weighing against a finding of procedural unconscionability." *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal.App.3d 758, 769-771 (1989); *see also Circuit City Stores v. Ahmed*, 283 F.3d 1198, 1199 (9th

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

1    Cir. 2002) (finding no procedural unconscionability, in part, because the plaintiff had an

2    opportunity to opt out of arbitration).

3         Here, the Agreement is not procedurally unconscionable. The Agreement is a standalone

4    document entitled "Dispute Resolution Agreement."  The Agreement has a disclaimer, in bold type,

5    at the top of the first page advising applicants that the Agreement "is a contract and covers important

6    issues relating to your rights" and advising them of their right to "seek assistance from independent

7    advisors" regarding the Agreement. *See* Callaghan Decl., ¶ 7, Exh. A. The Agreement uses plain

8    language to explain the arbitration process and the rights an applicant is waiving by entering into

9    the Agreement. Further, the Agreement expressly states that "[a]rbitration is not a mandatory

10   condition of Employee's employment at the Company" and advises employees of their right to opt

11   out of the Agreement. *Id.* at § 8. There is no evidence of oppression or surprise and, accordingly,

12   Plaintiff cannot demonstrate that the Agreement is procedurally unconscionable.

13                    **2.      The Agreement Is Not Substantively Unconscionable.**

14        Substantive unconscionability "focuses on the terms of the agreement and whether those

15   terms are so one-sided as to shock the conscience."  *Kinney v. United HealthCare Servs., Inc.*, 70

16   Cal. App. 4th 1322, 1330 (1999). The California Supreme Court in *Armendariz* set forth criteria

17   for assessing whether an agreement may be substantively unconscionable. An employment

18   arbitration agreement must provide for the following: (1) a neutral arbitrator, (2) adequate

19   discovery, (3) a written award, (4) the availability of all the types of relief that would otherwise be

20   available in court, (5) payment by the employer of any arbitration fees beyond what the employee

21   would have to pay in court, and (6) include a "modicum of bilaterality."  *Armendariz*, 24 Cal. 4th

22   at 102-14, 117-18. Here, the Agreement satisfies each of these criteria.

23        First, the Agreement provides for the selection of a neutral arbitrator.  Callaghan Decl., ¶ 7,

24   Exh. A § 3. Second, the Agreement provides for discovery sufficient to vindicate Plaintiffs' claims.

25   *Id.* § 5. Third, the Agreement specifically provides for a written, reasoned award. *Id.*, § 7. Fourth,

26   nothing in the Agreement limits the legal rights, remedies, or defenses that would be available in

27   court and provide for all types of relief that otherwise would be available in court. *Id.* Fifth, the

28   Agreement provides that Twitter will pay the arbitrator's fees where required by law. *Id.* § 6.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

1    Finally, the Agreement provides that all parties are mutually required to submit their claims to

2    arbitration. *Id.* § 1.  The Agreement is binding on both Plaintiff and Twitter, thereby satisfying the

3    final *Armendariz* requirement of a "modicum of bilaterality."

4         **C.      Plaintiff's Obligation to Arbitrate His Individual PAGA Claim is Enforceable.**

5              Plaintiff's individual PAGA claim must be compelled to arbitration. In *Viking River*, the

6    United States Supreme Court held that the Federal Arbitration Act preempts the "indivisibility"

7    rule in *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014) "insofar as it

8    precludes division of PAGA actions into individual and non-individual claims through an

9    agreement to arbitrate" and operates to bar an individual PAGA claim from being compelled to

10   arbitration. 142 S. Ct. at 1922-25. As a result, the employer in *Viking River* "was entitled to enforce

11   the agreement insofar as it mandated arbitration of [plaintiff's] individual PAGA claim."  *Id.* at

12   1925.

13             By signing the Agreement, Plaintiff agreed to arbitrate "any dispute arising out of or related

14   to [his] employment with Twitter . . . or termination of employment." Callaghan Decl., ¶ 7, Exh.

15   A. Plaintiff also agreed that he would not bring "a class, collective, or private attorney general

16   representative action."  *Id.*, § 5. These terms plainly encompass an individual PAGA claim based

17   on alleged Labor Code violations that involve Plaintiff individually, require Plaintiff to arbitrate

18   his claim on an individual basis, and preclude him from using a claim-aggregating device like a

19   PAGA representative action to pursue non-individual claims on behalf of another employee or

20   group of employees in arbitration. Under *Viking River*, Plaintiff must be compelled to arbitrate his

21   individual PAGA claim. *See* 142 S. Ct. at 1924-25.

22             Twitter anticipates that Plaintiff will argue that his individual PAGA claim cannot be

23   compelled to arbitration because the Agreement contains a "wholesale" waiver of the right to bring

24   PAGA claims. As *Viking River* explains, while all "PAGA actions are 'representative' in that they

25   are brought by employees acting as representatives . . . of the State," they are also "representative"

26   in a second sense "when they are predicated on code violations sustained by other employees."  *Id.*

27   at 1916. And "when the word 'representative' is used in the second way, it makes sense to

28   distinguish 'individual' PAGA claims, which are premised on Labor Code violations actually

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

1   sustained by the plaintiff, from 'representative' (or perhaps quasi-representative) PAGA claims

2   arising out of events involving other employees." *Id*. The Agreement draws exactly this distinction,

3   requiring arbitration of "individual" claims but not as a class, collective, or PAGA representative

4   claim. Callaghan Decl., ¶ 7, Exh. A, § 5.  Even based on Plaintiff's erroneous characterization of

5   the Agreement containing a wholesale PAGA waiver, the Agreement is still enforceable as to the

6   individual component of the PAGA claim because it has a severability clause. *See Viking River*,

7   142 S. Ct. at 1924-25 (holding that a severability clause entitled employer to enforce the agreement

8   "insofar as it mandated arbitration of [the employee's] individual PAGA claim"); Callaghan Decl.,

9   ¶ 7, Exh. A, § 5 (Section 5 "shall be severable in any case in which … severance is necessary to

10  ensure that the individual action proceeds in arbitration").

### D.   The Court Should Dismiss This Action After Compelling Arbitration.

12          Once a plaintiff's individual PAGA claim has been compelled to arbitration, a court should

13  dismiss the remaining non-individual/representative PAGA claim because "PAGA provides no

14  mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim

15  has been committed to a separate proceeding." *Viking River*, 142 S. Ct. at 1925. "Under PAGA's

16  [statutory] standing requirement, a plaintiff can maintain non-individual PAGA claims in an action

17  only by virtue of also maintaining an individual claim in that action." *Id.* (citing Labor Code

18  Sections 2699(a) and (c), which together only authorize PAGA civil actions "brought by an

19  aggrieved employee on behalf of himself or herself and other current or former employees"). As a

20  result, an employee "lack[s] statutory standing to continue to maintain her non-individual claims in

21  court, and the correct course was to dismiss her remaining claims." *Id.* Federal district courts in

22  California have followed and adopted this holding in *Viking River*, including courts within the

23  Northern District. *See Callahan v. Paychex North America Inc.*, No. 21-CV-05670-CRB, 2022 WL

24  11902205, at *4 (N.D. Cal. Oct. 20, 2022) (granting motion to dismiss Plaintiff's non-individual

25  PAGA claim because "[o]nce the individual PAGA claims are compelled to arbitration—in the

26  absence of any superseding holding by a California court on statutory standing here—the "correct

27  course is to dismiss" the representative PAGA claims"); *see also Hansber v. Ulta Beauty

28  Cosmetics, LLC*, No. 121CV00022AWICDB, 2022 WL 15836627, at *7 (E.D. Cal. Nov. 9, 2022)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

1    (dismissing non-individual PAGA claims because "the Supreme Court's decision in *Viking River*

2    is on point in this matter" and "declining to issue an indefinite stay of months, or possibly years,

3    on the possibility that the California Supreme Court's interpretation of statutory standing will differ

4    from the interpretation articulated in *Viking River*"); *Johnson v. Lowes Home Centers LLC*, No.

5    221CV00087TLNJDP, 2022 WL 4387796, at *4 (E.D. Cal. Sept. 22, 2022) (dismissing non-

6    individual PAGA claims because "[t]he Supreme Court clearly set forth that non-individual PAGA

7    claims should be dismissed once the individual PAGA claim is compelled to arbitration"); *Huell v.

8    Bevmo Holdings, LLC, et al.*, No. 22CV01394WBSAC, 2023 WL 1823611, at *1 (E.D. Cal. Feb.

9    8, 2023) ("plaintiff's non-individual PAGA claims must be dismissed for lack of statutory

10   standing"); *Radcliff v. San Diego Gas & Electric Company*, No. 20CV1555HMSB, 2022 WL

11   4229305, at *4 (S.D. Cal. Sept. 12, 2022) (striking representative PAGA claim from the complaint

12   and compelling the remaining claims to arbitration because the Supreme Court "presented …

13   persuasive authority on the statutory standing issue"). California state trial courts have dismissed

14   representative PAGA claims for similar reasons. *See Thistlewaite v. United Parcel Service Inc.*,

15   No. CV2201753PSG, 2022 WL 17578868, at *3 ("[B]ecause [plaintiff's] individual PAGA claims

16   are committed to a separate arbitration proceeding, [plaintiff] 'lacks statutory standing to continue

17   to maintain her non-individual claims in court, and the correct course is to dismiss her remaining

18   claims").

19        Due process considerations prohibit a plaintiff from pursuing the same claim in two

20   different forums. *See Montana v. United States*, 440 U.S. 147, 153-154 (1979) ("a right, question

21   or fact distinctly put in issue and directly determined. . . cannot be disputed in a subsequent suit

22   between the same parties or their privies…. To preclude parties from contesting matters that they

23   have had a full and fair opportunity to litigate protects their adversaries from the expense and

24   vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial

25   action by minimizing the possibility of inconsistent decisions.") (citations omitted); *Allen v.

26   McCurry*, 449 U.S. 90, 94 (1980) ("a final judgment on the merits of an action precludes the parties

27   or their privies from relitigating issues that were or could have been raised in that action"); *see also*

28   *Villacres v. ABM Industries Inc*. 189 Cal. App. 4th 562, 575 (2010) ("Under the doctrine of [claim

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

14

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD

1  preclusion], a valid, final judgment on the merits is a bar to a subsequent action by parties or their

2  privies on the same cause of action"; applying this doctrine to PAGA claims); *Robinson v. S.*

3  *Counties Oil Co.*, 53 Cal. App. 5th 476, 481 (2020) ("The claim preclusion doctrine, formerly called

4  res judicata, prohibits a second suit between the same parties on the same cause of action.")

5  (quotations omitted).

6     **E.      In The Alternative, The Court Should Stay the Representative PAGA Claim.**

7         Twitter maintains that *Viking River* requires dismissal of Plaintiff's non-individual PAGA

8  claim, a result that is consistent with PAGA's express language that a PAGA civil action can only

9  be pursued if it is an action "brought by an aggrieved employee on behalf of himself or herself *and*

10 other current or former employees . . . ." (Labor Code § 2699(a)), as well as consistent with the

11 decisions from several California federal district courts.

12        If, however, the Court orders arbitration of Plaintiffs' individual PAGA claims but declines

13 to dismiss the remaining non-individual claims, then the Court should stay those claims pending

14 arbitration of Plaintiff's individual PAGA claim. Specifically, if a court compels arbitration, it shall,

15 upon application of a party, stay the action pending completion of the arbitration. 9 U.S.C.A. § 3;

16 *Ziober v. BLB Res., Inc.*, 839 F.3d 814, 817 (9th Cir. 2016) ("Section 3 of the FAA specifically

17 directs federal district courts to stay proceedings and compel arbitration of 'any issue referable to

18 arbitration under an agreement in writing for such arbitration'"); *see also MediVas, LLC v.*

19 *Marubeni Corp.*, 741 F.3d 4 (9th Cir. 2014) (presuming that an order compelling arbitration but

20 not explicitly dismissing the underlying claims stays the action pending completion of arbitration).

21 **IV.    CONCLUSION**

22        The Court should compel arbitration of Plaintiff's individual claims, dismiss Plaintiff's

23 class and non-individual/representative PAGA claims, and dismiss this action in its entirety.

24 Dated: May 12, 2023                    MORGAN, LEWIS & BOCKIUS LLP

25

26                                    By   */s/ Eric Meckley*
                                         _____
27                                       Eric Meckley
                                         Attorneys for Defendant
28                                       TWITTER, INC. and X CORP.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:23-cv-01788-JD