1  MORGAN, LEWIS & BOCKIUS LLP
   Eric Meckley, Bar No. 168181
2  eric.meckley@morganlewis.com
   Brian D. Berry, Bar No. 229893
3  brian.berry@morganlewis.com
   Kassia Stephenson, Bar No. 336175
4  kassia.stephenson@morganlewis.com
   One Market, Spear Street Tower
5  San Francisco, CA  94105-1596
   Tel:    +1.415.442.1000
6  Fax:    +1.415.442.1001

7  MORGAN, LEWIS & BOCKIUS LLP
   Ashlee N. Cherry, Bar No. 312731
8  ashlee.cherry@morganlewis.com
   1400 Page Mill Road
9  Palo Alto, CA  94304
   Tel:    +1.650.843.4000
10  Fax:    +1.650.843.4001

11  Attorneys for Defendant
    TWITTER, INC. and X CORP.
12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                      SAN FRANCISCO DIVISION

16

17  EITAN ADLER, on behalf of himself and all    Case No. 3:23-CV-01788-JD
    others similarly situated,
18                                               **DECLARATION OF FIDELMA**
                    Plaintiff,                   **CALLAGHAN IN SUPPORT OF**
19                                               **DEFENDANTS TWITTER, INC. AND**
            vs.                                  **X CORP.'S MOTION TO COMPEL**
20                                               **INDIVIDUAL ARBITRATION AND**
    TWITTER, INC. and X CORP.,                   **DISMISS CLASS AND**
21                                               **REPRESENTATIVE PAGA CLAIMS**
                    Defendants.
22                                               Date:      June 22, 2023
                                                 Time:      10:00 a.m.
23                                               Judge:     Honorable James Donato

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

                                                        DECLARATION OF
                                                       FIDELMA CALLAGHAN
                                                    CASE NO. 3:23-cv-01788-JD

1

**DECLARATION OF FIDELMA CALLAGHAN**

2      I, Fidelma Callaghan, do hereby state and declare as follows:

3      1.      I have worked at Twitter for almost two years.  Currently, I hold the title of

4  Director of Global People Services.  I have held this position since March 2021.  Prior to that, I

5  worked for another company in a similar capacity.

6      2.      As part of my job duties, I have personal knowledge of Twitter's current processes

7  and practices, and its historical processes and practices dating back at least to September 2017,

8  for onboarding new employees, including how Twitter presents applicants for U.S. positions with

9  an offer letter and a Dispute Resolution Agreement, the process for applicants to review, sign, and

10  submit documentation relating to their prospective employment, and Twitter's record-keeping

11  systems related to the applicant's execution of the offer letter and Dispute Resolution Agreement

12  and submission of a request, if any, to opt out of the Agreement, all of which Twitter maintains in

13  the ordinary course of business.  My knowledge of Twitter's practices is based on information I

14  have learned in the course of my work, including through my review of Twitter documents and

15  my understanding of its systems.  If called to testify regarding the facts set forth in this

16  declaration, I could and would testify competently thereto.

17      3.      Since at least 2015, when Twitter offers a job to an applicant for a position in the

18  United States, a member of Twitter's Global People Services team prepares an offer packet in

19  Twitter's internal OWL system, which is Twitter's system for generating onboarding documents

20  for new employees, including an offer letter and onboarding packet.  When the offer is accepted,

21  the new hire record—which includes the offer letter and onboarding packet—is then transferred

22  to a different system called Workday where an employee file is created. The offer packet includes

23  the applicant's offer letter and a Dispute Resolution Agreement, among other things.  Twitter

24  sends the applicant's offer packet to the applicant using the email address that the applicant

25  provided during the application process, or the employee's @twitter.com email address if the

26  offer packet was generated during the conversion from an independent contractor position to a

27  position as a full-time employee.

28  / / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DECLARATION OF
FIDELMA CALLAGHAN
CASE NO. 3:23-cv-01788-JD

4.      An applicant's offer letter explains the steps the applicant needs to take to accept the offer, which includes signing the offer letter and the other documents in the offer packet, including the Dispute Resolution Agreement, and returning them to Twitter by a specific date on which the offer expires.

5.      Based on my experience and job responsibilities at Twitter, I am familiar with how applicants use the secure electronic signature system to electronically sign documents in the offer packet.  By clicking on a link in an email that the applicant receives, the internet-based Adobe Sign program launches and prompts the applicant to sign the document, allowing the applicant the choice of typing, drawing, or taking a picture of their signature.  The Adobe Sign program then presents the applicant with the complete offer packet in PDF format and allows the applicant to scroll up and down to review the materials on a computer screen.  The program identifies the parts of the documents that require an applicant's signature or initials, and it allows the applicant to apply their electronic signature or initials by clicking on prompts that say "Click to Sign Here" in the parts of the documents with blanks indicating that a signature or initials are required.  When the applicant has completed reviewing and signing the documents, the applicant is prompted to click a button, and then a message pops up that says "you're all set.  You finished signing [document title] document.  We will email the agreement to all parties.  You can also download a copy of what you just signed."  The screen also provides a hyperlink to the document for the employee to download.

6.      Based on my experience and job responsibilities at Twitter, I am familiar with how Twitter receives and maintains executed offer packets from applicants.  After the applicant submits the executed documents through Adobe Sign, an automatic email notification is sent to People Services and the recruiter.  Also, the signed letter is automatically uploaded into Twitter's OWL system.  The Adobe Sign system also sends a copy of the signed offer packet to the applicant's email address.  The OWL system has a "hire sync" feature that refreshes every thirty-minutes and identifies people who have accepted the offer and are ready to onboard.  The feature triggers automatic creation of new Workday employee profiles with the signed documents.

///

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DECLARATION OF
FIDELMA CALLAGHAN
CASE NO. 3:23-cv-01788-JD

7.      I have reviewed the personnel records for Plaintiff Eitan Adler, which contain a signed offer letter and a Dispute Resolution Agreement bearing Adler's signature and dated May 30, 2015.  Attached hereto as **Exhibit A** is a true and correct copy of Adler's signed offer letter and Dispute Resolution Agreement, which are maintained in his personnel records in the ordinary course of business.  I have also reviewed the OWL entries relating to Adler's offer packet and the audit trail recorded to Adobe Sign when Adler completed the offer packet.  Based on my review of those materials, on May 27, 2015, Twitter sent the offer packet to Adler.  Adler's offer packet included a Dispute Resolution Agreement.  On May 30, 2015, Adler signed the documents enclosed in the offer packet, including the Dispute Resolution Agreement, via Adobe Sign.  A PDF copy of the signed offer packet, which included a signed copy of the Dispute Resolution Agreement, was sent to Adler's personal email address.

8.      Based on my experience and job responsibilities at Twitter, I know that Twitter's policy is to allow employees to opt out of Twitters' Dispute Resolution Agreement so long as an employee submits a Dispute Resolution Agreement Opt-Out Form to Human Resources within 30 days of receipt of the Dispute Resolution Agreement.  Dispute Resolution Agreement Opt-Out Forms are kept in an employee's personnel records in the ordinary course of business.

9.      Adler signed the Dispute Resolution Agreement on May 30, 2015.  Adler remained employed at Twitter for more than 30 days after receiving the Dispute Resolution Agreement.  Adler did not submit a Dispute Resolution Agreement Opt-Out Form to Human Resources until July 6, 2015—which was approximately forty (40) days after he received his offer packet and signed his Dispute Resolution Agreement.  A true and correct copy of Adler's Dispute Resolution Agreement Opt-Out Form dated July 6, 2015, is attached hereto as **Exhibit B**.

10.     Based on my experience and job responsibilities at Twitter, I know that as a matter of policy and practice Twitter does not accept Dispute Resolution Agreement Opt-Out Forms that are not timely submitted within the 30-day period.

11.     On January 28, 2019, Marilyn Tom, the former head of US People Operations/Services at the time, erroneously signed the "Confirmation by Human Resources" on Adler's Dispute Resolution Agreement Opt-Out Form, which stated that "the above-mentioned

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DECLARATION OF
FIDELMA CALLAGHAN
CASE NO. 3:23-cv-01788-JD

1  employee submitted this opt-out request form within the thirty (30) day timeline as required by

2  Twitter's Dispute Resolution Agreement…"  Management did not instruct Tom to sign the

3  Confirmation by Human Resources, and she should not have done so given that Adler did not

4  timely submit his Dispute Resolution Opt-Out Form.  Tom's signing of the Confirmation form

5  was an error, not consistent with Company policy, and not authorized.

6       I declare under penalty of perjury under the laws of California and the United States of

7  America that the foregoing is true and correct.  Signed on May 12, 2023, in Dublin, Ireland.

8

9

10  _____

    FIDELMA CALLAGHAN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DECLARATION OF
FIDELMA CALLAGHAN
CASE NO. 3:23-cv-01788-JD

# EXHIBIT A



Eitan Adler

Welcome to the flock!



May 27, 2015

Eltan Adler

███████████████

San Francisco, CA 94103

████████████

Dear Eitan Adler,

Twitter, Inc., a Delaware corporation (the "Company"), is pleased to offer you employment on the following terms:

1. ***Position.***   Your title will be Software Engineer II and you will report at the start of your employment to David Keenan, Sr. Mgr., Software Engineering. You will be a regular, full-time employee.

2. ***Start Date.***   Your employment will commence on 29 June 2015. You will be providing services from the Company's San Francisco, CA location.  (You may be required to travel as one part of your duties.)

3. ***Cash Compensation***. The Company will pay you a gross starting salary at an annualized rate of ████████████████████████████████████, payable in accordance with the Company's standard payroll schedule.  This salary will be subject to adjustment from time to time in accordance with the employee compensation policies then in effect. This is an exempt position, and your salary is intended to cover all hours worked.

4. ***Employee Benefits.***   As a regular employee of the Company, you will be eligible to participate in Company-sponsored benefits in accordance with the terms of the applicable benefit plans.

5. ***Equity Compensation.*** Subject to the approval of the Company's Board of Directors, you will be granted ███████████████████████████ restricted stock units ("RSUs") of the Company.  The RSUs will be subject to the terms and conditions set forth in the Company's 2013 equity plan.  You will vest in 25% of the RSUs on the first year anniversary of the first day of the month following your start date, provided you have been continuously employed by Twitter during that time, and the balance quarterly over

the next three years of continuous service, as described in the equity plan.  Please note that the terms of the Company's equity plans are reviewed periodically, and subject to revision at the Company's sole discretion.

6. ***Employee Invention Assignment and Confidentiality Agreement.***  You will be required, as a condition of your employment with the Company, to sign the Company's standard Employee Invention Assignment and Confidentiality Agreement ("Confidentiality Agreement").  A copy of the Confidentiality Agreement is enclosed with this letter.

7. ***Employment Relationship.***  Employment with the Company is for no specific period of time.  Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause.  This is the full and complete agreement between you and the Company regarding the duration of the employment relationship.  Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures may change from time to time, the "at will" nature of your employment, may only be changed through an express written agreement signed by you and the Company's Chief Executive Officer.

8. ***Outside Activities.***  While you render services to the Company, you will not engage in any other employment, consulting, or other business activity that would create a conflict of interest with the Company, which includes engaging in any work that is competitive in nature.  While you render services to the Company, you also will not assist any person or entity in competing with the Company, in preparing to compete with the Company, or in hiring any employees or consultants of the Company.  In addition, for a period of one (1) year after the termination of your services, you will not solicit either directly or indirectly, any employee of the Company to leave the Company for other employment or assist any person or entity in doing the same.

9. ***Background Check.***  This offer is contingent on successful completion of a background check regarding your employment experience, educational credentials, criminal history and the like.  This offer may be withdrawn in the sole discretion of the Company based on its review of the background check results. Your acceptance of this offer of employment will be complete when you have initiated authorization to perform a background check, as instructed by our Human Resources Department.



10. **Verification of Employability.**  This offer is contingent upon your providing legal proof of your identity and authorization to work in the United States within three (3) days of the commencement of your employment.

11. **Taxes.** All forms of compensation that are subject to income or payroll taxes will be reduced to reflect applicable income tax withholding and payroll taxes.  Any form of compensation that is subject to income or payroll taxes and that is not paid in cash will result in a reduction in cash compensation to reflect applicable income tax withholding and payroll taxes.

12. **Dispute Resolution.**  We sincerely hope that no dispute will arise between us.  If a dispute should arise, it can be resolved through the Company's Dispute Resolution Policy.  A copy of the Dispute Resolution Policy is enclosed with this letter.

13. **Entire Agreement**.  This letter agreement supersedes and replaces any prior agreements, representations or understandings, whether written, oral or implied, between you and the Company.

Please do not make any change in your present living or employment circumstances until all of the conditions to this offer, including successful completion of the background check and, if applicable, acquisition of a visa, have been satisfied.   Any questions regarding your satisfaction of these conditions should be directed to Valerie Wolf at valeriewolf@twitter.com.

**By signing this letter agreement, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.**

We hope that you will accept our offer to join the Company.  To indicate your acceptance of this offer, please initiate the authorization of your background check, and sign and date the enclosed duplicate original of this letter agreement, the enclosed Confidentiality Agreement, and the enclosed Dispute Resolution Policy and return them to Valerie Wolf. This offer will expire if the signed documents are not returned to me by the end of business on May 29th, 2015.



*Very truly yours,*

**Twitter, Inc.**

By _____

Richard Costolo, *Chief Executive Officer*

I have read, understood and accept all the provisions of this offer of employment.

*Eitan Adler*
Eitan Adler (May 30, 2015)
_____

Eitan Adler

May 30, 2015
_____

Date



DISPUTE RESOLUTION AGREEMENT

**This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your sole responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.**

**1. How This Agreement Applies**

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment and survives after the employment relationship terminates. Nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from utilizing the Company's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement.

Except as it otherwise provides, this Agreement also applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims.

**2. Limitations On How This Agreement Applies**

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement.

DISPUTE RESOLUTION AGREEMENT

**3. Selecting The Arbitrator**

The Arbitrator shall be selected by mutual agreement of the Company and the Employee.  Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator. The court shall then appoint an arbitrator, who shall act under this Agreement with the same force and effect as if the parties had selected the arbitrator by mutual agreement. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

**4. Starting The Arbitration**

All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the attention of the Company's Legal Department, Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

**5. How Arbitration Proceedings Are Conducted**

In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

**You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis. Accordingly:**

**(a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver").  The Class Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.**

**(b) There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ("Collective Action Waiver").  The Collective Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a collective action and (2) a civil court of competent jurisdiction finds the Collective Action Waiver is unenforceable. In such instances, the collective action must be litigated in a civil court of competent jurisdiction.**

**(c)  There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action ("Private Attorney General Waiver"). The Private Attorney General Waiver shall be severable from this Agreement in any case in which a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances and where the claim is brought as a private attorney**

DISPUTE RESOLUTION AGREEMENT

**general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.**

Although an Employee will not be retaliated against, disciplined or threatened with discipline as a result of his or her exercising his or her rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective or representative action in any forum, the Company may lawfully seek enforcement of this Agreement and the Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims. Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

The Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

## 6. Paying For The Arbitration

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

## 7. The Arbitration Hearing And Award

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard. Within 30 days of the close of the arbitration hearing, any party will have the right to prepare, serve on the other party and file with the Arbitrator a brief. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

## 8. An Employee's Right To Opt Out Of Arbitration

**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hr@twitter.com. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement.

## DISPUTE RESOLUTION AGREEMENT

**9. Non-Retaliation**

It is against Company policy for any Employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

**10. Enforcement Of This Agreement**

This Agreement is the full and complete agreement relating to the formal resolution of employment-related disputes. Except as stated in paragraph 5, above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration.

**AGREED:**

TWITTER, INC.

**AGREED:**

EMPLOYEE NAME PRINTED       Eitan Adler
_____

EMPLOYEE SIGNATURE       *Eitan Adler*
Eitan Adler (May 30, 2015)
_____

Date:       05/29/2015
_____

# EXHIBIT B

# DISPUTE RESOLUTION AGREEMENT
# OPT-OUT FORM

**EMPLOYEE CONFIRMATION OF OPT-OUT:**

This form confirms that the employee signing below has chosen to opt out of the Twitter Dispute Resoluton Agreement within thirty (30) day period as required by that Agreement.

**I confirm my wish to opt-out of the Twitter Dispute Resolution Agreement:**

_____
Signature

_____
Date        2015-07-06

Eitan    Asler
_____
Employee Printed Name

018682
_____
Employee Number

**CONFIRMATION BY HUMAN RESOURCES:**

I confirm that the above-mentioned employee submitted this opt-out request form within the thirty (30) day timeline as required by Twitter's Dispute Resolution Agreement, and that I returned a copy of this opt-out form to the employee above:

Marilyn Tom
_____
Signature

01/28/19
_____
Date

Marilyn Tom
_____
Printed Name