SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiff Eitan Adler on behalf of
himself and all others similarly situated*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| EITAN ADLER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC., and X CORP.<br><br>Defendants. | Case No. 3:23-cv-01788-JD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER INC. AND X CORP.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS CLASS AND REPRESENTATIVE PAGA CLAIMS** |

# TABLE OF CONTENTS

I.      INTRODUCTION .......................................................................................................... 1

II.     FACTUAL BACKGROUND .......................................................................................... 2

III.    ARGUMENT ................................................................................................................. 4

    A.      The Court Cannot Compel Arbitration Because Adler Did Not Agree to
        Arbitrate His Claims ........................................................................................... 4

    B.      Adler Cannot Be Compelled to Arbitrate His PAGA Claims................................ 8

        1.      The Agreement's PAGA waiver is an unenforceable wholesale
            waiver that the severability clause cannot save. .......................................... 8

        2.      Even if Adler's individual PAGA claim is compelled to arbitration,
            he maintains standing to pursue his representative PAGA claim in
            court. ....................................................................................................... 11

IV.    CONCLUSION............................................................................................................. 14

i

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER INC. AND X CORP.'S MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND DISMISS CLASS AND REPRESENTATIVE PAGA CLAIMS

# TABLE OF AUTHORITIES

**Cases**

*Adolph v. Uber Techs., Inc.*,
  Cal. Supreme Court Case No. S274671, Docket 05/09/2023 ........................................... 13

*Ahlstrom v. DHI MortgageCo., Ltd.*,
  21 F.4th 631 (9th Cir. 2021) ......................................................................................... 1

*Akhter v. Compass Group USA, Inc.*,
  2022 WL 4638635 (S.D.N.Y. Sept. 20, 2022)..................................................................... 5

*Berman v. Freedom Fin. Network, LLC*,
  2018 WL 2865561 (N.D. Cal. June 11, 2018) .................................................................... 8

*Capriole v. Uber Techs., Inc.*,
  460 F. Supp. 3d 919 (N.D. Cal. 2020) ......................................................................... 2, 5

*Dike v. Zara USA*,
  2023 WL 3391427 (N.D. Cal. May 10, 2023) .................................................................. 13

*Dominguez v. Sonesta Int'l Hotels Corp.*,
  2023 WL 25707 (N.D. Cal. Jan. 3, 2023) ...................................................................... 14

*Donovan v. RRL Corp.*,
  26 Cal. 4th 261 (2001) .................................................................................................. 5

*Emmanuel v. Handy Techs., Inc.*,
  442 F. Supp. 3d 385 (D. Mass. 2020) ............................................................................. 8

*Erwin v. Citibank NA*,
  2017 WL 1047575 (S.D. Cal. Mar. 20, 2017) .................................................................... 5

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995).................................................................................................... 4

*Fontana v. Chefs' Warehouse Inc.*,
  2017 WL 2591872 (N.D. Cal. June 15, 2017) ................................................................... 8

*Gabourel v. Luxottica of Am.*,
  2023 WL 3050987 (C.D. Cal. Jan. 27, 2023) ............................................................... 2, 5

*Galarsa v. Dolgen California, LLC*,
  305 Cal. Rptr. 3d 15 (Cal. App. Ct. 2023)................................................................... 9, 13

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010)................................................................................................. 1, 4

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER INC. AND X CORP.'S MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND DISMISS CLASS AND REPRESENTATIVE PAGA CLAIMS

*Green Tree Fin. Corp. v. Bazzle*,
   539 U.S. 444 (2003) ................................................................................ 4

*Gregg v. Uber Techs., Inc.*
   306 Cal. Rptr. 3d 332 (Cal. Ct. App. 2023) ...................................... 13

*Iskanian v. CLS Transp. Los Angeles, LLC*,
   59 Cal. 4th 348 (2014) ................................................................ 9, 10

*Kim v. Reins International California*,
   9 Cal. 5th 73 (Cal App. Ct. 2020) .............................................. 11, 12

*Martinez v. BaronHR, Inc.*,
   51 Cal. App. 5th 962 (2020) ............................................................ 5

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC*,
   2022 WL 10585178 (N.D. Cal. Oct. 18, 2022)................................ 14

*Mendez v. Loanme, Inc.*,
   2020 WL 6044098 (S.D. Cal. Oct. 13, 2020) ................................ 2, 5

*Missouri ex rel. Wabash Ry. v. Pub. Serv. Comm'n*,
   273 U.S. 126 (1927) .......................................................................... 12

*Nickson v. Shemran, Inc.*,
   306 Cal. Rptr. 3d 835 (Cal. Ct. App. 2023) .................................... 13

*O'Connor v. Uber Techs., Inc.*,
   2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) .................................... 6

*Panno v. Russo*,
   186 P.2d 452 (Cal. App. Ct. 1947) .................................................... 8

*Pinnacle Museum Tower Ass'n. v. Pinnacle Mkt. Dev. (US), LLC*,
   55 Cal. 4th 223 (2012) ...................................................................... 5

*Piplack v. In-N-Out Burgers*,
   305 Cal. Rptr. 3d 405 (Cal. Ct. App. 2023) .................................... 13

*Reichart v. Rapid Invs., Inc.*,
   56 F.4th 1220 (9th Cir. 2022) ............................................................ 4

*Sakkab v. Luxottica Retail North America, Inc.*,
   803 F.3d 425 (9th Cir. 2015) ........................................................ 9, 10

*Seifu v. Lyft, Inc.*,
   306 Cal. Rptr. 3d 641 (Cal. Ct. App. 2023) .................................... 13

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER INC. AND X CORP.'S MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND DISMISS CLASS AND REPRESENTATIVE PAGA CLAIMS

*Shams v. Revature LLC*,
    621 F. Supp. 3d 1054 (N.D. Cal. 2022) ............................................................ 13

*Simmons v. Hankey*,
    2017 WL 424850 (C.D. Cal. Jan. 30, 2017) ........................................................ 7

*Viking River Cruises, Inc. v. Moriana*,
    142 S. Ct. 1906 (2022) .............................................................................. passim

**Statutes**

California Civil Code § 3513 ........................................................................... 9

California Labor Code § 201 ........................................................................... 1

California Labor Code § 203 ........................................................................... 1

California Labor Code § 227.3 ......................................................................... 1

California Worker Adjustment and Retraining Notification Act ("California
    WARN Act"),
    Cal. Lab. Code § 1400 *et seq.* ................................................................. 1, 11

Federal Arbitration Act ("FAA"),
    9 U.S.C. § 1 *et seq.* ............................................................................. 9, 10

Private Attorneys General Act ("PAGA"),
    Cal. Lab. Code §§ 2698 *et seq.* ............................................................... passim

Worker Adjustment and Retraining Notification Act ("WARN Act"),
    29 U.S.C. § 2101 *et seq.* ....................................................................... 1, 11

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER INC. AND X CORP.'S MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND DISMISS CLASS AND REPRESENTATIVE PAGA CLAIMS

## I.   INTRODUCTION

This case is brought by Plaintiff Eitan Adler on behalf of individuals who have worked for Defendant Twitter, Inc.[1], challenging the Company's violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act"), and the California WARN Act, Cal. Lab. Code § 1400 *et seq.* (the "California WARN Act"), as well as its failure to provide employees' final pay and benefits on the same day that they were terminated, in violation of the California Labor Code §§ 201, 203, and 227.3. Additionally, Adler brings a claim pursuant to the Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 *et seq.*, on behalf of the state of California and all other similarly situated aggrieved employees.

Defendants now seek to compel Adler's claims to individual arbitration. However, Defendants' arguments lack merit. Adler opted out of Twitter's Arbitration Agreement, and Twitter confirmed that it had accepted his opt-out.[2]

It is for this Court to determine whether there was an agreement between the parties to arbitrate. While some "gateway" questions related to an arbitration agreement may be delegated to the arbitrator, parties can never delegate issues of contract formation to an arbitrator. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010); *Ahlstrom v. DHI MortgageCo., Ltd.*, 21 F.4th 631, 635 (9th Cir. 2021). Moreover, California courts have consistently found that disputes about whether an employee properly opted out of arbitration go to the question of contact formation and therefore are properly analyzed by the court. *See, e.g.*,

---

[1]    In or about March 2023, Twitter merged with X Corp., and as a result Twitter and X Corp. are a single entity. X Corp. has successor liability for Twitter's unlawful acts. Twitter and X Corp. are referred to herein as "Twitter".

[2]    As set forth below, Adler timely requested the necessary opt-out form as directed in the agreement, quickly returned it to Twitter once he received it, and as Twitter concedes, the Company accepted his opt-out form as timely.

In its motion, Twitter claims that its confirmation that Adler properly opted out of arbitration was by "mistake". But the confirmation came from Twitter itself – it cannot disclaim a contract it entered into (namely an agreement that this employee did not have to arbitrate his claims) by claiming that the person who entered the contract on behalf of Twitter was not authorized to do so.

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER INC. AND X CORP.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS CLASS AND REPRESENTATIVE PAGA CLAIMS

*Gabourel v. Luxottica of Am.*, 2023 WL 3050987, at *4 (C.D. Cal. Jan. 27, 2023); *Capriole v. Uber Techs., Inc.*, 460 F. Supp. 3d 919, 972 (N.D. Cal. 2020) (collecting cases); *Mendez v. Loanme, Inc.*, 2020 WL 6044098, at *5 (S.D. Cal. Oct. 13, 2020).

Moreover, regardless of whether Adler opted out of arbitration (which he did), the Court cannot compel his representative PAGA claim to arbitration. First, the Arbitration Agreement's PAGA waiver is an impermissible wholesale waiver of all PAGA claims, and the plain language of the Arbitration Agreement's severability provision does not permit Adler's arbitrable individual PAGA claim to be severed from his non-arbitrable representative PAGA claim. *See Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1924-25 (2022). Second, even if Adler's individual PAGA claim can be severed and compelled to arbitration, he maintains standing to bring representative PAGA claims in court. Multiple California Courts of Appeal have made it clear that the United States Supreme Court's interpretation of California's law of PAGA standing in *Viking River* was erroneous and should not be followed, and that a PAGA plaintiff does not lose standing to pursue representative PAGA claims in court once his or her individual PAGA claims are compelled to arbitration.

As such, Twitter's motion should be denied.

## II.   FACTUAL BACKGROUND

On May 27, 2015, Twitter sent Adler an offer of employment. (Dkt. 14-1 at 8.) Adler accepted the Company's offer of employment on May 30, 2015. (Dkt. 14-1 at 11.) Consistent with the terms of his offer letter, Adler's employment with Twitter began on June 29, 2015. (Ex. A – Adler Decl. ¶¶ 1, 6; Dkt. 14-1 at 8.)

The Company also provided Adler with a copy of the Company's Dispute Resolution Agreement (the "Agreement") on May 27, 2015. (Ex. A – Adler Decl. ¶ 1.) According to the Agreement, an employee may opt out of arbitration by returning a completed Dispute Resolution Agreement Opt Out Form (the "Form") within

thirty (30) days of receiving the Agreement. (Dkt. 14-1 at 14.) The Agreement further directs employees to obtain the Form "from the Company's Human Resources Department at hr@twitter.com." *Id.*

On May 30, 2015, Adler signed the Agreement. (Ex. A – Adler Decl. ¶ 2; Dkt. 14-1 at 15.) However, shortly thereafter he decided to opt out of the Agreement. (Ex. A – Adler Decl. ¶ 3.) Therefore, as directed by the Agreement, on June 11, 2015, Adler emailed Twitter's Human Resources Department at hr@twitter.com to request a copy of the Form. (Ex. A – Adler Decl. ¶ 3; Ex. B – Error Message to Adler dated 6/11/2015.) However, his email was blocked by Twitter's system and therefore was not delivered. (Ex. A – Adler Decl. ¶ 4; Ex. B – Error Message to Adler dated 6/11/2015; Ex. C – Messages between Adler and Palarca at 3.) The Agreement did not provide Adler with any other directions on how to obtain the Form. (Dkt. 14-1 at 14.)

On June 29, 2015, which was more than thirty (30) days after Twitter sent Adler the Agreement, he began his employment with the Company. (Ex. A – Adler Decl. ¶ 6; Dkt. 14-1 at 8.) Within days of starting his employment, Adler alerted Twitter's Human Resources Department of his June 11th request to opt out of arbitration. (Ex. A – Adler Decl. ¶ 7; Ex. C – Messages between Adler and Palarca.) On July 2, 2015, Adler explained to Cheryl Palarca, a member of Twitter's human resources team, that he attempted to obtain a copy of the Form on June 11th by emailing hr@twitter.com, but that his email was rejected by the Company's system. (Ex. A – Adler Decl. ¶ 8; Ex. C – Messages between Adler and Palarca at 3.) Palarca advised him that "[s]ince you were not an employee on 6/11, [the HR System] didn't recognize you." (Ex. A – Adler Decl. ¶ 9; Ex. C – Messages between Adler and Palarca at 3.) She also instructed him to forward her copies of the June 11th emails, which he did. (Ex. A – Adler Decl. ¶ 10; Ex. C – Messages between Adler and Palarca at 3.) On July 6, 2015, Palarca sent Adler a copy of the Form "with the date [Adler] requested the form (6/11/15)" and told him to "re-sign it using the date [Adler] requested the form" and return a completed copy to her, which he did. (Ex. A – Adler Decl. ¶ 11; Ex. C – Messages between Adler and Palarca at 4-5.) Palarca confirmed that

she would "complete the HR side of the form after [Adler] return[ed] it." (Ex. C – Messages between Adler and Palarca at 4.) Twitter accepted Adler's signed Form and placed it in his human resources file. (Ex. C – Messages between Adler and Palarca at 4-5; Dkt. 14-1 at 17.)

The Opt-Out form that Adler signed—and Twitter accepted—states above Adler's signature: "This form confirms that the employee signing below has chosen to opt out of the Twitter Dispute Resolution Agreement within the thirty (30) day period as required by that Agreement." (Dkt. 14-1 at 17.) That same form contains a "Confirmation by Human Resources" section, which was signed by Marilyn Tom, Twitter's head of US People Operations/Services, stating:

> I confirm that the above-mentioned employee submitted this opt-out request form within the thirty (30) day timeline as required by Twitter's Dispute Resolution Agreement, and that I returned a copy of this opt-out form to the employee above[.]

(Dkt. 14-1 at 17.)

## III.   ARGUMENT

### A.  The Court Cannot Compel Arbitration Because Adler Did Not Agree to Arbitrate His Claims

Arbitration is a matter of contract, and as such, a party can only be compelled to arbitrate a dispute it has agreed to submit to arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Accordingly, the Supreme Court has instructed, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock Co.*, 561 U.S. at 299. While parties may delegate certain "gateway" arbitration issues (such as enforceability) to an arbitrator, *see Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003), if a party contests that a valid arbitration agreement exists in the first place, then that is an issue for the court to resolve, *Granite Rock Co.*, 561 U.S. at 300. Moreover, the party seeking to compel arbitration has the burden of proving a valid arbitration agreement exists. *Reichart v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022).

Here, Adler denies that a valid arbitration agreement exists because he opted out of the Agreement. Courts recognize that when a party argues it is not bound by an arbitration agreement because it opted out, that is an issue for the court decide, regardless of whether a delegation provision exists in the arbitration agreement, because it goes to the heart of whether there is an agreement to arbitrate in the first place. *Gabourel*, 2023 WL 3050987, at *4 (finding that question of whether plaintiff opted out of arbitration agreement was appropriately decided by the court); *Akhter v. Compass Group USA, Inc.*, 2022 WL 4638635, at *2 n.1 (S.D.N.Y. Sept. 20, 2022) (finding the issue of whether a party opted out of an arbitration agreement is for the court, not an arbitrator, to resolve); *Capriole*, 460 F. Supp. 3d at 972 (same); *Mendez*, 2020 WL 6044098, at *5 (denying motion to compel arbitration because it was contested whether plaintiff properly opted out of arbitration); *Erwin v. Citibank NA*, 2017 WL 1047575, at *4 (S.D. Cal. Mar. 20, 2017) ("whether or not Plaintiff opted out of the 2015 Arbitration Agreement is dispositive of the first gateway question of arbitrability - it goes to the very heart of whether an agreement to arbitrate exists."). Thus, contrary to Twitter's argument, the Agreement's delegation clause is irrelevant because the question of whether Adler properly opted out of the Agreement is not one of enforceability; rather it is one of contract formation, which only the Court may decide.

Under California law, "'[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.'" *Martinez v. BaronHR, Inc.*, 51 Cal. App. 5th 962, 967 (2020) (quoting *Pinnacle Museum Tower Ass'n. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)). "An essential element of any contract is the consent of the parties, or mutual assent." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270 (2001). In determining whether mutual ascent to a contract exists, courts look to the language of the contract and the actions of the parties. *Gabourel*, 2023 WL 3050987, at *4 (internal citations omitted).

Here, the language of the Agreement and the Parties' actions make it clear that there was not mutual consent to arbitrate. Specifically, according to the Agreement, Adler could opt out of arbitration by requesting the Form from hr@twitter.com and returning it Human Resources

within 30 days. (Dkt. 14-1 at 14.) The Agreement provided no alternatives for how Adler could obtain the Form. *Id.* Therefore, per the clear terms of the Agreement, on June 11, 2015, Adler sent an email to hr@twitter.com requesting a copy of the Form (and thus expressing his intent to opt out of arbitration). (Ex. A – Adler Decl. ¶ 3; Ex. B – Error Message to Adler dated 6/11/2015.) However, because he was not a Twitter employee at the time (and would not become one until June 29, 2015), Twitter's Human Resources service rejected Adler's email. (Ex. A – Adler Decl. ¶ 4; Ex. B – Error Message to Adler dated 6/11/2015; Ex. C – Messages between Adler and Palarca at 3.) Because the Agreement did not identify any other method for obtaining the Form, Adler was forced to wait until after his employment started to obtain one to do so. (Ex. A – Adler Decl. ¶ 5.) Almost immediately upon starting his employment, Adler contacted the Company's Human Resources department to reiterate his objection to the Agreement. (Ex. A – Adler Decl. ¶¶ 6-12; Ex. C – Messages between Adler and Palarca.) Thus, there can be no question that Adler did not consent to arbitration because he followed the clear directives in the Agreement for opting out.

Notwithstanding these facts, Twitter argues that Adler did not opt out of arbitration because he failed to return the Form in a timely manner. However, Twitter's argument ignores the realities of situation, including its own actions in accepting and signing Adler's completed Form. Again, Adler properly requested a copy of the Form on June 11, 2015, well within the 30-day deadline, and could not obtain a copy of the Form until after the 30-day deadline passed solely due to the email settings of Company's Human Resource service not accepting emails from non-employees. (Ex. A – Adler Decl. ¶¶ 3-4, 8-9; Ex. B – Error Message to Adler dated 6/11/2015.) Adler's inability to return the completed Form during the 30-day window solely due to Twitter's own actions cannot be construed as his consenting to arbitration. Indeed, in the past, this Court has held that procedures that make the process of opting out of an arbitration agreement effectively impossible should be modified or set aside. *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, 2013 WL 6407583, at *1, *6-7 (N.D. Cal. Dec. 6, 2013) (ordering modification of "extremely onerous" opt-out provision that provided 30-day opt out period and a single

"unusually burdensome" means of opting out where "[o]ther, less burdensome, means … could credibly have accomplished the same end."). Similarly, here it was effectively impossible for Adler to opt out of Twitter's Arbitration Agreement, even though the agreement allowed an employee to reject the agreement, because Twitter did not or could not accept service of the opt-out form via *the sole opt-out procedure* provided for in the Arbitration Agreement.

Moreover, Twitter itself acknowledged that Adler did not consent to arbitration. To that end, Palarca initially told Adler that his request to opt out was late. (Ex. C - Messages between Adler and Palarca at 2.) However, after Adler explained the situation with his rejected June 11th email, she asked him to forward her a copy of the email. (Ex. A – Adler Decl. ¶¶ 8-10; Ex. C – Messages between Adler and Palarca at 4-5.) Once he did, she provided him with a copy of the Form and instructed him to return a completed copy. (Ex. A – Adler Decl. ¶ 11; Ex. C – Messages between Adler and Palarca at 4-5.) She also stated that she would complete the HR side of the Form when he returned it. (Ex. A – Adler Decl. ¶ 12; Ex. C – Messages between Adler and Palarca at 4-5.) Adler promptly returned the completed Form, and Palarca acknowledged Twitter's acceptance of it. (Ex. A – Adler Decl. ¶ 12; Ex. C – Messages between Adler and Palarca at 4-5.)

Additionally, Marilyn Tom, who was Twitter's head of US People Operations/Services, clearly confirmed Twitter's acceptance of Adler's Form, and by extension, his lack of consent to arbitration, by signing the "Confirmation by Human Resources" section, which explicitly "confirm[s] that the above-mentioned employee [Adler] submitted this opt-out request form within the thirty (30) day timeline as required by Twitter's Dispute Resolution Agreement." (Dkt. 14-1 at 4-5, 17.)

Thus, two members of Twitter's human resources team (including its head of human resources), who had authority to bind the company to pre-employment contracts with new hires, expressly acknowledged that Adler successfully opted out of the Arbitration Agreement. *See, e.g.*, *Simmons v. Hankey*, 2017 WL 424850, at *1-3 (C.D. Cal. Jan. 30, 2017) (Director of Human Resources bound company to arbitration agreement sent to new hire approximately one month

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER INC. AND X CORP.'S MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND DISMISS CLASS AND REPRESENTATIVE PAGA CLAIMS

before he began his employment when she "executed the agreement on behalf of [the company], and placed the fully executed agreement in [the employee's] employment file"); *Fontana v. Chefs' Warehouse Inc.*, 2017 WL 2591872, at *1-2 (N.D. Cal. June 15, 2017) (Human Resources manager's had authority to bind company to arbitration agreement with employee). Twitter cannot simply disavow its prior acts in acknowledging a lack of mutual consent to arbitrate and accepting Adler's opt-out Form. *See, e.g.*, *Panno v. Russo*, 186 P.2d 452, 454 (Cal. App. Ct. 1947) ("[A] party to a contract may by conduct or representation waive the performance of a condition thereof, or be held estopped by such conduct or representations to deny that he has waived such performance.").

In short, the language of the Agreement and the Parties' actions make it clear that Adler did not consent to arbitration – and Twitter confirmed this lack of consent. Therefore, because there was not an agreement to arbitrate, Twitter's motion should be denied.

Alternatively, if the Court has any doubt with respect to the facts concerning the lack of formation of an agreement to arbitrate between Adler and Twitter, the Court cannot decide the issue as a matter of law. *See Berman v. Freedom Fin. Network, LLC*, 2018 WL 2865561, at *2 (N.D. Cal. June 11, 2018) (citations omitted) ("Only when there is no genuine issue of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."). In that case, the Court should order a trial, possibly by jury, on the issue of whether an agreement to arbitrate was made. *See, e.g.*, *Emmanuel v. Handy Techs., Inc.*, 442 F. Supp. 3d 385, 387 (D. Mass. 2020) (discussing findings of fact and conclusions of law from "one-day bench trial limited to the arbitrability of plaintiff's claims").

### B.  Adler Cannot Be Compelled to Arbitrate His PAGA Claims

#### 1.    The Agreement's PAGA waiver is an unenforceable wholesale waiver that the severability clause cannot save.

Not only was there no agreement here to arbitrate, but even if there was, Twitter cannot compel arbitration of Adler's PAGA claims.

8

The Agreement explicitly states, "[t]here will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action ("Private Attorney General Waiver"). (Dkt. 14-1 at 13-14.). [3] Thus, the Agreement purports to waive Adler's right pursue a PAGA representative action and does not distinguish between "individual" and "representative" claims brought under PAGA. *See Galarsa v. Dolgen California, LLC*, 305 Cal. Rptr. 3d 15, 21 (Cal. App. Ct. 2023) (discussing distinction between "'individual' PAGA claims, which are based on Labor Code violations sustained by the plaintiff, [and] 'representative' PAGA claims, which are based on Labor Code violations involving employees other than the plaintiff" in PAGA representative actions) (citing *Viking River*, 142 S. Ct. at 1916).

It is well settled law that such "wholesale" PAGA waivers in arbitration agreements are illegal and unenforceable. *Viking River*, 142 S. Ct. at 1924–25 ("The agreement between Viking and Moriana purported to waive 'representative' PAGA claims. And under our holding, that aspect of *Iskanian* is not preempted by the FAA, so the agreement remains invalid insofar as it is interpreted in that manner."); *see also Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 384-88 (2014); *Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425, 435 (9th Cir. 2015). As the Ninth Circuit explained in *Sakkab*, 803 F.3d at 430, "pre-dispute agreements to waive PAGA claims are unenforceable under California law," because "allowing employees to waive the right to bring PAGA actions would disable one of the primary mechanisms for enforcing the Labor Code," and that "because such an agreement has as its object, . . . indirectly, to exempt [the employer] from responsibility for [its] own . . . violation of law, it is against public policy." *Id.* (citing *Iskanian*, 59 Cal. 4th at 383). Furthermore, enforcing such an agreement would violate California Civil Code § 3513, which "codifies the general principle that

---

[3]     Notably, and lending further support to Plaintiff's argument that questions of contract formation and unconscionability should be decided by the Court rather than an arbitrator, *see supra*, § III(A), the Agreement states that the question of whether the Private Attorney General Waiver is enforceable "may be determined only by a court of competent jurisdiction and not by an arbitrator." (Dkt. 14-1 at 13-14)

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER INC. AND X CORP.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS CLASS AND REPRESENTATIVE PAGA CLAIMS

a law established for a public reason may not be contravened by private agreement." *Id.* at 431. Indeed, "agreements requiring the waiver of PAGA rights would harm the state's interests in enforcing the Labor Code and in receiving the proceeds of civil penalties used to deter violations." *Id.* (quoting *Iskanian*, 59 Cal. 4th at 383). The Ninth Circuit has held that this *Iskanian* rule is a "generally applicable" contract defense, which is not preempted by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq. Id.* at 432-33.

Nevertheless, Twitter argues that the Supreme Court's decision in *Viking River* renders the Arbitration Agreement's wholesale waiver of the right to bring any PAGA claim enforceable because, like the arbitration agreement at issue in *Viking River*, Twitter's Arbitration Agreement contains a severability clause that purportedly allows Adler's arbitrable individual PAGA claim to be severed from his non-arbitrable representative PAGA claim. It is true that the Supreme Court held that the FAA pre-empts *Iskanian*'s "secondary rule" prohibiting the "division of PAGA actions into individual and non-individual claims through an agreement to arbitrate", *Viking River*, 142 S. Ct. at 1924, and that the severability clause in that case "entitled [Viking River] to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim", *id.* at 1925. However, unlike the severability clause at issue in *Viking River*, the severability clause in Twitter's Arbitration Agreement does not clearly indicate that *portions or aspects* of the PAGA waiver that a court deems unenforceable can be severed from an otherwise valid waiver. *See id.* at 1925 ("But the severability clause in the agreement provides that if the waiver provision is invalid in some respect, any 'portion' of the waiver that remains valid must still be enforced in arbitration.'"). Rather, it provides that the Private Attorney General Waiver, which is a wholesale waiver of all PAGA claims, shall be severable *in its entirety* from the agreement "in any case in which a court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable." (Dkt. 14-1 at 13.). "In such instances and where the claim is brought as a private attorney general, such private attorney general claim must be litigated in a civil court of competent jurisdiction." (Dkt. 14-1 at 13-14.)

Thus, the language of the Arbitration Agreement is clear: if the PAGA waiver is unenforceable—and here it is because it waives *all* PAGA claims whether individual or representative—then that clause must be severed in its entirety and the PAGA plaintiff may proceed in court. As such, Adler's PAGA claims cannot be compelled to arbitration and must proceed in court.

**2.      Even if Adler's individual PAGA claim is compelled to arbitration, he maintains standing to pursue his representative PAGA claim in court.**

In the event that this Court concludes that Adler did consent to arbitration, holds that his individual and representative PAGA claims are severable, and compels his individual PAGA claim to arbitration, Adler would still maintain standing to advance his representative PAGA claim in court under California law. The California Supreme Court has made clear that "[t]he plain language of section 2699(c) has only two requirements for PAGA standing." *Kim v. Reins International California*, 9 Cal. 5th 73, 83 (Cal App. Ct. 2020). First, the plaintiff must be an "aggrieved employee"—someone "who was employed by the alleged violator." Second, the plaintiff must be a person "against whom one or more of the alleged violations was committed." *Id.* at 83–84 (quoting Cal. Lab. Code § 2699(c)). There is no dispute here that Adler has standing to pursue PAGA relief under the standard announced in *Kim*; he was an employee of Twitter from June 2015 until his layoff in November 2022, and Twitter did not provide him, like other laid-off employees, with 60 days' advanced written notice of his termination (or pay in lieu of notice) in violation of the federal WARN Act and California WARN Act, or with final pay and benefits on the same day he was terminated in violation of Cal. Lab. Code §§ 201, 203, and 227.3. (Dkt. 3 ¶¶ 3, 15-17.)

The question is whether, in light of *Viking River*, Adler will lose standing to pursue representative PAGA claims on behalf of other aggrieved employees in court if his individual PAGA claim is compelled to arbitration. In *Viking River*, the majority went beyond its general practice of not deciding issues of state law that are not essential to the federal issues presented,

*see, e.g.*, *Missouri ex rel. Wabash Ry. v. Pub. Serv. Comm'n*, 273 U.S. 126, 131 (1927), and opined on what it thought "the lower courts should have done with [the plaintiff's] non-individual claims" once his individual claims were severed and compelled to arbitration, *Viking River*, 142 S. Ct. at 1925. The majority proceeded to express its view that "as we see it, PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding" and that "[w]hen an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public and PAGA does not allow such persons to maintain suit." *Id.* (citing *Kim*, 9 Cal. 5th at 90). The majority's speculation about how California's law of PAGA standing should operate triggered Justice Sotomayor to write a concurrence in which she stated in no uncertain terms that she was joining the five-justice majority only "with th[e] understanding" that "if this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word." *Id.* at 1925 (Sotomayor, J., concurring). Writing separately, Chief Justice Roberts and Justices Barrett and Kavanaugh agreed that the majority's analysis of PAGA standing "addresse[d] disputed state-law questions as well as arguments not pressed or passed upon in this case" and declined to join the majority on that issue. *Id.* at 1926 (Barrett, J., joined by Justice Kavanaugh and the Chief Justice, concurring in part and in the judgment, declining to join Part IV of majority opinion).

Although the Supreme Court made a prediction about how California courts would rule on the issue of California law regarding whether Plaintiffs for whom the individual portion of their PAGA claims are compelled to arbitration can still pursue the *representative* aspect of their claims in court, every California Court of Appeal to address this issue to date has concluded that the Supreme Court guessed wrong. Those courts have repeatedly held that *Kim*'s underlying logic, and PAGA's plain statutory text, legislative history, and purpose, all demonstrate that PAGA plaintiffs do not lose their status as aggrieved employees simply because their employer

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER INC. AND X CORP.'S MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND DISMISS CLASS AND REPRESENTATIVE PAGA CLAIMS

may be able to force them to pursue their claims in two different forums.[4] This issue is now

pending before the California Supreme Court in *Adolph v. Uber Technologies*, and oral argument

was held on May 9, 2023. *Adolph v. Uber Techs., Inc.*, Cal. Supreme Court Case No. S274671,

Docket 05/09/2023.

Thus, if this Court were to find that Adler consented to arbitration, and disagrees with his

argument that the Agreement contains an impermissible wholesale waiver of Adler's PAGA

claims, it should still allow his non-individual, representative PAGA claims to proceed. In the

alternative, the Court should at least stay the matter pending the California Supreme Court's

ruling in *Adolph*, which will be the "last word" on this issue. *See Viking River*, 142 S. Ct. at 1925

(Sotomayor, J., concurring).[5]

---

[4]    *See Nickson v. Shemran, Inc.*, 306 Cal. Rptr. 3d 835, 845 (Cal. Ct. App. 2023) ("Nickson
contends *Viking River*'s interpretation of state law is both not binding and incorrect. … We
conclude Nickson is correct."); *Seifu v. Lyft, Inc.*, 306 Cal. Rptr. 3d 641, 649 (Cal. Ct. App.
2023) ("[T]he requirement that Seifu resolve his individual PAGA claim in a different forum—
arbitration—does not strip him of this standing. This interpretation is consistent with PAGA's
remedial purpose, because revoking an employee's standing to pursue non-individual claims
would 'severely curtail[ ] PAGA's availability to police Labor Code violations.'") (internal
citations omitted); *Gregg v. Uber Techs., Inc.* 306 Cal. Rptr. 3d 332, 344 (Cal. Ct. App. 2023)
("[W]e hold that under California law, an alleged 'aggrieved employee' is not stripped of
standing to assert non-individual PAGA claims in court simply because he or she has been
compelled to arbitrate his or her individual PAGA claim.") (internal citations omitted); *Piplack v.
In-N-Out Burgers*, 305 Cal. Rptr. 3d 405, 413 (Cal. Ct. App. 2023) ("Even though *Viking*
requires the trial court to bifurcate and order individual PAGA claims to arbitration when an
appropriate arbitration agreement exists, the individual PAGA claims in arbitration remain part
of the same lawsuit as the representative claims remaining in court. Thus, plaintiffs are pursuing
a single PAGA action 'on behalf of [themselves] and other current or former employees,' albeit
across two fora."); *Galarsa v. Dolgen*, 305 Cal. Rptr. 3d 15, 25 (Cal. Ct. App. 2023) ("[A]
plaintiff's PAGA standing does not evaporate when an employer chooses to enforce an
arbitration agreement. This interpretation of the term 'aggrieved employee' is consistent with,
rather than contrary to, PAGA's remedial purpose, which PAGA achieves by deputizing
employees to pursue civil penalties on the state's behalf.").

[5]    Federal courts in this District have primarily either disregarded *Viking River* on this issue
or stayed the proceedings pending the California Supreme Court's decision in *Adolph*. *See, e.g.*,
*Shams v. Revature LLC*, 621 F. Supp. 3d 1054, 1059 (N.D. Cal. 2022) (declining to follow
*Viking River* in denying defendant's motion to dismiss non-individual PAGA claims); *Dike v.
Zara USA*, 2023 WL 3391427, at *10 (N.D. Cal. May 10, 2023) (staying non-individual PAGA

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER INC. AND X CORP.'S MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND DISMISS CLASS AND REPRESENTATIVE PAGA CLAIMS

1

## IV.     CONCLUSION

2

3       For the foregoing reasons, the Court should deny Defendants' Motion to Compel

4 Individual Arbitration and Dismiss Class and Representative PAGA Claims. Adler did not

5 consent to arbitration, and Twitter confirmed that he was not bound by an arbitration agreement.

6 Further, the arbitration agreement's purported waiver of PAGA claims is unenforceable, at least

7 with respect to the representative portion of those claims.[6]

8

9                                              Respectfully submitted,

10

11                                              EITAN ADLER, on behalf of himself and all others
                                                 similarly situated,

12                                              By his attorneys,

13

14                                               /s/ Shannon Liss-Riordan
                                                 Shannon Liss-Riordan, SBN 310719

15                                              Thomas Fowler (*pro hac vice* forthcoming)
                                                 LICHTEN & LISS-RIORDAN, P.C.

16                                              729 Boylston Street, Suite 2000
                                                 Boston, MA 02116

17                                              (617) 994-5800
                                                 Email: sliss@llrlaw.com; tfowler@llrlaw.com

18

19 Dated:          June 2, 2023

20

21

22

23

24     _____

25 claims); *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, 2022 WL 10585178, at *12 (N.D. Cal.
   Oct. 18, 2022) (staying non-individual PAGA claims); *Dominguez v. Sonesta Int'l Hotels Corp.*,

26 2023 WL 25707, at *8 (N.D. Cal. Jan. 3, 2023) (staying non-individual PAGA claims).

27 [6]      If the Court disagrees with Plaintiff and concludes that he is bound by the arbitration
   clause and that his claims should be compelled to arbitration in their entirety, the Court should

28 dismiss the case (as Twitter has requested), so as to allow Plaintiff to appeal. (Dkt. 14 at 13-15.)

1
2
3
4

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendant Twitter, Inc. via the CM/ECF system on June 2, 2023.

5
6

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANTS TWITTER INC. AND X CORP.'S MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND DISMISS CLASS AND REPRESENTATIVE PAGA CLAIMS