March 13, 2024

**VIA ECF FILING**

The Honorable James Donato
United States District Court
San Francisco Courthouse
Courtroom 11 – 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:   *Adler v. Twitter, Inc., et al.*, Case No. 3:23-cv-01788-JD

Dear Judge Donato:

      Plaintiff, Eitan Adler, submits this discovery letter under the Civil Local Rules and the Court's standing order on discovery. Despite the parties' ongoing discussions on this topic since last summer, the parties have now reached impasse on Plaintiff's request to take Elon Musk's deposition. Most recently, on February 27, 2024, counsel conferred via Zoom to discuss the issue. (Counsel are located across the United States from one another, making an in-person meeting impractical.) Although Defendants had indicated in the past that they may agree to this deposition, following the parties' February 27th conferral, Defendants have stated that they will not produce Mr. Musk for a deposition. As discovery is scheduled to close in this case in less than one month (on April 12, 2024), Plaintiff now move to compel Mr. Musk's deposition. Plaintiff's counsel (who is based in Boston) will be in San Francisco all next week and is available then to attend an in-person conference if the Court wishes to set one.

      Multi-billionaire Elon Musk purchased Twitter in October 2022. He was immediately focused on cutting the Company's expenses and ultimately reduced the Company's headcount by more than 75%. Twitter used several means to lay off its workers, including traditional acknowledged layoffs and what Plaintiff contends were pretextual terminations (including his own) that were fashioned as "for cause." A number of those pretextual terminations were the result of Mr. Musk ordering the dismissal of all employees who were "disloyal" to him. Plaintiff contends that Mr. Musk ordered these terminations as part of the mass layoffs that he implemented at Twitter shortly after purchasing the company – and thus those employees should have received WARN Act notice[1] – while Twitter contends that these terminations were "for cause" and thus exempt from the WARN Act.

      Plaintiff himself was terminated on November 15, 2022, for "violating company policy", although he was never told what policy he allegedly violated. Twitter did not provide Plaintiff, and many others who were likewise terminated allegedly for cause or performance issues, with 60 days advance written notice as required by the WARN Act.

---

[1]     The federal Worker Adjustment and Retraining Notification Act (the "WARN Act") and, for employees who worked out of California, the California WARN Act, require 60 days advance written notice of mass layoffs.

Plaintiff's counsel has filed more than ten lawsuits (almost all of which, including this one, contain class claims), and nearly 2,000 individual arbitrations on behalf of former Twitter employees who were terminated following Mr. Musk's acquisition of Twitter. The parties have agreed that discovery produced in one matter between Defendants and any individual represented by Plaintiff's counsel can be used in any other matter. It is clear from the discovery Defendants have already produced (as well as publicly available information) that Mr. Musk played a direct and crucial role in setting and implementing the Company's policies and strategies regarding cost-cutting and employee layoffs and terminations following his acquisition of Twitter. Thus, Mr. Musk clearly has first-hand knowledge of the relevant facts that underly the claims at issue in this case (as well as the other cases filed by Plaintiff's counsel).[2]

Defendants contend that it is premature for Plaintiff to depose Mr. Musk and that he is entitled to special treatment during any potential deposition because he is an apex witness. Defendants are wrong. The apex doctrine does not insulate Mr. Musk from being deposed, and it does not mandate that he receive special treatment simply because he has a busy schedule. Moreover, discovery is nearing an end in this case. Plaintiff's counsel have already deposed 3 of the 4 other senior executives who Defendants claimed counsel should depose before seeking Mr. Musk's deposition (and they all generally denied knowledge of relevant facts).

"In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (footnotes and citations omitted). That being said, the party seeking the deposition does not need to prove conclusively that an apex witness definitely has unique knowledge, rather where a witness "may have *any* first-hand knowledge of relevant facts, the deposition should be allowed." *Hunt v. Cont'l Cas. Co.*, 2015 WL 1518067, at *2 (N.D. Cal. Apr. 3, 2015) (emphasis in original) (citations omitted); *Opperman v. Path, Inc.*, 2015 WL 5852962, at *1 (N.D. Cal. Oct. 8, 2015) ("[W]hen an apex witness has personal knowledge of fact relevant to the lawsuit – even if that witness is a corporate president or CEO – she is subject to a deposition."). Likewise, a party is not required to completely exhaust all other potential methods of discovery before deposing a witness. *Hunt*, 2015 WL 1518067, at *2. In short, while a court may exercise its discretion under Fed. R. Civ. P. 26 to limit discovery of an apex witness, the party opposing the deposition has a heavy burden to show why the deposition should be disallowed. *Apple*, 282 F.R.D. at 263.

For example, in *Apple*, 282 F.R.D. at 264-65, the court granted plaintiff's motion to compel the deposition of defendant's chief executive officer because there was evidence that he was at the head of defendant's strategic decisions and policies which formed the basis of plaintiff's claims. Similarly, in *Opperman*, 2015 WL 5852962, at *2, the court granted plaintiff's motion to compel defendant's chief executive officer because he had personal knowledge of relevant facts, and a reasonable inference could be drawn that he personally participated in the decisions at issue in the case. *See also Boston Retirement Sys. v. Uber Techs., Inc.*, 2023 WL

---

[2] Plaintiff's counsel have agreed to depose Mr. Musk for all of their pending actions in one consolidated seven-hour deposition, rather than requiring him to appear for multiple depositions. However, Plaintiff's counsel reserved the right to seek to depose him again upon a showing of "good cause," because Defendants have repeatedly produced relevant documents from witnesses on the day before, the day of, or even after their respective depositions.

6132961, at *2-3 (N.D. Cal. Sept. 19, 2023) (ordering depositions of sixteen apex witnesses including the defendant's CEO and chairman of the board of directors); *In re Apple iPhone Antitrust Litig.*, 2021 WL 485709, at *3-4 (N.D. Cal. Jan. 26, 2021) (granting a seven-hour deposition of Apple's CEO); *LivePerson, Inc. v. [24]7.AI, Inc.*, 2018 WL 1319424, at *2 (N.D. Cal. Mar. 14, 2018) (finding deposition of former CFO was appropriate because he had first-hand knowledge of the company's financial analysis and strategy); *Finisar Corp. v. Nistica Corp.*, 2015 WL 3988132, at *2-3 (N.D. Cal. Jun. 30, 2015) (granting deposition of defendant's CEO because he had first-hand knowledge of relevant facts and other witnesses were unable to testify about asked topics); *Hunt*, 2015 WL 1518067, at *2-3 (ordering deposition of chairman and CEO because he may have first-hand knowledge of relevant facts as a percipient witness).

Here, the evidence produced during discovery shows that Mr. Musk has first-hand knowledge about the relevant facts of this case (as well as the other court cases and arbitrations filed by Plaintiff's counsel against Twitter in the wake of Mr. Musk's acquisition of the Company). Mr. Musk was personally responsible for setting Defendant's policies and strategies after he acquired the company in October 2022. He was adamant about cutting costs and massively reducing the size of Twitter's workforce. As part of his efforts to reduce Twitter's headcount, he demanded that anyone who was perceived to be "disloyal" to him be immediately exited. Likewise, as part of Mr. Musk's overall plan to reduce headcount, employees were immediately terminated for alleged performance issues. Plaintiff contends that these terminations (as well as the admitted layoffs) were all part of the same mass layoff, and thus these individuals, including Plaintiff, should have (but did not) receive WARN notice.

Moreover, Plaintiff has exhausted less intrusive discovery methods of obtaining the relevant discovery. Last summer, Defendants identified James Musk, Andrew Musk, Steve Davis and Ross Nordeen as witnesses with knowledge about Twitter's layoffs. However, during their depositions, these witnesses generally denied knowledge concerning the layoffs and specifically could not answer: (1) whether Elon Musk had plans prior to the closing of the acquisition to lay off employees; (2) the intended size or scope of any layoffs; (3) who made the ultimate decision on which employees to terminate or how the final determination was made (whether as part of an acknowledged RIF or for alleged cause due to supposed insubordination or poor performance); and (4) whether terminated employees were offered severance.[3]

In short, Mr. Musk is a percipient witness, with first-hand, non-redundant, knowledge of the relevant facts. As such, Defendants cannot meet their heavy burden, and Elon Musk should be compelled to sit for a seven-hour deposition.

Respectfully submitted,

*/s/ Shannon Liss-Riordan*
Shannon Liss-Riordan
Counsel for Plaintiff

---

[3] Mr. Nordeen has not been deposed yet. His deposition has been rescheduled several times. After Defendants claimed that James Musk, Andrew Musk, and Steve Davis would also have critical knowledge about these issues, but then they all denied knowledge at their deposition, Plaintiff has serious doubts that Mr. Nordeen will be able to answer all of the questions Plaintiff has that would be within Elon Musk's knowledge.

## **CERTIFICATE OF SERVICE**

      I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendants via the CM/ECF system on March 13, 2024.

                                                /s/ Shannon Liss-Riordan
                                                Shannon Liss-Riordan