May 20, 2024

**VIA ECF**

The Honorable James Donato
United States District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      Re: <u>Adler v. Twitter, Inc. and X Corp.</u>, No. 3:23-cv-1788-JD

Dear Judge Donato:

      Plaintiff Eitan Adler hereby responds to Defendant's letter (Dkt. 56) regarding his assertion of privilege under the National Labor Relations Act ("NLRA") over his communications with other Twitter employees. The Court should deny Twitter's motion.

      Employee communications regarding planned and/or ongoing litigation against a current or former employer constitute protected concerted activity under Section 7 of the NLRA. Indeed, just last month an Administrative Law Judge ("ALJ") at the NLRB ruled that such communications are privileged and may not be sought by employers in civil litigation. <u>See Whole Foods Market, Inc.</u>, Case 01-CA-288032 (N.L.R.B. Div. of Judges Apr. 11, 2024). Since then, the Second Circuit has acknowledged that employee communications can constitute a "protected matter" warranting protection from disclosure in federal court. <u>See Leslie v. Starbucks Corp.</u>, Civ. No. 23-1194-cv, at 18 (2d Cir. May 15, 2024), ECF No. 166-1 (citing <u>Veritas Health Servs., Inc. v. NLRB</u>, 671 F.3d 1267, 1274 (D.C. Cir. 2012) (Kavanagh, J.)).

      Thus, the Court should apply the three-prong balancing test established in <u>In Re Guess?, Inc.</u>, 339 NLRB 432 (2003). Here, that test tilts heavily in favor of protecting the communications from disclosure due to the employees' weighty privacy interests – and Twitter's failure to demonstrate how such communications would be relevant to the issues (and certainly not of such relevance to outweigh the privacy interests in the communications).

**The Guess? Framework Applies to the Communications at Issue**

      In <u>Guess?</u>, the NLRB explained that "[i]t is well settled that Section 7 of the Act gives employees the right to keep confidential their [concerted] activities." <u>See also In Re Dilling Mech. Contractors, Inc.</u>, 357 NLRB 544, 546 (2011). The NLRB set forth a three-part test for determining whether employee communications sought by an employer in discovery should be disclosed. First, the decisionmaker must decide whether the communications are relevant. Second, if they are, the decisionmaker must decide whether the employer has an illegal objective in seeking those communications. Finally, the decisionmaker must engage in a balancing test to determine whether the employer's interest in seeking the communications' disclosure outweighs the employees' confidentiality interests under Section 7 of the NLRA.

      These protections are not limited to communications regarding union organizing activity, but rather all concerted activity by non-managerial employees. <u>See, e.g.</u>, <u>Eastex v. NLRB</u>, 437 U.S. 556, 565 (1978); <u>NLRB v. Washington Aluminum Co.</u>, 370 U.S. 9, 16–17 (1962).

In the recent Whole Foods decision, the ALJ held that the Guess? framework applies to discovery requests seeking disclosure of employee communications regarding civil lawsuits.[1] See Whole Foods, Case 01-CA-288032 at 11-12 ("Here, it is undisputed that the Group Chat requested by Respondent contained employee discussions regarding the Title VII lawsuit, and therefore certainly falls under the definition of protected concerted activity."). In applying the Guess? framework, the ALJ found that the employees' privacy interests in their communications outweighed Whole Foods' interest in seeking their discovery. See id. at 13–14; see also Leslie, Civ. No. 23-1194-cv at 18 (recognizing that employee communications could be protected from disclosure in a district court).

**The Communications at Issue Are of Marginal, if Any, Relevance to This Case**

This case is about two issues: (1) whether Plaintiff and similarly situated employees were entitled to 60 days' notice, or pay in lieu of notice, under the WARN Act when they were terminated, in the midst of thousands of layoffs, in the weeks following Elon Musk's acquisition of Twitter; and (2) whether Plaintiff and similarly situated employees were not properly paid full final pay, benefits, and expense reimbursement on their last day of employment.

The employees' private communications with one another do not meet the test for relevance under FRE 401. Such communications have no bearing on why their employment ended and do not make it any more or less probable that Twitter's proffered reasons for terminating their employment are pretextual, or whether they were simply part of the company's ongoing layoffs (particularly communications that occurred after the employees' employment ended). Nor do they have any relevance to whether the employees received final full pay and reimbursement of expenses under the California Labor Code on the day of their terminations.

**The Employees' Confidentiality Interests Outweigh Any Interest Twitter Has in Seeking Discovery of Their Communications With One Another**

Finally, the employees' confidentiality interests outweigh Twitter's interest in accessing their private communications with one another. As the ALJ acknowledged in Whole Foods, an employee's right to confidentiality in communications with co-workers is "a 'substantial one' because the willingness of employees to engage in protected concerted activity would be 'severely compromised' if they knew employers could discover their identities and the nature of their activities.'" Whole Foods, Case 01-CA-288032 at 14 (citing Guess?, 339 NLRB at 434). That is certainly the case here. Discovery has shown that Elon Musk was personally involved in efforts to reduce Twitter's headcount and that Mr. Musk took retributive action against employees he disagreed with or deemed disloyal (including termination and mocking them

---

[1] The NLRB's charges in Whole Foods stemmed from the same district court case that Twitter cites, Kinzer v. Whole Foods Market, Inc., No. 1:20-cv-11358-ADB (D. Mass. 2021). The ALJ rejected the district court's order. See Whole Foods, Case 01-CA-288032 at 11. While the Kinzer plaintiffs appealed that discovery order, the First Circuit declined to reach the issue on the ground that it did not have jurisdiction, but notably did not hold that no such NLRA privilege exists and in fact left the door open for the plaintiffs to appeal at a later date. See Kinzer v. Whole Foods Market, Inc., 99 F.4th 105, 123–25 (1st Cir. 2024).

publicly before his millions of Twitter followers).[2]  Even former employees would have reasonable cause for concern for their communications to be revealed to him (for fear of such public mocking, or in the event that they may want to work for one of his companies in the future).

Disclosing former employees' confidential communications to Twitter's attorneys and management, and potentially to Musk himself, would be prejudicial to these employees – not to mention that it would be extremely deterring to employees to know that what they reasonably believed were their confidential communications with one another could be revealed to their employer or former employer in later litigation.  These privacy interests should be protected because allowing an employer to peer into private co-worker communications would have a chilling effect on concerted activity.  If employees knew that their employer could gain access to such communications in litigation, employees would be deterred from deciding to pursue litigation against their employer (or even discussing the possibility of pursuing such litigation), and they would be deterred from engaging in the protected communications themselves.  The marginal (if any) relevance of these communications to Twitter's defenses, and whatever interest Twitter might have in impeaching Plaintiff's credibility, simply do not outweigh these confidentiality concerns.

**Plaintiff Has Not Waived Invocation of the NLRA Privilege**

Finally, the Court should reject Twitter's claim that Plaintiff has waived the NLRA privilege.  Twitter has not cited a single case for the proposition that service of a "deficient" privilege log constitutes waiver of an otherwise available privilege.  Even were such case law to exist, the privilege log that Plaintiff served on Twitter in response to its discovery requests is in keeping with those that *both* parties have served in related litigation.  Further, Plaintiff cannot identify "the persons who made or received the communications", as Twitter demands, without disclosing the very information that Plaintiff seeks to protect.  For these reasons, the Court should find that no waiver has occurred.

Sincerely,

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan

---

[2]  See, e.g., Clare Duffy, "Elon Musk publicly mocks Twitter worker with disability who is unsure whether he's been laid off," CNN (Mar. 8, 2023), available at https://www.cnn.com/2023/03/07/tech/elon-musk-twitter-employee-disability/index.html#:~:text=Elon%20Musk%20has%20apologized%20after,my%20misunderstanding%20of%20his%20situation; Irina Ivanova, "Elon Musk got into an argument with an engineer, then publicly fired him," CBS News (Nov. 15, 2022), available at https://www.cbsnews.com/news/elon-musk-twitter-engineer-fired-eric-frohnhoefer/; Donie O'Sullivan, "Former top Twitter official forced to leave home due to threats amid 'Twitter Files' release," CNN (Dec. 12, 2022), available at https://www.cnn.com/2022/12/12/tech/twitter-files-yoel-roth/index.html; Aodhan O'Faolain, "Senior Irish-based Twitter employee wants to sue Elon Musk for defamation," The Irish Times (Jan. 15, 2024), available at https://www.irishtimes.com/crime-law/courts/2024/01/15/senior-twitter-employee-wants-to-sue-elon-musk-for-defamation/.