The Honorable James Donato  June 18, 2024
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Adler v. Twitter, Inc. & X Corp.*, No. 3:23-cv-01788-JD

Honorable Judge Donato:

Pursuant to the Court's Order, Defendant X Corp., on its own behalf and as successor in interest to Twitter, Inc. ("Defendant"), responds to Plaintiff's May 25, 2024 discovery letter concerning the Rule 30(b)(6) deposition of Defendant's designated representative Lauren Wegman. *See* ECF No. 62.  Plaintiff's counsel, who clearly appeared unprepared for the deposition,[1] conducted an improper Rule 30(b)(6) exam for much of the day, asking questions that went far beyond any reasonable interpretation of the ambiguously phrased topics in the deposition notice and even beyond the basic issues in the case.  If the Court is inclined to conclude that Plaintiff's discovery letter has any merit -- which it should not -- Defendant respectfully requests the opportunity to submit relevant excerpts from the deposition transcript for review and/or a hearing with the Court.

### I.   Ms. Wegman Answered the Questions Within the Scope of the Topics.

Plaintiff's assertion that Ms. Wegman "barely answered any questions" is patently false.  *See* Ltr. at 1.  When counsel asked a question that was within the scope of a noticed deposition topic, Ms. Wegman provided a substantive answer.  Specifically, Ms. Wegman *did* testify about Defendant's decisions regarding the employees who would and would not receive WARN notice, *see, e.g.*, Wegman Dep., 22:7-15, 22:25-23:9, 62:14-20, 63:13-17, 64:21-25, 105:2-106:6, 107:10-108:5 (Topics 1 and 2); its efforts to reduce the size and cost of its workforce following Musk's acquisition, *id.* 26:1-20, 29:1-7, 50:4-12, 96:25-97:13, 109:16-110:3 (Topic No. 3); its expense reimbursement policy before and after the acquisition, *id.* 34:13-35:20, 36:17-38:2 (Topic 4); requests for expense reimbursements made by employees who separated after the acquisition, *id.* 38:3-39:10; 112:5-114:22 (Topic 5); expense reimbursements paid to employees who separated after the acquisition, *id.* 38:3-39:10, 112:5-114:22 (Topic 6); the PTO policy before and after the acquisition, *id.* 115:8-120:12 (Topic 7); and the payout of PTO to terminated employees, *id.* 115:8-120:12 (Topic 8).  In short, Ms. Wegman *was* prepared on the actual topics in the notice.

### II.   Counsel Conducted an Improper "Memory Contest."

Plaintiff's counsel repeatedly and improperly used her examination as an improper "memory contest."  *See Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2006 WL 2318803, at *3 (N.D.

---

[1] As just one example, Plaintiff's counsel marked only a few exhibits and did not even have copies of several exhibits.  She simply slid her own laptop across the table to have the witness review materials displayed on her computer screen.  Moreover, Plaintiff's counsel refused Defense counsel's offer to print copies of the exhibits so that Defense counsel could review them, the court reporter could mark copies, and the witness could review actual paper copies as opposed to a rushed glance at Plaintiff's counsel's laptop.

Cal. Aug. 10, 2006); *see also Textile 26 Corp. v. Baldwin Sun, Inc.*, 2017 WL 8231045, at *2 (C.D. Cal. July 21, 2017) ("The deposition is not a memory test; Defendant need not memorize figures that are responsive to the designations."). For example, when counsel asked what changes Defendant made to its expense reimbursement policy after the acquisition, Ms. Wegman referred to an email that had been sent to employees detailing the policy change and asked for the opportunity to review it. *Id.* 35:17-20. Defendant had produced this email in discovery, but Plaintiff's counsel refused to show it to Ms. Wegman and instead challenged her to a memory contest. Counsel appeared to adopt this tactic either because she was unfamiliar with the email (*see* fn. 1 *supra*) or because she sought some tactical advantage, such as eliciting binding testimony about policy details from memory that did not accurately capture the policy changes. *Id.* 35:21-36:5 (rejecting request to show Ms. Wegman the document, instructing her to "tell me what you can tell me as the representative for Twitter and X," and arguing, "We have documents. We're here to get testimony."). Despite Plaintiff counsel's inappropriate tactics, Ms. Wegman still proceeded to testify about the detailed policy changes outlined in the email as best as she could recall from her memory. *Id.* 36:7-37:15.

Similarly, when counsel asked Ms. Wegman whether Defendant provided WARN notice to a specific slate of employees, counsel repeatedly refused Ms. Wegman's requests to review an email that Twitter had produced containing the answer to this question. *Id.* 23:25-24:4 (A: "Would it be possible to take a look at that e-mail?" Q: Well, no. Right now I'm just asking you your knowledge."); *id.* 25:1-6 (A: "I'm not sure I can provide anything else without looking at the e-mail specifically on that piece." Q: "Okay. Well, you have been designated to answer questions . . .").[2] As another example, when asked to state the number of RIFs that Defendant had conducted since the acquisition, Ms. Wegman noted that she would need to consult documents, but counsel again refused to oblige the request. *Compare id.* 22:17-20, 102:8-103:1 (A: "I cannot list all of the RIFs off the top of my head"), *with* Ltr. at 3. As a few other non-exhaustive examples, counsel expected Ms. Wegman to have memorized the names and separation reasons for every employee who had been terminated, which was not a topic identified in the deposition notice and, in any event, no person could have memorized. Wegman Dep. 74:23-75:1; *see also id.* 75:14-20 ("I'm going to list for you various employees . . . please tell me if you know any reasons for their terminations . . ."). Counsel also asked Ms. Wegman to state the amount of Defendant's payroll cost reduction from employees who resigned in response to Musk's "fork in the road" email, *id.* 96:20-98:12, and to state the number of employees who have separated from Defendant and did not receive WARN notice. *Id.* 121:2-7.[3] These and many other questions were improper attempts to conduct a memory contest—not a genuine effort to elicit facts, most of which existed in the documents that Defendant had produced to Plaintiff, but that she either did not bother to review in preparation for the deposition or deliberately withheld for tactical reasons.

### III.   The Questions Exceeded the Scope of the Vague Topics, and Even the Case.

The noticing party must identify topics for a corporate deposition with "reasonable particularity." Fed. R. Civ. P. 30(b)(6); *see also* Standing Order for Discovery in Civil Cases (Donato, J.) ¶ 16 (cautioning that "an overbroad topic burns one of the 10 subject matters and cannot be replaced with a substitute unless the Court so orders."). Most important for the present dispute, "**if the**

---

[2] This exchange rebuts Plaintiff's assertion that Ms. Wegman was unprepared. Ltr. at 2.

[3] These questions were also improper as they were far outside the scope of the noticed topics.

**deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem**." *ChriMar Sys. Inc. v. Cisco Sys. Inc*, 312 F.R.D. 560, 563 (N.D. Cal. 2016) (quoting *Detoy v. City & Cnty. of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000)) (emphasis added).

Here, counsel repeatedly asked questions that far exceeded the scope of the vague topics. With respect to Topic 3 on "efforts to reduce . . . the cost of Twitter's workforce," counsel returned time and again to her unreasonable position that virtually any question about Defendant's workforce was within scope simply because every decision a company makes may have a financial consequence in the form of a cost. Under this rationale, she asked Ms. Wegman question such as "who made the decision" to ask engineers to produce code for review and "how [those] decisions" were made, *id.* 108:19-110:4; who was involved in making any for-cause termination decisions, *id.* 69:2-71:9;[4] and whether there were (non-privileged) discussions about which employees would receive WARN notice. None of those questions was within the scope of the noticed topics.[5]

### IV. Defendant Properly Objected Based Upon Privilege.

Plaintiff argues that Ms. Wegman should have answered questions about the decision to provide WARN notice to the thousands of employees impacted by the November 4th RIF – specifically, "if there were discussions about whether those [11/4 RIF] employees would receive WARN Act notice" and whether any notes or emails exist that address that decision. *See* Ltr. at 2-3 (citing Wegman Dep. 21:24–22:4, 30:11-31:10, 50:18, 51:1-51-6). Not only were these questions invasive of attorney-client privilege (because WARN compliance is clearly a legal issue), but they were indisputably outside the scope of Topics 1 and 2 and irrelevant to the claims in this case, which are limited to those employees who ***did not*** receive WARN notice -- Plaintiff has ***conceded*** employees laid off in the November 4th RIF ***did*** receive WARN notice and ***aren't*** class members.

### V. Plaintiff's Claim of Improper "Coaching" The Witness Is Unfounded.

Defendant properly objected to questions beyond the scope of the noticed topics. *Detoy*, 196 F.R.D. at 367 ("Counsel may note on the record that answers to questions beyond the scope of the Rule 30(b)(6) designation are not intended as the answers of the designating party and do not bind the designating party."). Counsel stated the grounds for each objection without argument. *City of Colton v. Am. Promotional Events, Inc.-W.*, No. CV0501479JFWSSX, 2006 WL 8436703, at *2 (C.D. Cal. June 30, 2006) (counsel "stated the word 'objection' and then followed with the grounds for the objection. … [N]o argument was made and the objections were concisely stated. This procedure was correct."). The *only* time counsel told the witness she could answer if she knew followed a long pause by the witness—not wrongful coaching. The Court should deny the motion.

---

[4] Compare with Plaintiff's assertion that Ms. Wegman was unprepared for this question. Ltr. at 3.

[5] Many of counsel's questions—such as "the process" for selecting employees for the November 4 RIF, *id.* 85:21-86:18, 87:11-20; or whether the company paid "retention bonuses," id. 53:13-58:20—had simply nothing to do with this case, which involves WARN claims. Plaintiff's counsel has multiple cases against X Corp. asserting a variety of claims, and because this was the first Rule 30(b)(6) deposition that counsel conducted, it appears she hoped to obtain beyond-the-scope testimony that she could later argue was binding in those other cases.

Respectfully submitted,

*/s/ Eric Meckley*
Eric Meckley
Counsel for Defendant X CORP., as successor
in interest to TWITTER, INC.

## CERTIFICATE OF SERVICE

I hereby certify that, on June 18, 2024, a true and accurate copy of this document was served on counsel for Plaintiff via the CM/ECF system.

*/s/ Eric Meckley*
Eric Meckley