1  MORGAN, LEWIS & BOCKIUS LLP
   Eric Meckley, Bar No. 168181
2  eric.meckley@morganlewis.com
   Brian D. Berry, Bar No. 229893
3  brian.berry@morganlewis.com
   One Market, Spear Street Tower
4  San Francisco, CA  94105-1596
   Tel:    +1.415.442.1000
5  Fax:    +1.415.442.1001

6  MORGAN, LEWIS & BOCKIUS LLP
   Ashlee N. Cherry, Bar No. 312731
7  ashlee.cherry@morganlewis.com
   Kassia Stephenson, Bar No. 336175
8  kassia.stephenson@morganlewis.com
   1400 Page Mill Road
9  Palo Alto, CA  94304
   Tel:    +1.650.843.4000
10 Fax:    +1.650.843.4001

11 Attorneys for Defendant
   X CORP. AS SUCCESSOR IN INTEREST TO
12 TWITTER, INC.

13

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16

17 EITAN ADLER, on behalf of                | Case No. 3:23-cv-01788-JD
   himself and all others similarly situated, |
18                                           | **REQUEST FOR JUDICIAL NOTICE IN
                                             | SUPPORT OF DEFENDANT'S
19              Plaintiffs,                  | OPPOSITION TO PLAINTIFF'S
                                             | MOTION FOR CLASS
20        v.                                 | CERTIFICATION**

21 TWITTER, INC. and X CORP.,                | Date:      October 10, 2024
                                             | Time:      10:00 a.m.
22              Defendants                   | Judge:     Hon. James Donato

23

24

25

26

27

28

1

## REQUEST FOR JUDICIAL NOTICE

2       In accordance with Federal Rule of Evidence 201, Defendant X Corp., on its own behalf

3  and as successor in interest to Twitter, Inc. ("Defendant" or the "Company"), respectfully

4  requests that this Court take judicial notice of Exhibits 1 through 4 attached to this Request for

5  Judicial Notice ("RJN"), and of Exhibits 10 through 22 to the Declaration of Brian D. Berry (the

6  "Berry Declaration," filed contemporaneously herewith) and referenced in Paragraphs 12 to 24 of

7  the Berry Declaration, all submitted in connection with Defendant's Opposition to Plaintiff's

8  Motion for Class Certification.

9       Rule 201 allows a court to take judicial notice of facts that are "not subject to reasonable

10  dispute" because they are either (1) "generally known within the trial court's territorial

11  jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy

12  cannot reasonably be questioned." Fed. R. Evid. 201(b); *Khoja v. Orexigen Therapeutics, Inc.*,

13  899 F.3d 988, 999 (9th Cir. 2018) ("A court may take judicial notice of matters of public record

14  without converting a motion to dismiss into a motion for summary judgment.") (quoting *Lee v.*

15  *City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).  The Court "must take judicial notice if a

16  party request it and the court is supplied with the necessary information.  Fed. R. Evid.

17  201(c)(2).

18       This Court can take judicial notice of Exhibits 1 and 2 to this RJN, and of Exhibits 10

19  through 22 to the Berry Declaration, because court and administrative orders, filings, and

20  guidance are the type of documents that are properly noticed under Rule 201.  *See Reyn's Pasta*

21  *Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice "of

22  several other pleadings, memoranda, expert reports, etc." from related litigation because they are

23  "matters of public record"); *see also Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007)

24  (recognizing district court "may take notice of proceedings in other courts, both within and

25  without the federal judicial system, if those proceedings have a direct relation to matters at

26  issue."); *Nat'l Union of Healthcare Workers v. Kaiser Found. Health Plan, Inc.*, 13 F. Supp. 3d

27  1044, 1052 (N.D. Cal. 2014) (taking judicial notice of a NLRB advice memorandum and excerpts

28  of the official report of proceedings before the NLRB); *Neilson v. Union Bank of Cal.*, 290 F.

Supp. 2d 1101, 1112-14 (C.D. Cal. 2003) (granting judicial notice of court orders and civil minutes, including the "existence and legal effect of the documents."); *Landwehr v. Murrieta*, 2006 WL 8442749, at *3 (C.D. Cal. Sept. 12, 2006) (taking judicial notice of DFEH charges and Right to Sue notices); *Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union*, 2015 WL 12655707, at *3 (C.D. Cal. Jan. 20, 2015) (taking judicial notice of a decision by a NLRB Administrative Law Judge, and collecting cases).

The Court may take judicial Notice of Exhibits 3 and 4 to this RJN because they are materials published by the California Division of Labor Standards Enforcement ("DLSE"). *See, e.g., Abdullah v. U.S. Sec. Assocs., Inc.,* 731 F.3d 952, 959 n.10 (9th Cir. 2013) (taking judicial notice of several DLSE opinion letters); *Mitchell v. Medtronic, Inc*., 2015 WL 12747824, at *2 (C.D. Cal. Feb. 13, 2015), aff'd, 2017 WL 1056096 (9th Cir. Mar. 21, 2017) (taking judicial notice of excerpts from the DLSE Enforcement Manual).

Accordingly, Defendant hereby requests that this Court take judicial notice of the following documents:

1. **Exhibit 1** to this RJN is a true and correct copy of the Order Re Arbitration (ECF No. 52) filed on January 13, 2023, in *Cornet, et al. v. Twitter, Inc.*, Case No. 3:22-cv-06857-JD, filed in the United States District Court for the Nothern District of California.

2. **Exhibit 2** to this RJN is a true and correct copy of the Order Granting Motion to Compel Arbitration and Granting Motion to Dismiss (ECF No. 35) filed on May 5, 2023, in *Borodaenko, et al. v. Twitter, Inc.*, Case No. 22-cv-07226-HSG, filed in the United States District Court for the Nothern District of California.

3. **Exhibit 3** to this RJN is a true and correct copy of an excerpt of the California Division of Labor Standards and Enforcement ("DLSE"), Waiting Time Penalty FAQs, FAQ No. 4.

4. **Exhibit 4** to this RJN is a true and correct copy of an excerpt of the DLSE Enforcement Manual (revised Dec. 2019), § 4.3.4.

5. **Exhibit 10** to the Berry Declaration is a true and correct copy of former Company employee Jesse Feinman's National Labor Relations Board Charge Against Employer, NLRB

1    Case No. 02-CA-308119, dated December 1, 2022.

2        6.        **Exhibit 11** to the Berry Declaration is a true and correct copy of the NLRB

3    Regional Director's dismissal letter related to Jesse Feinman's National Labor Relations Board

4    Charge Against Employer, NLRB Case No. 02-CA-308119, dated October 4, 2023.

5        7.        **Exhibit 12** to the Berry Declaration is a true and correct copy of excerpts of

6    Charging Party's Statement of Facts and Reasons in Support of Appeal of the Regional Director's

7    Decision, related to Jesse Feinman's National Labor Relations Board Charge Against Employer,

8    NLRB Case No. 02-CA-308119, dated November 3, 2023.

9        8.        **Exhibit 13** to the Berry Declaration is a true and correct copy of the appeal denial

10   letter issued by the NLRB General Counsel related to Jesse Feinman's National Labor Relations

11   Board Charge Against Employer, NLRB Case No. 02-CA-308119, dated December 18, 2023.

12       9.        **Exhibit 14** to the Berry Declaration is a true and correct copy of former Company

13   employee Emmanuel Cornet's National Labor Relations Board Charge Against Employer, NLRB

14   Case No. 02-CA-306745, dated November 7, 2022.

15       10.       **Exhibit 15** to the Berry Declaration is a true and correct copy of the NLRB

16   Regional Director's dismissal letter related to Emmanuel Cornet's National Labor Relations

17   Board Charge Against Employer, NLRB Case No. 02-CA-306745, dated January 23, 2023.

18       11.       **Exhibit 16** to the Berry Declaration is a true and correct copy of excerpts of

19   Charging Party's Statement of Facts and Reasons in Support of Appeal of the Regional Director's

20   Decision, related to Emmanuel Cornet's National Labor Relations Board Charge Against

21   Employer, NLRB Case No. 02-CA-306745, dated February 22, 2023.

22       12.       **Exhibit 17** to the Berry Declaration is a true and correct copy of the appeal denial

23   letter issued by the NLRB General Counsel related to Emmanuel Cornet's National Labor

24   Relations Board Charge Against Employer, NLRB Case No. 02-CA-306745, dated June 13, 2023.

25       13.       **Exhibit 18** to the Berry Declaration is a true and correct copy of Stipulations and

26   Joint Exhibits, dated January 2, 2024, submitted as Joint Exhibit 1 at the January 30 and 31, 2024

27   NLRB merits hearing on former Company employee Yao Yue's NLRB Charge in *X Corp. fka*

28   *Twitter, Inc. and Yao Yue*, NLRB Case No. 20-CA-313470, in which our firm was counsel of

1   record for the Company.

2         14.      **Exhibit 19** to the Berry Declaration is a true and correct copy of Yao Yue's Slack

3   message, dated November 10, 2022, submitted as Joint Exhibit 2 at the January 30 and 31, 2024

4   NLRB merits hearing on Yao Yue's NLRB Charge in *X Corp. fka Twitter, Inc. and Yao Yue*,

5   NLRB Case No. 20-CA-313470.

6         15.      **Exhibit 20** to the Berry Declaration is a true and correct copy of Yao Yue's

7   Tweet, dated November 10, 2022, submitted as Joint Exhibit 3 at the January 30 and 31, 2024

8   NLRB merits hearing on Yao Yue's NLRB Charge in *X Corp. fka Twitter, Inc. and Yao Yue*,

9   NLRB Case No. 20-CA-313470.

10        16.      **Exhibit 21** to the Berry Declaration is a true and correct copy of excerpts from

11  Volume I of the January 30 and 31, 2024 NLRB merits hearing on Yao Yue's NLRB Charge in *X*

12  *Corp. fka Twitter, Inc. and Yao Yue*, NLRB Case No. 20-CA-313470, dated January 30, 2024.

13        17.      **Exhibit 22** to the Berry Declaration is a true and correct copy of excerpts from

14  Volume II of the January 30 and 31, 2024 NLRB merits hearing on Yao Yue's NLRB Charge in

15  *X Corp. fka Twitter, Inc. and Yao Yue*, NLRB Case No. 20-CA-313470, dated January 31, 2024.

16
17  Dated: July 29, 2024                        MORGAN, LEWIS & BOCKIUS LLP

18                                              By:   */s/ Brian D. Berry*
                                                      Eric Meckley
19                                                    Brian D. Berry
                                                      Ashlee Cherry
20                                                    Kassia Stephenson
                                                      Attorneys for Defendant
21                                                    X CORP. f/k/a TWITTER, INC.

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE ISO OPP TO MOTION FOR CLASS CERTIFICATION

# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EMMANUEL CORNET, et al.,

              Plaintiffs,

      v.

TWITTER, INC.,

              Defendant.

Case No. 3:22-cv-06857-JD

**ORDER RE ARBITRATION**

Named plaintiffs Emmanuel Cornet, Justine De Caires, Grae Kindel, Alexis Camacho, and Jessica Pan sued defendant Twitter, Inc., on behalf of themselves and a putative class of other Twitter employees, alleging that recent layoffs by Twitter violated federal and state laws.  Dkt. No. 1 (original complaint); Dkt. No. 40 (second amended complaint).  Twitter asks for an order compelling the individual claims of these named plaintiffs to arbitration pursuant to the parties' arbitration agreements and the Federal Arbitration Act (FAA).  Dkt. No. 18.[1]  Plaintiffs filed an opposition.  Dkt. No. 37.  Arbitration is granted.

## BACKGROUND

The salient facts are undisputed.  Plaintiffs signed arbitration agreements as part of their employment contracts with Twitter, which date from September 2017 to April 2021.  Dkt. No. 18-1, Ex. A (Kindel), Ex. B (Camacho), Ex. C (De Caires), Ex. D (Pan), Ex. E (Cornet).  The

---

[1] After Twitter filed its motion, plaintiffs amended their complaint to add three named plaintiffs who say that they opted out of Twitter's arbitration agreement.  Dkt. No. 40 ¶ 14-16.  The claims of these three individuals are not at issue in this motion.  For ease of reference, "plaintiffs" refers only to the five named plaintiffs who are the subject of Twitter's motion.

United States District Court
Northern District of California

1   agreements state in bold that "[a]rbitration is not a mandatory condition of Employee's

2   employment at [Twitter]," and provided plaintiffs with an opportunity to opt out. *Id.* at ECF pp.

3   25, 35, 44. Plaintiffs did not opt out. *See id.* at ECF p. 7 ¶ 8 (Callaghan declaration).

4           Twitter has identified three versions of the agreements, *see* Dkt. No. 18 at 3, but the

5   relevant provisions are materially the same. The arbitration agreements all expressly state that

6   they are governed by the FAA. *See* Dkt. No. 18-1 at ECF pp. 23, 33, 42. They cover disputes

7   "arising out of or related to" plaintiffs' employment with Twitter, including the termination of

8   their employment. *Id.* Each agreement states that it applies to "disputes arising out of or relating

9   to [the] interpretation or application of this Agreement, including the enforceability, revocability

10  or validity of the Agreement or any portion of the Agreement." *Id.* Each agreement also contains

11  a class action waiver, the validity and enforceability of which can only be determined by a "court

12  of competent jurisdiction and not by an arbitrator." *Id.* at ECF pp. 24-25, 34, 43. The waiver

13  requires the parties "to bring any dispute in arbitration on an individual basis only, and not on a

14  class, collective, or private attorney general representative action basis." *Id.*

15                                  **LEGAL STANDARDS**

16          The arbitration demand is governed by the FAA. The Court has discussed the governing

17  standards in several prior orders, which are incorporated here. *See Louis v. Healthsource Glob.*

18  *Staffing, Inc.*, No. 22-cv-02436-JD, 2022 WL 4960666 (N.D. Cal. Oct. 3, 2022); *Williams v. Eaze*

19  *Sols., Inc.*, 417 F. Supp. 3d 1233 (N.D. Cal. 2019). In pertinent part, the FAA's "overarching

20  purpose . . . is to ensure the enforcement of arbitration agreements according to their terms so as to

21  facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344

22  (2011). Under Section 4 of the FAA, the Court's role "is limited to determining whether a valid

23  arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue."

24  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If the party

25  seeking to compel arbitration establishes both factors, the district court "must order the parties to

26  proceed to arbitration only in accordance with the terms of their agreement." *Id.* "Any doubts

27  about the scope of arbitrable issues should be decided in favor of arbitration." *Williams*, 417 F.

28  Supp. 3d at 1239; *see also Louis*, 2022 WL 4960666, at *2.

Unless the parties provide otherwise, the validity and scope of an agreement to arbitrate are determined by the Court. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013); *Alonso v. AuPairCare, Inc.*, No. 3:18-cv-00970-JD, 2018 WL 4027834, at *1 (N.D. Cal. Aug. 23, 2018). The validity inquiry usually involves a determination of whether the arbitration agreement is unenforceable because it is unconscionable. *See Concepcion*, 563 U.S. at 339.

Alternatively, parties may delegate "gateway" questions of arbitrability to an arbitrator. *See Alonso*, 2017 WL 4551484, at *1. A delegation clause is enforceable when it manifests a clear and unmistakable agreement to arbitrate arbitrability, and is not invalid as a matter of contract law. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Challenges to the validity of a delegation clause may be directed to (1) "the validity of the delegation clause itself," or (2) "the validity of the agreement to arbitrate or to the contract as a whole." *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *1 (N.D. Cal. Oct. 11, 2017) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). "[T]he Court retains authority to determine any validity challenges directly addressed to delegation." *Alonso*, 2018 WL 4027834, at *1 (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010)). But "[i]f a party challenges the overall agreement to arbitrate, without specifically challenging the delegation clause, the questions of validity and enforceability will go to the arbitrator." *Id.* (citing *McLellan*, 2017 WL 4551484, at *1).

## DISCUSSION

Plaintiffs' main objection is that the arbitration agreements are unconscionable. *See* Dkt. No. 37 at 5-6. They do not raise any contract formation issues. Twitter provided signed copies of the agreements, and they are all clear and straightforward. *See generally* Dkt. No. 18-1. Because each arbitration agreement has a delegation clause, plaintiffs must show that the clause is invalid or otherwise does not encompass their unconscionability claims in order to litigate in this forum.

They have not done so. Plaintiffs relegated this threshold issue to a footnote, and say only that the delegation clauses "are not clear and unmistakable" because they do not "actually state that questions of arbitrability are delegated to the arbitrator." Dkt. No. 37 at 5 n.3.

United States District Court
Northern District of California

The point is not well taken.  To start, the delegation clauses in all three versions of the agreement state quite clearly that disputes about the enforceability and validity of the arbitration agreement are "to be resolved only by an arbitrator through final and binding arbitration."  Dkt. No. 18-1 at ECF pp. 23, 33, 42.  This is just the kind of language which establishes that "the parties clearly and unmistakably agreed to arbitrate the question of arbitrability."  *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (finding adequate a delegation clause that gave "arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause"); *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (upholding delegation clause that provided arbitrators with "the authority to decide issues relating to the 'enforceability, revocability, or validity of the'" arbitration agreements).

The second and third versions of the agreement, which are applicable to De Caires, Pan, and Cornet, provide even more support for delegation.  In addition to the plain delegation language discussed above, these agreements expressly provide that the parties "agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-current JAMS Rules."  Dkt. No. 18-1 at ECF pp. 34, 43.  "JAMS procedures for employment arbitration delegate gateway issues to the arbitrator," *Alonso*, 2018 WL 4027834, at *5, and so the second and third versions have two independent grounds on which to delegate the question of arbitrability to the arbitrator.

The only remaining issue here is the enforceability of the class action waiver, which the parties reserved for the Court.  Plaintiffs challenge only the portion of the waiver that precludes them from bringing "representative actions under the Private Attorneys General Act of 2004 [PAGA]."  Dkt. No. 37 at 2; *see also id.* at 11.  The grounds for this objection are unclear because the operative complaint does not allege a PAGA claim.  Dkt. No. 40.  Plaintiffs made a passing reference to "their anticipated PAGA claims," Dkt. No. 37 at 13, but the Court can only address what is presently in the record, *see Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541 (9th Cir. 2021) (rejecting "argument that courts should stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute").  At this time, the PAGA waiver has no bearing on going to arbitration.

United States District Court
Northern District of California

## CONCLUSION

The claims of plaintiffs Cornet, De Caires, Kindel, Camacho, and Pan are ordered to arbitration on an individual basis. The effect of this order on the putative class in the second amended complaint will be taken up later as warranted by developments in the case.

**IT IS SO ORDERED.**

Dated: January 13, 2023

_____
JAMES DONATO
United States District Judge

# EXHIBIT 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DMITRY BORODAENKO, et al.,<br><br>                Plaintiffs,<br><br>    v.<br><br>TWITTER, INC.,<br><br>                Defendant. | Case No. 22-cv-07226-HSG<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 14, 15 |

Pending before the Court are Defendant Twitter, Inc.'s motion to compel arbitration and motion to dismiss. Dkt. Nos. 14, 15. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motion to compel arbitration and **GRANTS** the motion to dismiss.

## I.   BACKGROUND

Plaintiffs Dmitry Borodaenko and Abhijit Mehta initially filed this putative class action in November 2022, Dkt. No. 1, and amended their complaint a month later in December 2022. *See* Dkt. No. 8 ("FAC"). Plaintiffs seek to represent a class of former Twitter employees who (1) are disabled, or were either on leave or preparing to take family medical leave at the time Elon Musk purchased the company, and (2) were either terminated or constructively discharged due to Twitter's new workplace policies. *See id.* at ¶¶ 2, 17. According to the complaint, Twitter employees had historically been permitted to work remotely, but shortly after purchasing the company, Mr. Musk announced that working remotely would only be permitted "for 'exceptional' employees that Musk himself would have to approve." *See id.* at ¶¶ 5–6, 28–30. Mr. Musk also announced that employees would be expected to work longer hours and "at high intensity" moving

*United States District Court*
*Northern District of California*

forward. *See id.* at ¶¶ 8, 41–43, 45–46. These new policies, Plaintiffs contend, made it impossible for many disabled employees to continue working for Twitter and many felt forced to resign as a result. *See id.* at ¶¶ 7–9, 32, 46–48. At the same time, the company also began laying off a substantial portion of its workforce. *See id.* at ¶¶ 3, 10, 31. Plaintiffs contend that these layoffs disproportionately affected employees who were on or intending to take family or medical leave. *See id.* at ¶¶ 4, 49–52.

Based on these allegations, Plaintiffs bring causes of action for discrimination in violation of (1) the Americans with Disabilities Act ("ADA"); (2) the California Fair Employment and Housing Act ("FEHA"); and for violations of (3) the Family and Medical Leave Act ("FMLA"); and (4) the California Family Rights Act ("CFRA"). Plaintiffs seek to represent a class of "all similarly situated Twitter employees across the United States who are either disabled or have taken, or planned soon to take, a family or medical leave, and whose jobs have been affected by the company's layoffs, terminations, and heightened demands on the workforce." *Id.* at ¶ 17.

Defendant moves to compel arbitration of Plaintiff Abhijit Mehta and to dismiss the FAC in its entirety. Dkt. Nos. 14, 15. Plaintiffs agree that Mr. Mehta did not opt out of Defendant's arbitration agreement and that his claims should be compelled to arbitration. *See* Dkt. No. 20. The Court accordingly **GRANTS** the motion to compel arbitration and **STAYS** the action as to Mr. Mehta's claims. The Court therefore limits its analysis below to the motion to dismiss Plaintiff Borodaenko's claims. Any references to "Plaintiff" refer to Mr. Borodaenko unless otherwise specified.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

2

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## III. DISCUSSION

### A. ADA and FEHA Discrimination Claims

#### i. Administrative Exhaustion

As an initial matter, Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's ADA and FEHA discrimination claims because Plaintiff did not exhaust his administrative remedies before filing this case. *See* Dkt. No. 15 at 6–8. Specifically, Plaintiff did not obtain right-to-sue notices from either the U.S. Equal Employment Opportunity Commission or the California Department of Fair Employment & Housing. *Id.* However, after briefing on the motion to dismiss was complete, Plaintiff received notices from both entities. *See* Dkt. No. 25-1, Ex. A; Dkt. No. 25-2, Ex. B.

Defendant nevertheless argues that the Court should disregard these notices because Plaintiff did not seek leave to file them on the docket. *See* Dkt. No. 26. However, under the circumstances, the Court declines to elevate form over substance in this way. The Court would have granted leave to file the notices, which establish that Plaintiff has administratively exhausted his ADA and FEHA claims. *See Wrighten v. Metro. Hosps., Inc.*, 726 F.2d 1346, 1351 (9th Cir. 1984) (finding that "subsequent issuance of the 'right to sue' letters cured any jurisdictional defects"). Despite Defendant's urging, it was not "sandbagged," as it responded to Plaintiff's filing anyway. *See* Dkt. No. 26 at 2. The Court therefore **DENIES** the motion to dismiss on this basis. The parties are nevertheless cautioned that the Court expects counsel will scrupulously

3

comply with the Federal Rules of Civil Procedure and the Civil Local Rules moving forward.

### ii. Failure to State a Claim

More substantively, Defendant argues that Plaintiff Borodaenko has failed to state a plausible claim for disability discrimination under either the ADA or FEHA.  *See* Dkt. No. 15 at 8–11.  Plaintiff confirms that he intends to bring claims for both disparate treatment and disparate impact under these statutes.  *See* Dkt. No. 21 at 12–16.  But Defendant contends that Plaintiff does not offer sufficient factual support for these claims.[1]  *See* Dkt. No. 15 at 8–11.

### a. Disparate Treatment

The parties appear to agree that the elements of a disparate treatment claim under the ADA and FEHA are largely the same.  *Compare* Dkt. No. 15 at 8–10, *with* Dkt. No. 21 at 14–16.  Disparate treatment occurs "where an employer has treated [a] particular person less favorably than others because of a protected trait."  *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quotation omitted); *see also Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355 (Cal. 2000) (looking to federal law when applying FEHA and requiring that "circumstance[s] suggest[] discriminatory motive" to establish FEHA claim).  "A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action."  *Ricci*, 557 U.S. at 577 (quotation omitted).  "A discriminatory motive may be established by the employer's informal decisionmaking or 'a formal, facially discriminatory policy,' but 'liability depends on whether the protected trait . . . actually motivated the employer's decision.'"  *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).

The Court agrees with Defendant that Plaintiff has not adequately alleged that Twitter terminated Plaintiff—or any other member of the putative class—because of a disability.  Rather, the FAC states that Twitter's policies that required workers to return to work and to work "at high intensity" applied to all employees.  For example, according to the FAC, "shortly after Musk

---

[1] Plaintiff points out that he need not establish a prima facie case of discrimination at the pleading stage.  *See* Dkt. No. 21 at 12 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510–11 (2002)).  Nevertheless, he still must allege sufficient facts to plead a plausible claim for relief.  *See, e.g.*, *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1136–38 (9th Cir. 2019) (affirming dismissal of sex discrimination claim because "[a] recitation of facts without plausible connection to gender is not cured by labels and conclusory statements about sex discrimination").

4

completed the purchase of Twitter, he declared that working remotely would no longer be allowed and that *all remaining employees* would need to work out of a company office . . . ." *See* FAC at ¶ 6 (emphasis added); *see also id.* at ¶ 28 ("On the evening of November 9, 2022, Musk announced that all employees were expected to begin reporting to Twitter offices immediately."). The FAC also states that "Musk declared that, in order to remain employed at Twitter, employees would have to 'work[] long hours at high intensity.'" *Id.* at ¶ 8. And "*[a]ny employees* who did not agree to this mandate would have to resign." *Id.* (emphasis added); *see also id.* at ¶ 45 (noting that Musk emailed all "remaining Twitter employees" that "working long hours at high intensity" was the new expectation).

In opposition, Plaintiff points to the timing of his own termination. After receiving the November 9 notification that employees had to return to work, Plaintiff emailed his manager that because he is a cancer survivor, he "definitely [is] not working from [the] office until the pandemic is over." *See id.* at ¶¶ 35–36. Plaintiff contends that approximately a week after sending this message to his manager, he "received an email from Twitter Human Resources that stated: 'Hi, We regret to inform you that your employment is terminated effective immediately. Your recent behavior has violated company policy.'" *Id.* at ¶¶ 38, 39. Plaintiff alleges that aside from informing his manager that he could not return to the office, he did not engage in any behavior that would violate company policy. *Id.* at ¶ 40. The FAC also alleges that "[m]any of the employees who have lost their jobs since Musk's purchase of the company are disabled," and that "many disabled employees have felt forced to resign." *See* FAC at ¶¶ 4, 9. But even accepting these allegations as true, they suggest that Plaintiff and other employees were terminated because they refused to return to the office, not because of a disability. Plaintiff has not explained how these allegations give rise to a reasonable inference that Defendant had a discriminatory motive or intent in issuing its policies or in terminating employees. *Cf. Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO (AFSCME) v. State of Wash.*, 770 F.2d 1401, 1405 (9th Cir. 1985) ("It is insufficient for a plaintiff alleging discrimination under the disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a protected group. The plaintiff must show the employer chose the particular policy because of its effect on

1    members of a protected class."). The Court therefore **GRANTS** the motion to dismiss the
2    disparate treatment claims under the ADA and FEHA.

3                              **b. Disparate Impact**

4           The parties also appear to agree that the elements of a disparate impact claim under the
5    ADA and FEHA are largely the same. *Compare* Dkt. No. 15 at 10, *with* Dkt. No. 21 at 12. Both
6    statutes prohibit facially neutral practices that have a significantly discriminatory impact on a
7    protected group and that are not justified by business necessity. *See, e.g.*, *Freyd v. Univ. of
8    Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021); *Mahler v. Jud. Council of California*, 67 Cal. App.
9    5th 82, 112–13 (Cal. Ct. App. 2021). "At the pleading stage, the complaint need only allege facts
10   giving rise to plausible inferences that the disparity exists and is caused by the identified practice."
11   *See Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 990 (N.D. Cal. 2021) (collecting cases).

12          Plaintiff has failed to plausibly allege that a disparity actually exists here. Plaintiff alleges
13   that "[m]any disabled employees . . . have felt that, because of their disability, they will not be
14   able to meet [Defendant's] new heightened standard of performance and productivity," and "have
15   felt forced to resign." *See* FAC at ¶¶ 7, 9, 48. But Plaintiff has not alleged that such individuals
16   have actually resigned or that they have done so at higher rates than their non-disabled colleagues.
17   Again, Plaintiff points only to his own circumstances of being terminated after telling his manager
18   that he could not return to the office, *see* Dkt. No. 21 at 13, but "the Court cannot draw an
19   inference of disparity from a single data point," *see Liu*, 551 F.Supp.3d at 991. It is not enough
20   for Plaintiff to assert that "it is reasonable to infer" that Defendant's new policies "would have a
21   disparate impact on individuals with disabilities who either cannot physically report to an
22   office . . . or perform at such a level, without incurring risks to their health, and/or who require
23   reasonable accommodations to complete their work." *See* Dkt. No. 21 at 14. Plaintiff must
24   provide factual support for this conclusion. The Court therefore **GRANTS** the motion to dismiss
25   the disparate impact claims under the ADA and FEHA.

26                **B.    FMLA and CFRA Claims**

27          Plaintiff does not allege that he was either on leave or intending to take leave at the time he
28   was terminated, and Defendant argues that the Court should thus dismiss the FMLA and CFRA

*United States District Court*
*Northern District of California*

claims for lack of standing.  *See* Dkt. No. 15 at 11–13.  The FAC only alleges that Mr. Mehta—

whose claims were compelled to arbitration—"had previously informed Twitter (and received

approval) to take a family leave . . . ."  FAC at ¶ 50.  However, "a plaintiff must demonstrate

standing for each claim he seeks to press."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352

(2006); *see also Haro v. Sebelius*, 747 F.3d 1099, 1108 (9th Cir. 2014) ("In a class action,

standing is satisfied if at least one named plaintiff meets the requirements.") (quotations omitted).

Plaintiff acknowledges that he does not have standing to bring these claims himself and intends to

find another named Plaintiff to assert these claims.  *See* Dkt. No. 21 at 2, 16–17.  The Court

therefore **GRANTS** the motion to dismiss the FMLA and CFRA claims to the extent Plaintiff

Borodaenko asserts them himself.  Plaintiff Mehta's FMLA and CFRA claims, however, remain

stayed pending arbitration.

### C.    Declaratory Judgment Act

Defendant also moves to dismiss Plaintiff's claim under the Declaratory Judgment Act for

an injunction prohibiting Twitter from soliciting separation agreements from disabled employees

that release their discrimination claims without first notifying them of this case.  *See* Dkt. No. 15

at 13–14.  Defendant argues that because the Act is just "a procedural device," and "does not

create any substantive rights," this claim must fail given the dismissal of the other claims.  *Id.* at

13.  In response, Plaintiff appears to argue that the claim is moot anyway because in a separate

case, *Cornet v. Twitter, Inc.*, Case No. 3:22-cv-06857-JD, Twitter already agreed to include notice

of this case as part of its distribution of severance agreements.  *See* Dkt. No. 21 at 5, n.2.  Plaintiff

thus acknowledges that his claim for relief was "effectively adjudicated" already.  *Id.*  The Court

therefore **GRANTS** the motion to dismiss this claim.

### D.    Class Action Allegations

Lastly, Defendant argues that the Court should dismiss or strike the class allegations.  *See*

Dkt. No. 15 at 14–20.  Defendant argues, for example that the complaint does not sufficiently

allege that Plaintiff is similarly situated to the putative class because unlike the putative class,

Plaintiff did not resign because of the company's new policies, but rather was laid off.  *Id.* at 14.

Defendant also contends that Plaintiff's alleged need to work remotely is insufficient to establish

that all other disabled employees were similar situated. *Id.* at 15–16. Defendant also suggests that evaluating whether Twitter's policies were discriminatory would require individual assessments of class members' disabilities. *Id.* at 18–20. Nevertheless, because the Court has dismissed all the claims in this case, the Court need not reach this argument.

Still, the Court notes that a growing number of courts (including this one) generally disfavor motions to strike, finding that they "serve little useful purpose in modern federal practice, and are often wielded mainly to cause delay and inflict needless burdens on opposing parties." *See Stiner v. Brookdale Senior Living, Inc.*, 354 F. Supp. 3d 1046, 1063, n.7 (N.D. Cal. 2019) (quoting *Inn S.F. Enter., Inc. v. Ninth St. Lodging, LLC*, No. 3:16-CV-00599-JD, 2016 WL 8469189, at *1 (N.D. Cal. Dec. 19, 2016)). And although district courts have authority to strike class allegations at the motion to dismiss stage, courts generally decline to do so because such motions are usually premature before the issue of class certification is before the court. *See, e.g.*, *Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. 3d 837, 849 (N.D. Cal. 2019); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *14–15 (N.D. Cal. May 26, 2011); *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012).

## IV.   CONCLUSION

Accordingly, the Court **GRANTS** the motion to compel arbitration and **STAYS** the action as to Plaintiff Mehta's claims. Dkt. No. 14. The parties shall file a status report with the Court every 120 days from the date of this order explaining the progress of the arbitration proceeding as to Plaintiff Mehta's claim, and shall notify the Court within 48 hours of the completion of arbitration. The Court also **GRANTS** the motion to dismiss as to Plaintiff Borodaenko's claims. Dkt. No. 15. Plaintiff may file an amended complaint within 21 days of the date of this order.

The Court further **SETS** a case management conference on June 20, 2023, at 2:00 p.m. All counsel shall use the following dial-in information to access the call:

Dial-In: 888-808-6929;

Passcode: 6064255

All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the courtroom deputy.

8

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.  The Court further **DIRECTS** the parties to meet and confer and submit a revised joint case management statement by June 13, 2023.  The parties should be prepared to discuss how to move this case forward efficiently.

**IT IS SO ORDERED.**

Dated:  May 5, 2023

HAYWOOD S. GILLIAM, JR.
United States District Judge

# EXHIBIT 3

# Waiting time penalty

Printer friendly version

Public policy in California has long favored the full and prompt payment of wages due an employee. To ensure that employers comply with the laws governing the payment of wages when an employment relationship ends, the Legislature enacted Labor Code Section 203 ⤤ which provides for the assessment of a penalty against the employer when there is a willful failure to pay wages due the employee at conclusion of the employment relationship. Assessment of the waiting time penalty does not require that the employer intended the action or anything blameworthy, but rather that the employer knows what he is doing, that the action occurred and is within the employer's control, and that the employer fails to perform a required act.

Assessment of the penalty is not automatic however, as a "good faith dispute" that any wages are due will prevent imposition of the penalty.

In order for the penalty to apply, there must be a true employer-employee relationship and a quit or a discharge, which includes a layoff.

The penalty applies to the willful failure to pay "any wages," which refers to the definition of "wages" in Labor Code Section 200 ⤤. Thus, all compensation must be considered in determining if all wages due were paid as prescribed by law. "Wages" does not include expenses. In calculating the penalty, overtime wages are considered only if overtime is regularly scheduled each week. Occasional or infrequent overtime is not considered in the calculation of the daily rate of pay for purposes of computing the penalty.

The penalty is measured at the employee's daily rate of pay and is calculated by multiplying the daily wage by the number of days that the employee was not paid, up to a maximum of 30 days. This does not mean that the wages continue for a 30-day period, but that the employee may be entitled to up to 30 actual days' worth of wages. The 30-day period is calendar days, and includes weekends and holidays and any other days that the employee would not normally work. Payment of the wages or the commencement of an action stops the penalty from accruing. Filing a complaint in court commences an action. An employee's filing a claim with

that employees are paid, including payment of final wages.

4. **Q.** **I was discharged from my employment two weeks ago. At that time I was paid all of my wages, but did not get reimbursed for any of my business related expenses until 10 days later. Am I entitled to the waiting time penalty, and if so, in what amount?**

   **A.** No, you are not entitled to the waiting time penalty. The waiting time penalty is assessed only when an employer willfully fails to pay an employee in accordance with Labor Code Sections 201, 201.5, 202, or 202.5, any wages of an employee who quits or is discharged. As you were paid all of your wages in accordance with the law and the reimbursement for business expenses is not wages, the waiting time penalty does not apply to your situation.

5. **Q.** **I was discharged from my job two weeks ago. At that time I was paid the wages for all of the hours that I had worked, but was not paid for my 15 days of earned, accrued and unused vacation until 10 days later. Am I entitled to the waiting time penalty, and if so, in what amount?**

   **A.** Yes, you are entitled to the waiting time penalty in the amount of 10 days' wages. The waiting time penalty is assessed only when an employer willfully fails to pay in accordance with Labor Code Sections 201, 201.5, 202, or 202.5, any wages of an employee who quits or is discharged. Under California law, earned vacation time is considered wages; and under Labor Code Section 227.3, unless otherwise provided by a collective bargaining agreement, whenever an employment relationship ends for any reason whatsoever and the employee has not used all of his or her earned and accrued vacation, the employer must pay the employee at his or her final rate of pay for all such earned, accrued and unused vacation. In your situation, since your former employer was obligated to pay you all of your wages at the time you were discharged, including your 15 days of vacation wages, and did not do so, you are entitled to the waiting time penalty in the amount of 10 days wages, the number of days between the date you were discharged and the date you received all of your final wages, i.e., the 15 days vacation pay.

6. **Q.** **How is the daily rate of pay calculated and the waiting time penalty computed?**

# EXHIBIT 4

# The 2002 Update Of

# The DLSE

# Enforcement Policies and Interpretations

# Manual

# (Revised)

The Division of Labor Standards Enforcement (DLSE) Enforcement Policies and Interpretations Manual summarizes the policies and interpretations which DLSE has followed and continues to follow in discharging its duty to administer and enforce the labor statutes and regulations of the State of California.

Lilia Garcia-Brower, State Labor Commissioner

**AUGUST, 2019**

DIVISION OF LABOR STANDARDS ENFORCEMENT
POLICIES AND INTERPRETATIONS MANUAL

## TABLE OF CONTENTS

1. INTRODUCTION ................................................................ 1-1
2. WAGES ......................................................................... 2-1
   "Employer", Defined.......................................................... 2-1
   "Wages", Defined ............................................................ 2-1
   Piece Rate Or "Piece Work" ................................................. 2-2
   Commission .................................................................. 2-2
   Bonus Defined ............................................................... 2-3
   Status Of Wages ............................................................. 2-3
   Extension Of Wage Definitions To Public Employees .......................... 2-4
3. WAGES PAYABLE ON TERMINATION............................................... 3-1
   Labor Code § 201 – Discharge ............................................... 3-1
   Layoff, When Discharge ..................................................... 3-1
   Sale Of Business Constitutes Discharge ..................................... 3-1
   Motion Picture Workers' Exception .......................................... 3-2
   Print Shoot Employees Exception ............................................ 3-2
   Oil Well Drilling Workers' Exception ....................................... 3-2
   Professional Baseball and Live Theatrical Or Concert Events................. 3-2
   Labor Code § 202 – Quit .................................................... 3-2
   "For A Definite Period", Defined ........................................... 3-2
   Payment By Mail ............................................................ 3-2
   Extension of Coverage of Wage Statutes to Some Public Employees ............ 3-3
   Temporary Services Employees................................................ 3-3
4. PENALTY FOR FAILURE TO PAY WAGES ON TERMINATION........................... 4-1
   "Willfully", Defined........................................................ 4-1
   "Good Faith Dispute", Defined .............................................. 4-2
   Payment By Mail............................................................. 4-2
   "Any Wages".................................................................. 4-2
   "Action", Defined .......................................................... 4-3
   Payment Of Wages Not Calculable Until After Termination .................... 4-3
   Labor Code § 203.1 – Civil Penalty For Payment With Non-Sufficient Funds Instrument ...... 4-3
5. PAYMENT OF REGULARLY SCHEDULED WAGES ...................................... 5-1
   Payment Of Overtime Wages, Time For ........................................ 5-1
   Payment Of Bonus, Commission, Or Other Extraordinary Wages ................. 5-2
   Payment At Central Location, Special Rules ................................. 5-2
   Commission Wages ........................................................... 5-2
   Executive, Administrative Or Professional Employees, Special Rules ......... 5-3
   Commissioned Vehicle Salespersons .......................................... 5-4
   Agricultural And Household Occupations Receiving Room And Board ............ 5-5
   Farm Labor Contractors' Employees .......................................... 5-5
   Most Agricultural Employees ................................................ 5-5
6. COMPENSATING TIME OFF, Caveat Regarding Labor Code § 204.3 vs. § 513...... 6-1
7. WAGE PAYMENT — SPECIAL CONDITIONS ......................................... 7-1
   Conceded Wages Must Be Paid Without Condition............................... 7-1
   Release Of Wage Claim Prohibited .......................................... 7-1

DIVISION OF LABOR STANDARDS ENFORCEMENT
POLICIES AND INTERPRETATIONS MANUAL

4.2.2   If it is determined that a good faith dispute exists as to whether any wages are due (even if, after resolution of the dispute wages are found to be due), the employer's failure to pay is not willful, and the employee is not entitled to waiting time penalties. The concept of a good faith defense to Section 203 penalties is supported by existing case law. (*Davis v. Morris* (1940) 37 Cal.App.2d 269)   It must be shown that the employer owes the debt and has failed to pay it.  The employer is not denied any legal defense as to the validity of the claim. (*Barnhill v. Saunders* (1981) 125 Cal.App.3d 1)

4.2.2.1   The civil penalty assessed under Labor Code § 203 does not require that the employer intended the action; merely that the action occurred and it was within the employer's control. (*Davis v. Morris* (1940) 37 Cal.App.2d 269; 99 P.2d 345)

4.2.3   **Termination of Employment.**  Employment may be terminated by any of the following:

(a)   Expiration of its appointed term. (Labor Code § 2920)

(b)   Extinction of its subject. (Labor Code § 2920) (See also discussion a t 3.2.2.1 of this Manual regarding termination upon sale of business.)

(c)   Death of the employee or the employer. (Labor Code §§ 2920, 2921)

(d)   The employee's or the employer's legal incapacity to act as such. (Labor Code §§ 2920 2921)

(e)   Termination at will by employer when  employment is not for a specified period. (Labor Code § 2922)

(f)   Termination by employee voluntarily or as a result of willful breach of the employment contract by employer. (Labor Code § 2925)

4.3   **Wages Due Quitting Employee.** As discussed at Section 3.4 of this Manual, wages due most employees who quit are due within 72 hours after resignation unless 72 hours previous notice was given. Under most circumstances a quitting employee must return to the office or agency of the employer in the county where the work was performed for his or her wages. (See Section 7.4 of this Manual)

4.3.1   There may, however, exist circumstances created by the employer which would prevent an employee from returning for the wages or which would make the return an exercise in futility. (O.L. 1986.09.15) Under those circumstances, the penalty wage provided by Section 203 may apply.

4.3.2   **Payment by Mail.** Labor Code § 202 provides that an employee may elect to receive termination wages by mail.  In those cases, the date of the mailing constitutes the date of payment.  In the event that the employer contends that the employee elected to receive termination wages by mail, it is necessary that the employer prove (1) that the employee chose this method of delivery and (2) that the check was received by the employee.  See *Villafuerte v. Inter-Con Security Systems, Inc.* (2002) 96 Cal.App.4th Supp. 45.

4.3.3   Labor Code §§ 201.5, 201.6, 201.7, and 201.8 do not require an election by the employee; the employer may choose to pay the wages by mail and the date of mailing will be considered the date of payment.  In the event the employer unilaterally chooses to deliver the termination wages by mail, the employer must not only prove that the letter was mailed to the correct address but, since the employee did not assent to receipt by this method, it must prove that the check was received by the employee. See *Villafuerte v. Inter-Con Security Systems, Inc.* (2002) 96 Cal.App.4th, Supp. 45.

4.3.4   **Any Wages.** "Any wages" includes any amount due as wages (see Labor Code § 200, see also,

DECEMBER, 2019

4 - 2

DIVISION OF LABOR STANDARDS ENFORCEMENT
POLICIES AND INTERPRETATIONS MANUAL

DIR, DLSE v. UI Video, 55 Cal.App.4th 1084,1091); but does not include expenses.  (*Hagin v. Pac. Gas & Elec.* 152 Cal.App.2d 93).

4.3.4.1     Failure to pay an employee all premium pay required by the Labor Code and Wage Orders as required by Labor Code §§ 201 and 202, such as overtime premium, reporting time pay, meal period/rest period premium, and split shift premium pay, may entitle an employee to waiting time penalties.

4.4     **30 Days**.  Penalties continue for up to 30 calendar days.  The statutory reference is to 30 actual days' worth of wages.  Waiting time penalties for a specific number or days are computed by multiplying the employee's daily wage rate by the specified number of days since the payment of the wages became due.

> "[U]npaid wages continue to accrue on a daily basis for up to a 30-day period.  Penalties accrue not only on the days that the employee might have worked, but also on nonworkdays…  The critical computation required by section 203 is the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days…[A] somewhat similar method…used to compute overtime compensation, i.e., the employee's regular rate of pay is computed by dividing the total weekly salary by no more than 40 hours (citations)…This method of calculation has been used by a number of courts, but without much analysis." (*Mamika v. Barca* (1998) 69 Cal.App.4th 487, 492-493).

4.5     **Action.**  Payment of the wages, or the commencement of an action, stops the penalties from accruing.  An action is commenced by filing in court.  (See Code of Civil Procedure § 22).  Filing  a claim with the Labor Commissioner is not considered the filing of an action and does not prevent the penalties from continuing to accrue. (*Cuadra v. Millan* (1998) 17 Cal.4th 855, 72 Cal.Rptr.2d 687).

4.6     **Payment Of Wages Not Calculable Until After Termination.**  There are situations where wages (i.e., some commissions) are not calculable until after termination and, thus, are not due until that time. The employer has an obligation to pay those wages as soon as the amount is ascertainable and failure to pay those wages at that time will result in imposition of waiting time penalties.  (See discussion at O.L. 1999.01.09).

4.6.1     Inability to pay is not a defense to the failure to timely page wages under Sections 201 and 202 and does not relieve the employer of penalties under Section 203.  As noted above, the civil penalty assessed under Labor Code § 203 does not require that the employer intended the action; merely that the action occurred and it was within the employer's control.  *(Davis v. Morris* (1940) 37 Cal.App.2d 269, 99 P.2d 345).

4.6.1.1     In addition, of course, ignorance of the law is no excuse. (*Hale v. Morgan*  (1978) 22 Cal.3d 388, 396)  Thus, failure to comply with the payment sections based on the fact that the employer did not know of the requirements is not an excuse.

4.6.2     The case of *Diaz, et al v . Slaten (Placer Co. Sup. Crt. Appl Dept.* (1997) unpub. opinion) attached, accurately reflects the DLSE policy.  The opinion of the court, adopted the view of the DLSE. (See O.L. 1996.11.20)

4.7     **Payment Of Wages By Insufficient Funds Instrument.** Any employee who, during the regular course of employment or upon discharge, is paid with a non-sufficient funds instrument