Shannon Liss-Riordan (SBN 310719)
*sliss@llrlaw.com*
Bradley Manewith (admitted *pro hac vice*)
*bmanewith@llrlaw.com*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801

*Attorneys for Plaintiff Eitan Adler,*
*on behalf of himself and all others similarly situated*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| EITAN ADLER, on behalf of himself and all others similarly situated, | Case No. 3:23-cv-01788-JD |
| Plaintiffs, | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| v. | |
| TWITTER, INC. and X CORP., | Date: August 22, 2024 |
| Defendants. | Time: 10:00 a.m. |
| | Judge: Hon. James Donato |

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................... 1

II.  ARGUMENT .................................................................................................. 1

    A.  The Court Should Certify Plaintiff's WARN Acts Classes ................................... 1

        1.  Twitter's commonality and predominance arguments are improper attempts to argue the merits of Plaintiff's claims rather than the propriety of class certification ..................................................................................... 1

        2.  Plaintiff has satisfied the numerosity requirement...................................... 7

        3.  Plaintiff has satisfied the typicality and adequacy requirements ............... 8

    B.  The Court should certify Plaintiff's late payment class......................................... 10

        1.  The proposed class is ascertainable and is not a "fail-safe class"............. 10

        2.  Twitter's "Lack of Proof," "Lack of Demonstrable Harm," and Related Article III Standing arguments are misguided and legally erroneous....... 12

        3.  Twitter's remaining arguments regarding commonality, predominance, superiority, and numerosity fail because Twitter's failure to timely pay expense reimbursement to Plaintiff and putative class members presents a question that will rise or fall based on a common policy .......................... 13

III.  CONCLUSION................................................................................................ 14

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Aguilera v. Prospect Mortgage, LLC*
   2013 WL 4779179 (C.D. Cal. Sept. 5, 2013) ................................................. 10

4

5

*Ambrosio v. Cogent Commc'ns, Inc.*,
   2016 WL 777775 (N.D. Cal. Feb. 29, 2016) ..................................................... 6

6

*Andrade v. P.F. Chang's China Bistro, Inc.*
   2013 WL 5472589 (S.D. Cal. Aug. 9, 2013) ..................................................... 9

7

8

*Bell v. PNC Bank, Nat. Ass'n*,
   800 F.3d 360 (7th Cir. 2015) ............................................................................. 6

9

*Breeden v. Benchmark Lending Group, Inc.*,
   229 F.R.D. 623 (N.D. Cal. 2005) ....................................................................... 8

10

11

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d (9th Cir. 2017) .................................................................................. 11

12

*Bruton v. Gerber Prod. Co.*,
   703 F. App'x 468 (9th Cir. 2017) .................................................................... 11

13

14

*Bzdawka v. Milkwaukee Cty.*
   238 F.R.D. 468 (D. Wis. 2006) ........................................................................ 10

15

16

*Chen-Oster v. Goldman, Sachs & Co.*,
   449 F. Supp. 3d 216 (S.D.N.Y. 2020) ................................................................ 7

17

18

*Coleman v. Jenny Craig, Inc.*
   2013 WL 6500457 (S.D. Cal. Nov. 27, 2013), *aff'd*, 2016 WL 1583627 (9th Cir. Apr.
   20, 2016) ............................................................................................................. 9

19

20

*E.E.O.C. v. Waffle House*
   534 U.S. 279 (2002) ........................................................................................... 9

21

22

*Edwards v. First Am. Corp.*,
   798 F.3d 1172 (9th Cir. 2015) ......................................................................... 14

23

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147, 157–58 (1982) ............................................................................. 4

24

25

*Gomez v.Rossi Concrete, Inc.*,
   270 F.R.D. 579 (S.D. Cal. 2010) ....................................................................... 2

26

*Guzman v. Bridgepoint Educ., Inc.*
   305 F.R.D. 594 (S.D. Cal. 2015) ....................................................................... 9

27

28

*Harik v. Cal. Teachers Ass'n,*
    326 F.3d 1042 (9th Cir. 2003) ................................................................................ 8

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litigation,*
    691 F.2d 1335 (9th Cir.1982) ................................................................................ 2

*In re DirecTV Early Cancellation Litig.*
    738 F. Supp. 2d 1062 (C.D. Cal. 2010) .............................................................. 10

*In re Titanium Dioxide Antitrust Litig.*
    962 F. Supp. 2d 840 (D. Md. 2013) ...................................................................... 9

*In re Wells Fargo Home Mortg. Overtime Pay Litig.,*
    571 F.3d 953, 958–59 (9th Cir. 2009) .................................................................. 6

*In re Whirlpool Corp. Front–Loading Washer Products Liab. Litig.,*
    722 F.3d 838 (6th Cir.2013) .................................................................................. 3

*Jensen v. SECORP Industries,*
    2018 WL 5961287 (C.D. Cal. Aug. 23, 2018) ..................................................... 8

*Jimenez v. Allstate Ins. Co.,*
    765 F.3d 1161 (9th Cir. 2014) .............................................................................. 3

*Lawson v. Grubhub, Inc.,*
    13 F.4th 908 (9th Cir. 2021) ................................................................................. 9

*Ma v.Twitter,Inc.,*
    2024 WL 3086694 (N.D. Cal. Apr. 22, 2024) ................................................. 1, 7

*Makaron v. Enagic USA, Inc.,*
    324 F.R.D. 228 (C.D. Cal. 2018) .......................................................................... 8

*Mazza v. Am. Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012) ................................................................................ 3

*Messner v. Northshore Univ. Health System,*
    669 F.3d 802 (7th Cir. 2012) .............................................................................. 11

*Naranjo v. Spectrum Sec. Servs., Inc.,*
    13 Cal. 5th 93 (2022) .......................................................................................... 12

*Nevarez v. Forty Niners Football Co., LLC,*
    326 F.R.D. 562, 576 (N.D. Cal. 2018) ............................................................... 11

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
    31 F.4th 651, 666 (9th Cir. 2022) ....................................................................... 11

*Otsuka v. Polo Ralph Lauren Corp.*,
    251 F.R.D. 439 (N.D. Cal. 2008) ................................................................... 6

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985) ................................................................................... 10

*Ramirez v. Freescore, LLC*
    2011 WL 3812608 (C.D. Cal. Aug. 30, 2011) ............................................. 9

*Rollins v. Traylor Bros Inc.*,
    2016 WL 5942943 (W.D. Wash. May 3, 2016) ............................................ 8

*Takacs v. A.G. Edwards & Sons, Inc.*,
    444 F. Supp. 2d 1100 (S.D. Cal. 2006) ...................................................... 12

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ................................................................................... 12

*Tyus v. Wendy's of Las Vegas, Inc.*,
    407 F. Supp. 3d 1088 (D. Nev. 2019) ......................................................... 11

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. University*
    489 U.S. (1989) ............................................................................................ 9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................ 4, 5

*Willis v. Koning & Associates*,
    2023 WL 2541327 N.D. Cal. Mar. 15, 2023) ............................................... 8

*Wren v. RGIS Inventory Specialists*,
    256 F.R.D. 180 (N.D. Cal. 2009) .................................................................. 6

**<u>Statutes</u>**

Cal. Labor Code § 200 ...................................................................................... 12

**<u>Rules</u>**

Fed. R. Civ. P. 23 ............................................................................................. 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

In opposing class certification, Twitter has taken a hodgepodge approach. Each of its arguments are without merit. Twitter first argues that commonality and predominance are lacking, but in doing so, it tries to attack the merits of Plaintiff's claims rather than the clearly common and predominant question overarching the entire class of whether their terminations were part of a broader plan to reduce costs, which would then put them within the requirements of the federal and state WARN Acts. Twitter's numerosity argument fares no better, as even using the smallest figure for the size of the putative class that Twitter provides still establishes numerosity. And Twitter's typicality, adequacy, and superiority arguments fail because it is improper to consider the unproven presence of enforceable arbitration agreements for unnamed putative class members at this juncture. Twitter's arguments as to the late payments class similarly fail.  Plaintiff will limit this class to the late-paid expense reimbursements, and Twitter has conceded through its Rule 30(b)(6) testimony that these reimbursements were not paid upon employees' termination. Its remaining arguments are all easily disposed of.

## II.     ARGUMENT

### A.    THE COURT SHOULD CERTIFY PLAINTIFF'S WARN ACTS CLASSES

#### 1.     Twitter's commonality and predominance arguments are improper attempts to argue the merits of Plaintiff's claims rather than the propriety of class certification

Twitter's kitchen-sink arguments[1] against Plaintiff's motion for certification of federal and state WARN Act classes are a thinly veiled attempt at recasting various prerequisites of Rule 23 as requiring the class to demonstrate it will ultimately prevail on the merits of their case — on

---

[1]      In a footnote, Twitter contends — without analysis —that the WARN Acts classes "are also impermissible fail-safe classes because membership rests on whether Plaintiff proves Defendant failed to give notice 'as required by the' WARN Acts." Opp. at 10 n.9. However, Twitter is incorrect that these proposed classes are fail-safe, because they are defined by employees who lost their jobs but did not obtain WARN Act notice, not whether WARN Act notice was required.

Twitter has also waived this argument by only raising it in a footnote. *Ma v. Twitter, Inc.*, 2024 WL 3086694, at *3 (N.D. Cal. Apr. 22, 2024) (quotations, citations, and alterations omitted) ("Arguments raised only in footnotes are generally deemed waived and need not be considered.").

an incomplete record, before discovery has been closed and after having failed so far to comply with its discovery obligations. *See* Dkt. 52.

While ostensibly attacking the proposed WARN Act classes on the bases of commonality, predominance, typicality, and adequacy, each of Twitter's contentions as to these prongs revolve around the same central argument: that the need to individually adjudicate whether each putative class member was truly fired for cause forecloses class certification. But this attack misconstrues the nature of Plaintiff's claims, is an improper attempt to argue the merits of Plaintiff's claims, and conflates merits arguments with whether there are common *questions* of the existence of such a practice.

The Supreme Court has explained that, "in determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." "On a motion for class certification, a court must generally take the substantive allegations of the complaint as true. Rather than deciding whether the claims have any merit, the inquiry instead focuses on the 'nature and range of proof necessary to establish those allegations.'" *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 585 (S.D. Cal. 2010) (internal citation omitted) (citing and quoting *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litigation,* 691 F.2d 1335, 1342 (9th Cir.1982)).

Here, as Plaintiff explained in his motion, he contends that these terminations were part of the larger layoff, and therefore, there is a common question about whether the employees who lost their jobs as a result of these alleged insubordination and performance issues were part of the larger layoff and thus should have received WARN Act notice. The question as to whether or not Twitter carried out supposed "for cause" terminations as a way to further its mass layoffs is a question that can be answered across the board for all class members. Twitter, for its part, contends that it did not have an unlawful policy of pretextually terminating employees for cause. But this is an argument in favor of summary judgment or at trial and does not preclude class

1    certification.

2        In *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1164 (9th Cir. 2014), the Ninth Circuit

3    granted interlocutory review to determine whether a district court's grant of class certification

4    was appropriate. There, "the district court held that the common question of whether Allstate had

5    an 'unofficial policy' of denying overtime payments while requiring overtime work

6    predominated over any individualized issues regarding the specific amount of damages a

7    particular class member may be able to prove." *Id.* While Allstate denied the existence of such an

8    unofficial policy, the Ninth Circuit affirmed the district court, explaining:

> Allstate argues that its formal policies which call for employees to be paid
> for all overtime worked are lawful, and that the alleged informal "policy-
> to-violate-the-policy" does not exist. This argument is appropriately made
> at trial or at the summary judgment stage, as it goes to the merits of the
> plaintiffs' claim. *See In re Whirlpool Corp. Front–Loading Washer
> Products Liab. Litig.*, 722 F.3d 838, 857 (6th Cir.2013) (noting that if a
> defendant has a strong argument against classwide liability, it "should
> welcome class certification" as that allows it the opportunity to resolve
> claims of all class members at once). **Whether any of these common
> questions are ultimately resolved in favor of either side is immaterial
> at this class certification stage, where we determine whether any
> answer that the questions could produce will drive resolution of the
> class' claims.**

*Id.* at 1166 n.5 (emphasis added).

        Therefore, the crucial question for commonality is whether Plaintiff's and the putative

class's claims "'depend on a common contention' such that 'determination of its truth or falsity

will resolve an issue that is central to the validity of each claim in one stroke.'" *Id.* at 1164-66

(quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (additional internal

quotations omitted).  Thus, the Ninth Circuit held that the plaintiffs had established

commonality, given that their ability to prove whether informal or unofficial overtime policies

(that, if true, would violate the law) exist would drive the ultimate resolution of the case.  *See id.*

at 1164–66. The same is true here: there is a common question of whether Twitter had an

unofficial policy of terminating employees "for cause" in furtherance of its mass layoffs.[2] As

---

[2]     While Twitter improperly seeks to introduce through judicial notice what it contends
demonstrates individualized facts specific to each terminated employee, this evidence — which

such, commonality exists for these proposed classes.

While Twitter repeatedly invokes *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) — quoting out of context a single line from that decision (that "the crux of the inquiry is 'the reason for a particular employment decision'") — a review of that decision shows why class certification is appropriate here.  There, elucidating the commonality and typicality requirements, the Court explained:

> "Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion [or higher pay] on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims." *Id.,* at 157–158, 102 S.Ct. 2364.

> *Falcon* suggested two ways in which that conceptual gap might be bridged. First, if the employer "used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a)." *Id.,* at 159, n. 15, 102 S.Ct. 2364. **Second, "[s]ignificant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes."** *Ibid.* We think that statement precisely describes respondents' burden in this case.

*Id.* at 352-53 (alterations in original) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 (1982)). The Court then went on to hold that no such general policy existed because the allegedly discriminatory decisions were made by thousands of individuals across thousands of stores without any proof of discrimination. *Id.* The Court explained:

> Here respondents wish to sue about literally millions of employment decisions at once. Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of

---

should not be considered (see contemporaneous response to Twitter's Motion for Judicial Notice) — does nothing to refute Plaintiff's contention that these "terminations" were part of the company's broader cost-cutting efforts.  In his ongoing attempt to reduce the headcount of the company, Elon Musk tasked his inner circle with finding employees who were "disloyal" or were allegedly poor performers.

all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*.

*Id.* at 252 (emphasis in original).

Here, Plaintiff has submitted significant proof of the "glue" that was lacking in *Dukes*. These "for cause" terminations were part of a concerted, centralized practice overseen by Elon Musk himself and a small group of his relatives and closest advisors. In a text message to Steve Davis, one of Mr. Musk's closest lieutenants, sent during the layoffs, Mr. Musk wrote:  "We need to be utterly ruthless and clever on costs immediately or Twitter is doomed." (Ex. 10 – Text message from E. Musk to Davis). He explained: "You have a very short period of time in order to get the costs low enough to prevent the company from going bankrupt." (Ex. 2 – E. Musk Dep. at 33). As a result, Musk instructed his inner circle to end the employment of any employees that were not "excellent, critical, and put the company first." (Ex. 20 – Nordeen Dep. at 104–105). He also instructed this group to "exit anyone disloyal." (Ex. 10 – Text message from E. Musk to Davis; Ex. 2 – E. Musk Dep. at 267, 270-71; Ex. 21 – Davis Dep. at 89-90.) In furtherance of these directives, the small group conducted "an exercise to determine people who were being insubordinate and who were security risks." (Ex. 3 – James Musk Dep. at 159). This directive led to Ross Nordeen submitting a list of names to Katie Marcotte of such employees. (Ex. 11 – Messages between Nordeen and Marcotte). This small, centralized group of decisionmakers is the antithesis of what the Supreme Court decried in *Dukes*.

Musk also directed his small group of relatives and advisors to conduct a series of "code reviews" and require all software employees to submit weekly updates of their coding activities to one central email so that the small group could further reduce headcount by exiting employees on the basis of their codes. (Ex. 10 – Text message from E. Musk to Davis; Ex. 2 – E. Musk Dep. at 34-35, 275-76; Ex. 8 – Conti Dep. at 133; Ex. 9 — A. Musk Dep. at 183-84, 188.). Elon Musk expressly testified that his directive to conduct these reviews "was a furtherance of the cutting of the workforce." (Ex. 2– E. Musk Dep. at 38). And despite each of these employees having been deemed "excellent" when the company conducted its initial mass November 4, 2022, reduction

in force (and thus were not laid off at that time), these employees (putative class members here) were shortly thereafter allegedly terminated for poor performance on the code reviews.  The fact that employees who were deemed "excellent" just weeks earlier would then be terminated for poor performance clearly raises an issue of fact (collectively) as to whether the code review was (as Elon Musk himself admitted) a furtherance of the layoffs he implemented.

The proposed WARN Acts classes here all involve a predominant common question of law or fact revolving around whether these alleged for-cause terminations were part of Twitter's common policy of reducing its workforce. Thus, Rule 23's commonality and predominance requirements have been met.

In *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374–79 (7th Cir. 2015), the Seventh Circuit — extensively citing Supreme Court caselaw — rejected the same arguments as to commonality and predominance Twitter is now making.  The court explained that the existence of *claims* of a centralized, unofficial policy were sufficient for class certification and that the ultimate *existence* of such a policy is inappropriate for adjudication at the class certification stage. This Court, too, has repeatedly come to the same conclusion that it is the *allegation* of a common policy or practice that determines the availability of class certification, rather than the ultimate merits of such an allegation. *See, e.g.*, *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 447 (N.D. Cal. 2008); *Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 193 (N.D. Cal. 2009); *Ambrosio v. Cogent Commc'ns, Inc.*, 2016 WL 777775, at *5 (N.D. Cal. Feb. 29, 2016) (quoting *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958–59 (9th Cir. 2009)) (alternations omitted) ("[C]ourts are instructed to look for 'centralized rules suggesting a uniformity among employees' because, to the extent they reflect the realities of the workplace, they facilitate common proof of otherwise individualized issues.").

Against this backdrop, Twitter's arguments that the proposed WARN Acts classes fail to satisfy commonality and predominance under Rule 23 — all of which are premised upon

Twitter's claims that individual reasons for terminating employees will predominate[3] — fail.

### 2. Plaintiff has satisfied the numerosity requirement

Plaintiff has undoubtedly satisfied numerosity here, as Twitter does not refute that there are roughly forty (40) putative class members whom Twitter terminated without providing WARN Act Notice in November 2022 alone. In fact, Twitter acknowledges that there are at least 115 putative class members from November 2022 to the present. Twitter, however, asks the Court to simply take its word for it that 70% of those putative class members are bound by arbitration agreements. The enforceability of those agreements cannot and should not be considered at the class certification phase.

As Plaintiff explained in his motion, courts in the Ninth Circuit have routinely held that the existence or lack thereof of enforceable arbitration agreements must be considered **after** a class has been certified, because until certification, putative class members (and any of their purported arbitration agreements) are not properly before the court. *See, e.g. Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234–35 (S.D.N.Y. 2020) (collecting cases); *see also Ma v. Twitter*, 2024 WL 3086694, at *2 (where Judge Tigar recently declined to consider *Plaintiffs'* motion to compel arbitration until after class certification was addressed).

However, even if the Court only considers those employees who Twitter claims signed arbitration agreements (which it should not do), Twitter admits that the WARN Act class size would be 35 members, which itself is sufficiently numerous to satisfy Rule 23. "There is no absolute minimum number of plaintiffs necessary to demonstrate that the putative class is so numerous so as to render joinder impracticable." *Breeden v. Benchmark Lending Group, Inc.,*

---

[3]     Twitter also asserts that the presence of arbitration agreements for certain class members affect typicality and adequacy (in addition to numerosity). Those arguments are addressed *infra*. Twitter's claims that superiority is defeated by the need for individual determinations about whether for cause terminations were justified is premised on its overarching claim that these terminations were all individualized. But for the same reasons these claims satisfy the Rule 23(a) prongs, they also satisfy superiority: the terminations were all effectuated as part of a centralized, unilateral decision by Musk and informed by a small group of decisionmakers, rendering common the evidence and witnesses and thus much more susceptible to common adjudication rather than by splitting these claims into individual trials and thus wasting judicial resources, efficiency, and costs.

229 F.R.D. 623, 628 (N.D. Cal. 2005). Indeed, other in-circuit courts, citing Ninth Circuit

precedent, have explained:

> While there is no fixed number that satisfies the numerosity requirement, "[t]he Ninth Circuit has required at least fifteen members to certify a class, and classes of at least forty members are usually found to have satisfied the numerosity requirement." *Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228, 232 (C.D. Cal. 2018) (citing *Harik v. Cal. Teachers Ass'n*, 326 F.3d 1042, 1051 (9th Cir. 2003) ). Here, Plaintiff seeks to certify a class of…workers that contains at least 31 members. Defendant argues that because Plaintiff's proposed class of about 31 members is less than forty, Plaintiff has failed to show that joinder would be impractical here….Joining 31 plaintiffs would not be impossible, but it would be difficult and inconvenient to manage a case with so many plaintiffs, especially since, as discussed below, the primary legal issue facing all putative class members is the same. As such, the numerosity requirement is met.

*Jensen v. SECORP Industries*, 2018 WL 5961287, at *2 (C.D. Cal. Aug. 23, 2018); *see also*

*Rollins v. Traylor Bros Inc.*, 2016 WL 5942943, at *1 (W.D. Wash. May 3, 2016) (noting "the

Court previously found that a class of thirty-two members was sufficiently numerous" to satisfy

Rule 23); *Willis v. Koning & Associates*, 2023 WL 2541327, at *2 (N.D. Cal. Mar. 15, 2023)

(quotation and citations omitted) ("Where a class falls into the gray area between 21 and 40

class members, the court considers factors other than class size in determining numerosity"

including "the judicial economy that will arise from avoiding multiple actions").

### 3. Plaintiff has satisfied the typicality and adequacy requirements

Twitter argues that Plaintiff has not satisfied typicality and adequacy for two reasons.

First, Twitter regurgitates its merits arguments as to whether Plaintiff can satisfy commonality

and adequacy. For the reasons described *supra*, the Court should reject those arguments.

Second, Twitter contends that the fact that Plaintiff opted out from his arbitration

agreement makes him atypical and inadequate as a class witness. As explained *supra*, it is

inappropriate for the impact of the arbitration agreement to be addressed prior to determining

class certification. However, Twitter's arbitration agreement does not prevent unnamed class

members from passively participating in a class action that someone else (not bound by

arbitration) has brought in court, even if it would preclude an employee from bringing his or

her own case in court, because the language of the agreement does not include such a

prohibition. *See E.E.O.C. v. Waffle House*, 534 U.S. 279, 289 (2002).  In relevant part, Twitter's arbitration agreement states: "You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis." (Twitter Arbitration Agreement ¶ 5, Dkt. 14-1 at p. 13.) The arbitration agreement continues: "There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ('Class Action Waiver')." (Twitter Arbitration Agreement ¶ 5, Dkt. 14-1 at p. 13.). This arbitration agreement is notably different in that respect from that promulgated by other companies, which expressly forbid workers from, not only bringing their own claims in court, but also from being passive class members in a class claim brought by someone else.[4]

It should not be relevant whether the unnamed class members would have been permitted to bring their own claims in court (had they tried to do so) because, unlike Plaintiff, unnamed

---

[4]    *See, e.g., Coleman v. Jenny Craig, Inc.*, 2013 WL 6500457, *4 (S.D. Cal. Nov. 27, 2013), *aff'd*, 2016 WL 1583627 (9th Cir. Apr. 20, 2016) (noting that arbitration provision that precluded unnamed class members from "participat[ing] in a class action" could prevent such individuals from being part of a certified class); *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 611 (S.D. Cal. 2015) (class waiver precluded employees from proceeding in court "as a plaintiff or class member"); *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 862 (D. Md. 2013) (finding that unnamed class members who had agreed to not "*file or join* any class action or class arbitration" were precluded being part of the certified class) (emphasis added); *Andrade v. P.F. Chang's China Bistro, Inc.*, 2013 WL 5472589, *12 (S.D. Cal. Aug. 9, 2013) (class waiver precluded class members from "*participat[ing] in* a class, representative or collective action") (emphasis added); *Ramirez v. Freescore, LLC*, 2011 WL 3812608, *3 (C.D. Cal. Aug. 30, 2011) (enforcing class waiver that waived the right of class members to "bring or participate in a class action or similar proceeding"). While Twitter cites to *Lawson v. Grubhub, Inc.*, 13 F.4th 908, 913 (9th Cir. 2021), which at first blush may seem to turn against Plaintiff's argument, the arbitration agreement in *Lawson* is distinguishable. There, the arbitration agreement waived the employees' rights "to have any dispute or claim brought **or among them**, [or] heard or arbitrated as a class action." *Id.* (emphasis added) Here, the arbitration agreement only requires that any claims be *brought* on an individual basis and does not include the broad language to cover claims "among" the parties rather than simply just between the parties.
          Twitter, as a sophisticated business, could have used broader language if it had intended its employees not to be permitted to participate as passive class members in a class claim brought by someone not bound by the arbitration clause. But it did not.  Twitter, the drafter of the arbitration provision, should not be permitted to argue that unnamed class members have agreed to something that they did not. *See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. University*, 489 U.S. at 478 (1989).

class members are "not part of the lawsuit." *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1072 (C.D. Cal. 2010); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985) ("an absent class-action plaintiff is not required to do anything."); *Bzdawka v. Milwaukee Cty.*, 238 F.R.D. 468, 473 (D. Wis. 2006) ("In a class action, the unnamed class members are 'passive' in contrast to the named plaintiff, who actively prosecutes the litigation on their behalf"), citing Conte & Newberg, supra, at § 2.7. Instead, under Rule 23, unnamed class members are *represented* by a class representative who asserts claims on *behalf of* unnamed class members. *See* Fed. R. Civ. P. 23; *Aguilera v. Prospect Mortgage, LLC*, 2013 WL 4779179, *4 (C.D. Cal. Sept. 5, 2013) ("In a Rule 23 class action, the class representatives are understood to represent all absent class members from the moment of certification.").

The Court cannot rewrite Twitter's arbitration agreement to preclude passive participation in a class action, so its typicality and adequacy arguments should be rejected.[5]

## B. THE COURT SHOULD CERTIFY PLAINTIFF'S LATE PAYMENT CLASS

### 1. The proposed class is ascertainable and is not a "fail-safe class"

As to what it brands the "Waiting Time Penalty Class," in the same breath, Twitter argues both that Plaintiff fails to "propose any objective criteria for identifying members of his proposed class," *and* that this class "is an impermissible 'fail-safe' class" because it is so narrowly defined as to preclude any members unless Twitter's liability is established. Opp. at 18–19. But these contradictory statements cannot be true, and indeed, neither one is true.

This proposed class is much more straightforward than Twitter would have the Court believe. First, Plaintiff is pressing this class claim only for the late reimbursement of expenses. As Plaintiff has alleged, and Twitter itself admitted (Ex. 6 – 30(b)(6) Wegman Dep. at 112),

---

[5]     Twitter argues in passing that superiority is also lacking, but it fails to specify why beyond seeking to distinguish the cases cited in Plaintiff's motion. Here, though, a class action is clearly superior as the root question for all putative class members is the same: were they part of Twitter's broader layoff plan or not? Trying these cases would involve calling nearly all of the same witnesses and would revolve around much of the same evidence, making a class action vastly superior to 115 trials on the same issue.

Twitter did not reimburse employees for their expenses immediately upon termination.  Thus, any employees who suffered this delay would be in the class.  It would simply be an exercise in reviewing Twitter's class-wide pay records and "Concur," its "expense management tool," (Ex. 6 – 30(b)(6) Wegman Dep. at 112), to determine whether Twitter timely reimbursed employees' business expenses.

Twitter's efforts to overcomplicate the matter should be rejected. First, there simply is no "ascertainability" requirement under Rule 23, and the Ninth Circuit has held that a district court commits reversable error by reading one into the rule:

> The district court erred when it held that the class could not be certified because it was not "ascertainable." Again, the district court's reasoning runs headlong into an inconsistent case that was decided after the district court's ruling. In *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), our court—using different terminology for what the district court called "ascertainability"—held that there was no separate "administrative feasibility" requirement for class certification. *Id.* at 1123. We reverse the district court's denial of class certification and remand for further consideration of whether class certification is appropriate.

*Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 576 (N.D. Cal. 2018). To the extent Twitter argues it would be difficult to ascertain the members of any such class, these claims are belied by the fact that it kept payroll records making it easily discernable who was paid when and for what, and the fact that it implemented an automated process for submitting expense reimbursement requests. (Ex. 6 – 30(b)(6) Wegman Dep. at 112).

Second, the proposed class is not an impermissible "fail-safe class" merely because Plaintiff used the word "full" in defining the class earlier.  Plaintiff seeks to represent a class of employees who did not receive their expense reimbursements upon termination; determining this class would not require parsing whether each employee was "fully" reimbursed for their expenses upon termination.[6]

---

[6]     If the Court believes it must redefine the requested class in order to certify it, it would be appropriate for the Court to do so. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666 (9th Cir. 2022); *Tyus v. Wendy's of Las Vegas, Inc.*, 407 F. Supp. 3d 1088, 1100–01 (D. Nev. 2019).

### 2.    Twitter's "Lack of Proof," "Lack of Demonstrable Harm," and Related Article III Standing arguments are misguided and legally erroneous

Among Twitter's hodgepodge of arguments are its assertions that Plaintiff and the putative class members lack Article III standing to pursue their late payments claims as a class and that a purported "lack of proof" of injuries precludes class certification. While it is true that this Court must always assure itself that Article III standing exists as to all claims, "[i]f a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Here, both Plaintiff and the putative class allege that Twitter deprived them of monies owed and that they are empowered by statute to recover for this deprivation; this is the quintessential example of Article III standing.

To begin, while Twitter argues that Plaintiff failed to offer proof, Twitter itself openly admitted during a Rule 30(b)(6) deposition to the delays on a companywide basis with respect to expense reimbursements. (Ex. 6 – 30(b)(6) Wegman Dep. at 112). Further, while Twitter cites some federal (rather than California) cases for the proposition that waiting time penalties do not accrue for late reimbursement of expenses, California caselaw suggests just the opposite. The California Supreme Court recently explained that the definition of "wages" due immediately upon termination is more expansive than court have been interpreting. In *Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93, 110 (2022) (internal citations omitted), the court explained that because "the Legislature requires employers to pay missed-break premium pay on an ongoing, running basis, just like other forms of wages[, i]t stands to reason that, just like other forms of wages, any unpaid premium pay must be paid promptly once an employee leaves the job." The same is true for expense reimbursements — like pay for missed meal breaks, expense reimbursements must be paid to employees "on an ongoing, running basis." Even before *Naranjo*, court had recognized this obligation. *See, e.g.*, *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1125 (S.D. Cal. 2006) (holding expense reimbursements must be paid immediately upon termination pursuant to Cal. Labor Code § 200).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Moreover, Mr. Adler testified under oath that he had his expenses reimbursed late. Combined with Twitter's admission that payments were made late in the chaos that followed its mass layoff on November 4, 2022, this is more than enough to secure class certification.

And regardless, while Twitter attempts to argue that Plaintiff must *prove* that class members were all deprived of monies, it has steadfastly deprived Plaintiff the documents that are critical to advancing this claim, as Plaintiff has raised in his discovery dispute letter to the Court (Dkt. 52). This letter remains pending, as the Court has ordered the parties to confer in person on August 13, 2024 (Dkt. 71).  In response to all Interrogatories seeking information about the putative class and its members, Twitter refused to provide the requested information, instead writing *no less than eight separate times*:

> Twitter further objects to this Interrogatory…to the extent it seeks discovery concerning individuals other than the named Plaintiff when this matter has not been certified as a class action, no *prima facie* grounds for class certification exist, and individuals other than Plaintiff are not otherwise a party to or participants in this action. Discovery of the sought-after information should be phased and considered only following a ruling on class certification.

(Ex. 15 – Interrogatory Responses at 6, 7–8, 8–9, 9–10, 11, 12, 14, 16). Twitter cannot wholly refuse to provide the information necessary for proving Article III standing and then argue that Plaintiff has failed to prove Article III standing.[7]

### 3. Twitter's remaining arguments regarding commonality, predominance, superiority, and numerosity fail because Twitter's failure to timely pay expense reimbursement to Plaintiff and putative class members presents a question that will rise or fall based on a common policy

Finally, for the same reasons as its other arguments, Twitter's remaining commonality, predominance, superiority, and numerosity arguments all fail. Plaintiff has adequately alleged that "hundreds, if not thousands, of Twitter employees within California did not receive their…reimbursements on the day of their termination." Mot. at 7. In addition to its arguments that insufficient proof exists for these claims (which it can maintain only through its complete failure to meaningfully engage in discovery), Twitter's remaining contentions all center around

---

[7]     To the extent the Court is inclined to agree with Twitter's various lack of proof arguments, it should decline to rule until Twitter complies with its discovery obligations.

its assertion that the defense of non-willfulness precludes commonality, predominance, superiority, and numerosity. Here, too, its arguments fail.

Twitter seeks to muddy the waters by claiming a defense of non-willfulness — or alternatively, arguing that Plaintiff has failed to establish willfulness — and that the need to prove willfulness as to each payment defeats class certification. But if Twitter is asserting non-willfulness as a defense, the Ninth Circuit has held:

> When defendants opposing class certification raise a legal defense that may defeat commonality, the district court cannot assume its validity but should make a threshold determination on the legal merits. The district court need not take evidence to determine the legal merits of defendants' defense, because otherwise it would defeat the purpose of class certification.

*Edwards v. First Am. Corp.*, 798 F.3d 1172, 1184 (9th Cir. 2015). On the other hand, if Twitter is asserting that willfulness has not been proved, (1) it has waived this argument by refusing to produce the discovery responses germane to such claims until *after* class certification is decided, and (2) its arguments fail for the same reasons as those related to the WARN Act classes, as Plaintiff has alleged that Twitter's refusal to provide timely payments were similarly part of a concerted, centralized policy to effectuate Elon Musk's mandate to immediately cut expenses as rapidly as possible.

### III.   CONCLUSION

For the foregoing reasons, the Court should certify Plaintiff's requested classes.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

EITAN ADLER, on behalf of himself and all others similarly situated,

By his attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan (SBN 310719)
*sliss@llrlaw.com*
Bradley Manewith (*pro hac vice*)
*bmanewith@llrlaw.com*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801

Dated: August 5, 2024

1

## CERTIFICATE OF SERVICE

2

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document

3

was served on counsel for Defendants Twitter, Inc. and X Corp. via the CM/ECF system on

4

August 5, 2024.

5

6

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28