MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:   +1.415.442.1000
Fax:  +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
1400 Page Mill Road
Palo Alto, CA 94304
Tel:   +1.650.843.4000
Fax:  +1.650.843.4001

Attorneys for Defendant
X CORP. f/k/a TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EITAN ADLER,<br><br>                      Plaintiff,<br><br>           vs.<br><br>TWITTER, INC. and X CORP.,<br><br>                      Defendants. | Case No. 3:23-cv-01788-JD<br><br>**DEFENDANT X CORP.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Date:   May 8, 2025<br>Time:  10:00 a.m.<br>Place:  Courtroom<br>Judge:  Hon. James Donato |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND
Case No. 3:23-CV-01788-JD

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. II

II. FACTUAL BACKGROUND ................................................................................................ 3

    A. Summary of Adler's Initial Claims and Withdrawal of Certain Claims. ................. 3

    B. The *Cornet* Action. ................................................................................................ 3

        1. Adler's Counsel Asserts Claims for Breach of Contract and Promissory Estoppel in *Cornet* Five Months Before Filing This Action. ................................................................................................. 3

        2. Adler's Counsel Files This Lawsuit Rather Than Substitute a Plaintiff in *Cornet*, But Leaves All Contract and Estoppel Claims Pending in *Cornet*. ......................................................................................... 4

        3. Transfer of the *Cornet* Contract and Estoppel Claims to Delaware, *Including* Claims Based on FAQs Outside the Merger Agreement ............. 5

    C. Relevant Procedural History including Pleading Amendment Deadlines. ............. 6

III. ARGUMENT ......................................................................................................................... 8

    A. Plaintiff Fails to Show Good Cause For Relief From the Scheduling Order. .......... 8

    B. Even If Plaintiff Met Rule 16 Requirements, His Motion Fails Under Rule 15. ................................................................................................................ 11

IV. CONCLUSION .................................................................................................................... 15

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
   781 F.2d 1393 (9th Cir. 1986) .................................................................................... 12, 13

*Adams v. Cal. Dep't of Health Servs.*,
   487 F.3d 684 (9th Cir. 2007) ............................................................................................ 11

*Adler v. Twitter, Inc. et al.*,
   3:23-cv-01788 (N.D. Cal.) ............................................................................................. 4, 5

*Allen v. Beverly Hills*,
   911 F.2d 367 (9th Cir. 1990) ..................................................................................... 11, 12

*AmerisourceBergen Corp. v. Dialysis West, Inc.*,
   445 F.3d 1132 (9th Cir. 2006) .......................................................................................... 11

*Bonin v. Calderon*,
   59 F.3d 815 (9th Cir. 1995) .............................................................................................. 13

*Borodaenko v. Twitter, Inc., et al.*,
   No. 3:22-cv-07226-AMO (claims for alleged disability discrimination, filed
   Nov. 16, 2022) .................................................................................................................. 13

*Carolina Strifling, et al. v. Twitter, Inc., et al.*,
   Case No. 4:22-cv-07739-JST ....................................................................................... 1, 13

*Fidelity Fin. Corp. v. Fed. Home Loan Bank*,
   79 F.3d 1432 (9th Cir. 1986) ............................................................................................ 12

*Foman v. Davis*,
   371 U.S. 178 (1962) .......................................................................................................... 11

*Giuliano v. SanDisk Corp.*,
   2014 WL 4685012 (N.D. Cal. 2014) .............................................................. 11, 12, 13, 14

*Gonzalez v. US Human Rights Network Inc.*,
   2022 WL 3575305 (D. Ariz. July 21, 2022) ..................................................................... 10

*Jackson v. Bank of Hawaii*,
   902 F.2d 1385 (9th Cir. 1990) .......................................................................................... 12

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ........................................................................................ 8, 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-ii-

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND
Case No. 3:23-cv-01788-JD

*M/V American Queen v. San Diego Marine Const. Corp.*,
  708 F.2d 1483 (9th Cir. 1983) ................................................................................................ 12

*Morongo Band of Mission Indians v. Rose*,
  893 F.2d 1074 (9th Cir. 1990) .......................................................................................... 12, 14

*Mpoyo v. Litton Electro-Optical Sys.*,
  430 F.3d 985 (9th Cir. 2005) ........................................................................................... 10, 11

*Pettit v. Ariz. Bd. of Regents*,
  525 Fed.Appx. 625 (9th Cir. 2013) ........................................................................................ 12

*Rabb v. Figueroa*,
  2024 WL 1253855 (E.D. Cal. Mar. 24, 2024) ....................................................................... 11

*Rich v. Shrader*,
  823 F.3d 1205 (9th Cir. 2016) ............................................................................................... 12

*Trans Video Elec. Ltd. v. Sony Elec., Inc.*,
  278 F.R.D. 505 (N.D. Cal. 2011) ........................................................................................... 14

*U.S. ex rel. v. Gen. Dynamics C4 Sys.*, Inc.,
  637 F.3d 1047 (9th Cir. 2011) ............................................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................................... 10

*Zeman v. Twitter, Inc., et al.*,
  No. 3:23-cv-1786-SI (age discrimination claims, filed Apr. 13, 2023) ................................. 13

**Statutes**

28 U.S.C. § 2072(b) ..................................................................................................................... 10

Adler's WARN Act ....................................................................................................................... 11

California Private Attorneys General Act .............................................................................. 3, 7, 9

California WARN Act ........................................................................................................... passim

Federal WARN Act ......................................................................................................................... 3

Rules Enabling Act ....................................................................................................................... 10

**Other Authorities**

Local Rule 16-10 ............................................................................................................................. 7

Rule 15 ................................................................................................................................... passim

Rule 15(a) ..................................................................................................................................... 11

-iii-

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND
Case No. 3:23-cv-01788-JD

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Rule 16 ............................................................................................................................... *passim*

Rule 16(d) ..................................................................................................................................... 8

Rule 23 ....................................................................................................................................... 10

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

-iv-

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND
Case No. 3:23-cv-01788-JD

## I. INTRODUCTION

Almost 14 months after this Court's January 31, 2024 deadline for pleading amendments, and nearly two and a half years after Plaintiff's own counsel, Ms. Liss-Riordan, filed a class action lawsuit asserting the very same breach of contract and promissory estoppel claims covering Plaintiff that he now seeks to add here – *Emmanuel Cornet, et al. v. Twitter, Inc.* ("*Cornet*") – Plaintiff moves to add these duplicative claims in this case. That amendment deadline remained unchanged. As such, the more stringent standards of Federal Rule of Civil Procedure ("Rule") 16 govern his Motion for Leave to File Second Amended Complaint ("Motion" or "Mot."), *not* the standards under Rule 15 as his Motion asserts. Plaintiff fails to establish the requisite good cause under Rule 16 to change this Court-ordered scheduling deadline nearly 14 months after it expired. While these facts alone should end the inquiry under Rule 16, Plaintiff's Motion also is a futile effort since, under this Court's order transferring *all* such contract and estoppel claims to Delaware federal court (Request for Judicial Notice ("RFJN"), Ex. 7), any amendment permitted here would likely meet the same fate.

Plaintiff's delay in seeking to modify the schedule to accommodate a belated amendment is inexcusable for the further reason that he and his counsel knew *for years* about the potential claims he now seeks to add. His counsel filed the *Cornet* class action on November 3, 2022, and also has been pursuing the same breach of contract and promissory estoppel claims on behalf of hundreds of claimants in arbitration. *See* Mot. at 1. Against this background, Plaintiff cannot (and does not) assert that his prior inaction in bringing these claims in this Action was anything other than knowing and purposeful. Presumably, he was satisfied for more than two years with his counsel's representation of his interests as a putative class member in *Cornet*, and he has provided no credible explanation in his Motion for his last-minute about-face. Regardless, Plaintiff's tactical whims cannot justify a last-minute reprieve from a pleading deadline that expired long ago.[1]

In addition, Plaintiff had numerous opportunities to raise these claims much earlier in this

---

[1] As discussed below, Plaintiff's footnoted contention that amendment should be granted because he could simply file a separate action asserting his contract and estoppel claims is contrary to law. Mot. at 4 n.7. Any such separate action would be subject to immediate dismissal under res judicata and/or claim-splitting principles. *See infra* note 4.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-1-

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND
Case No. 3:23-cv-01788-JD

case, including in his original complaint filed on April 13, 2023 (*i.e.*, two years ago), and in various case management filings and hearings thereafter. Yet Plaintiff never even mentioned the prospect of amending his complaint to add these claims. If, for example, Plaintiff had disclosed at the Case Management Conference on August 24, 2023 (or afterward) that he wanted to monitor the *Cornet* case and reserve the right to separately pursue estoppel and contract breach claims in this action at some point in the future depending on developments in *Cornet*, the Court presumably would not have indulged Plaintiff's request. Even worse than mere silence, Plaintiff's counsel emphasized to this Court that his claims in this Action were distinct and separate from those in other pending cases filed by his counsel, including *Cornet*. Plaintiff has not shown, and cannot show, good cause for his failure to adhere to the Court's long-passed deadline for amended pleadings. This alone warrants denial of his Motion under Rule 16, without the need to consider Rule 15 standards.

Even if Rule 15 standards applied here, the Court should still deny his Motion. Beyond Plaintiff's impermissible delay, his Motion reflects bad faith tactical gamesmanship, forum shopping, material prejudice to Defendant, and futility for reasons noted. Plaintiff represented that only his originally pleaded claims were at issue, including under the WARN Act and the California Labor Code. Two years into this case, he now seeks to inject entirely new claims that would duplicate claims pending in *Cornet* and require new discovery for Defendant to mount an effective defense. Plaintiff's sudden urgency to litigate these contract and estoppel claims in *this* Court, rather than in *Cornet* where Defendant's motion to dismiss is pending, reveals his underlying intent to forum shop. This is too little too late, and not a proper use of the amendment process. Plaintiff's late Motion also manifestly prejudices Defendant, as it would inject new claims and theories late in this case, when class certification has already been briefed and Defendant is prepared to file for summary judgment on his individual claims. Under Ninth Circuit precedent, these factors weigh in favor of denial of his Motion, even if discovery *could* in theory proceed on such new claims. Plaintiff's apparent disinterest in seeking discovery on his new claims also cannot deprive Defendant of its right to do so. This is the definition of prejudice, not to mention sandbagging. And as noted, his proposed claims likely would be transferred to Delaware in any event, rendering them futile in this Court. The Court therefore should deny Plaintiff's Motion.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-2-

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND
Case No. 3:23-cv-01788-JD

## II. FACTUAL BACKGROUND

### A. Summary of Adler's Initial Claims and Withdrawal of Certain Claims.

Adler is a former Staff Software Engineer employed by Defendant from June 2015 to November 2022, in which role he had access to "business critical" aspects of the Company's infrastructure. ECF No. 3, ¶ 3; ECF No. 81 at 12. Defendant terminated Adler's employment on November 15, 2022, for violating company policy – specifically, Plaintiff confirmed on a Slack channel used by thousands of employees that a specific identified software command would cause the Twitter website to cease functioning. ECF No. 30, p. 2:16-17; ECF No. 81 at 12-13.

Adler alleges that his termination was part of Defendant's mass layoffs, rather than a termination for cause. ECF No. 30, p. 2:14-16, p. 9:2-10; ECF No. 72, p. 1. On April 13, 2023, he filed a Complaint (amended the same day) alleging class claims for violation of the federal and California Worker Adjustment and Retraining Notification Acts (collectively, the "WARN Act") for failure to provide WARN notices, and class claims under the California Labor Code for failure to pay all final pay amounts upon termination, including expense reimbursements. ECF Nos. 1, 3. He also seeks civil penalties under the California Private Attorneys General Act ("PAGA"). *Id*.

On July 13, 2024, Adler moved for class certification. ECF No. 72. At the October 10, 2024, hearing on that motion, he limited his class claims to (1) a nationwide federal WARN Act class, and (2) a California class of terminated employees who did not receive timely expense reimbursements. ECF No. 89. The Court ordered Defendant to give Plaintiff information about employees terminated for cause and who signed arbitration agreements, and ordered supplemental briefing. *Id.* After Defendant did so, Adler withdrew his request for class certification under the WARN Act. ECF No. 92. He thus has an individual WARN Act claim, a pending class claim for late expense reimbursements under the California Labor Code, and a related PAGA claim. *Id.* As discussed below, Plaintiff's claim that this is "now a single plaintiff case" is simply wrong.

### B. The *Cornet* Action.

#### 1. Adler's Counsel Asserts Claims for Breach of Contract and Promissory Estoppel in *Cornet* Five Months Before Filing This Action.

On November 3, 2022 – more than five months *before* Adler filed this lawsuit – his

counsel filed class claims with this Court in *Cornet* "on behalf of all affected Twitter employees across the United States who have lost their jobs as a result of Twitter's mass layoffs," alleging violations of the WARN Act and claims for late final wage payments to California employees under the California Labor Code – the same claims that Adler later asserted in this case. RFJN, Ex. 1. On November 8, 2022, Adler's counsel amended the complaint in *Cornet* to add class claims for breach of contract and promissory estoppel, including based on severance pay "promises" in "Frequently Asked Questions" ("FAQs") – again encompassing the claims that Adler seeks to add in this case. RFJN, Ex. 2.

### 2. Adler's Counsel Files This Lawsuit Rather Than Substitute a Plaintiff in *Cornet*, But Leaves All Contract and Estoppel Claims Pending in *Cornet*.

Although Defendant disputes that Plaintiff was laid off given his termination for cause, it is undisputed that he falls within the *Cornet* putative class asserting claims for breach of contract and promissory estoppel, given his allegation that "he was terminated as part of a mass layoff." *See* Motion at 2. It also is undisputed that Adler and his counsel have known of his inclusion in *Cornet* for *years*, since November 2022. *See id.* at 2. Indeed, after Defendant moved in *Cornet* in December 2022 to transfer venue and/or dismiss all WARN Act and California law claims in part due to lack of a plaintiff who was not bound to arbitrate their claims, Plaintiff's counsel asked this Court in early 2023 for leave "to seek amendment to add an additional lead plaintiff [in *Cornet*] who opted out of arbitration in order to advance" such claims. RFJN, Exs. 3-4; RFJN, Ex. 5 at 7-8 (Feb. 2, 2023 Joint Case Management Statement).

Plaintiff's counsel clearly contemplated Adler as that substitute plaintiff. After Defendant opposed such proposed amendments (RFJN, Ex. 5 at 8), Adler (who was not bound by an arbitration agreement) filed this Action on April 13, 2023 asserting class WARN Act and California Labor Code claims, instead of filing the proposed substitution in *Cornet*. RFJN, Ex. 6 (Notice filed on April 13, 2023 by Adler's counsel in *Cornet* stating that, due to Defendant's opposition to substitution of a lead plaintiff in *Cornet*, "Plaintiffs' counsel have now filed a new case, *Adler v. Twitter, Inc. et al.*, 3:23-cv-01788 (N.D. Cal.), with a lead plaintiff who opted out of arbitration."). Adler's counsel further stated in *Cornet* that, "[a]s a result of the filing of the

ATTORNEYS AT LAW
SAN FRANCISCO

-4-

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND
Case No. 3:23-cv-01788-JD

*Adler* case," this Court could either dismiss or stay the federal and California WARN Act claims and the California Labor Code claims in *Cornet*. *Id.*

Significantly, Plaintiff and his counsel did *not* file any breach of contract or promissory estoppel claims in *Adler*, instead leaving those class claims pending in *Cornet*.

### 3. Transfer of the *Cornet* Contract and Estoppel Claims to Delaware, *Including* Claims Based on FAQs Outside the Merger Agreement.

On April 19, 2023, this Court granted Defendant's Motion to Transfer the *Cornet* action, and transferred the case to the District of Delaware based on the forum selection provision in the Merger Agreement. RFJN, Ex. 7. On May 17, 2023, Twitter filed a motion to dismiss the Second Amended Complaint with the Delaware federal court in *Cornet*. Declaration of Eric Meckley ("Meckley Decl."), ¶ 2. That court heard oral argument on Defendant's motion on January 16, 2025, which is pending. *Id*.

Notably, in describing this Court's transfer ruling, Plaintiff's instant Motion states:

> This Court transferred the Cornet case to Delaware, because that case had an additional claim for breach of contract that was based on the Merger Agreement through which Mr. Musk purchased Twitter, and that contract had a Delaware choice of forum provision. C.A. No. 3:22-cv-06857-JD (Dkt. 66). Here, however, Mr. Adler is not seeking to add a claim for breach of contract pursuant to the Merger Agreement, *nor does his proposed amendment* make any reference to *or stem from the Merger Agreement. Thus, there is no choice of forum provision in the contract which he seeks to enforce and no basis for transfer of this case*.

Motion at 2-3 n.5 (emphasis added). This is false. In *Cornet*, as in Plaintiff's proposed amendment here, plaintiff *also* asserted breach of contract and promissory estoppel claims based on various promises alleged to be *separate* from his third-party beneficiary claims under the Merger Agreement itself, including in acquisition-related FAQs. RFJN, Ex. 8 (Counts I & III of Second Amended Complaint in *Cornet*). In ordering a transfer, this Court stated:

> Plaintiffs do not contest that the breach of contract claim alleged in Count II, which alleges that they were third-party beneficiaries to the merger agreement, falls within the scope of the forum-selection clause. See Dkt. No. 56 at 7. *But they say that the additional breach of contract claim in Count I and the promissory estoppel claim alleged in Count III "stand independent from Twitter's merger agreement."* Id.
>
> *The complaint demonstrates otherwise.* The SAC alleges that "Twitter made various promises to employees" in an effort to "allay employees' concerns and try to prevent them from leaving Twitter." Dkt. No. 40 ¶ 25. One of these promises "was that, if there

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-5-

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND
Case No. 3:23-cv-01788-JD

> were layoffs, employees would receive benefits and severance at least as favorable as the benefits and severance that Twitter previously provided to employees." Id. ¶ 27. This promise was also "included in Twitter's merger agreement," id. ¶ 29, and *"communicated by Twitter to its employees in writing, including through distribution of a Frequently Asked Questions (FAQs) document*," id. ¶ 30. The "FAQs" document to which the SAC refers was included in plaintiffs' attachments to their request for litigation notice, Dkt. No. 7, and the document assures employees that the "merger agreement provides special protection for Tweep compensation and benefits for one year following the closing of the transaction." Dkt. No. 7-2 at ECF p. 19.3 Counts I and III each fault Twitter for "repeatedly inform[ing] employees . . . that they would receive the same benefits and severance pay following Elon Musk's purchase of the company." Dkt. No. 40 at 12-13. *Even if these claims might not "require interpretation of" the merger agreement, Yei A. Sun, 901 F.3d at 1086, the dispute that they encompass is at the very least logically connected to it, and to some extent grows out of it. Consequently, Counts I through III fall within the scope of the forum-selection clause.*

RFJN, Ex. 7 at 4-5 (emphasis added). The proposed Second Amended Complaint here contains virtually identical allegations, all similarly stemming from the Merger Agreement, which Plaintiff's counsel's tactical scrubbing of "merger agreement" references here cannot obscure.[2]

### C.  Relevant Procedural History including Pleading Amendment Deadlines.

Plaintiff filed the instant Motion on March 26, 2025, nearly two and half years after his counsel filed identical claims covering him in *Cornet*. ECF No. 94. During that period, Plaintiff never sought to add breach of contract or promissory estoppel claims in *this* case, despite having multiple opportunities to do so, and despite this Court's setting of explicit pleading amendment deadlines. To the contrary, Plaintiff affirmatively represented to this Court that the *Cornet* case

---

[2] *See, e.g.*, Motion Ex. A ¶ 18 ("In order to allay employees' concerns and try to prevent them from leaving Twitter to work at other companies, Twitter made various promises to employees."); *id.* ¶ 19 ("One of the promises was that continuing employees would retain the same wages and benefits for a year after Musk's acquisition of the company."); *id.* ¶ 20 ("Another of the promises was that employees who were terminated within one year of Mr. Musk's acquisition of the company would receive severance pay at least as favorable as the severance pay that Twitter previously provided to employees."); *id.* ¶ 22 ("These promises were communicated to employees orally and in writing by Twitter's management, including its former CEO, human resources personnel, and others. The written promise that benefits and severance would stay the same for a year was distributed to employees throughout the company **in a Frequently Asked Questions (FAQs) document**.")" (emphasis added). **Compare to Cornet**, **Second Amended Complaint** (ECF No. 40) 25 ¶ ("In order to allay employees' concerns and try to prevent them from leaving Twitter to work at other companies, Twitter made various promises to employees."); *id.* ¶ 26 ("One of the promises was that employees would be able to continue working remotely, for at least a year after Musk's acquisition of the company."); *id.* ¶ 27 ("Another of the promises was that, if there were layoffs, employees would receive benefits and severance at least as favorable as the benefits and severance that Twitter previously provided to employees."); *id.* ¶ 30 ("This promise that severance pay and benefits would remain at least as favorable as they were prior to Musk's acquisition of the company was also communicated by Twitter to its employees in writing, including through distribution of **a Frequently Asked Questions (FAQs) document**.") (emphasis added).

was a separate matter involving distinct issues.

On August 17, 2023, the Parties filed a Joint Case Management Statement in which Adler "reserve[d] the right to seek leave to further amend his complaint should the circumstances warrant it," but expressed *no* intent to allege additional claims for breach of contract and promissory estoppel. ECF No. 30. At the August 24, 2023 Case Management Conference, the Court noted that Plaintiff's counsel had filed several cases against Defendant, including "one in Delaware [*Cornet*]", and asked his counsel "how are you going just make sure all these cases go along and don't get crosswise and discovery gets consolidated and things like that?" ECF No. 37 at 2:12-21. Plaintiff's counsel responded: "We actually have a number of these cases, each now raising *different* claims. *This claim does not have the contract claim which you transferred to Delaware in the Cornet case*." *Id.* at 2:23-3:1 (emphasis added). In explaining why Plaintiff's counsel did not file one complaint with various discrimination claims, counsel also stated:

> *[R]ather than moving to continually amend one complaint to add everything*, the kitchen sink, we filed new cases as they arose. Where appropriate, we noted them as related. Again, we thought the discrimination cases were most directly the same types of facts and legal theories. *These other cases such as this one and the bonus claim raise different legal theories*.

*Id.* at 4:10-16 (emphasis added); *see id.* at 11:23-24 ("Cornet is just the contract claim, correct."). Asked by the Court whether Adler "just want[s a] WARN Act benefit" in this case, his counsel responded, "Correct," and represented that Adler is only seeking WARN Act benefits, amounts under the California Labor Code including "final pay expense reimbursement," and relief under PAGA. *Id.* at 6:23-7:11. Plaintiff's counsel then asked for "just a schedule, too, so I assume we can begin discovery." *Id.* at 14:15-16, At no time during the Case Management Conference did Adler's counsel mention the possibility of seeking to amend to add new claims, much less breach of contract and promissory estoppel claims already pending in *Cornet*.

On September 1, 2023, this Court entered a Scheduling Order "pursuant to Federal Rule of Civil Procedure 16 and Civil Local Rule 16-10," including a September 29, 2023 deadline to "[a]dd parties *or amend pleadings* (with the Court's leave, unless permitted as a matter of right under the Fed. R. Civ. P.)." ECF No. 36 at 1 (emphasis added). The Court's Scheduling Order further advised that "All dates set by the Court should be regarded as firm." *Id.* at 2. After the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-7-

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND
Case No. 3:23-cv-01788-JD

Parties stipulated on September 25, 2023 to stay this case pending mediation (which ultimately was not successful), this Court issued an Amended Case Management Scheduling Order extending the pleading amendment deadline to January 31, 2024, again advising that "All dates set by the Court should be regarded as firm." *See* ECF Nos. 41, 44. That deadline has never changed, and it passed nearly 14 months before Plaintiff's Motion.[3]

## III.   ARGUMENT

### A.   Plaintiff Fails to Show Good Cause For Relief From the Scheduling Order.

Rule 16 authorizes a district court to issue a scheduling order that limits "the time to join other parties, amend the pleadings, complete discovery, and file motions." Once the court enters a schedule, the court's scheduling order "controls the course of the action unless the court modifies it." Rule 16(d). "A scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (citation omitted). Allowing a party to disregard deadlines "would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Id.* at 610. Thus, to receive relief from a scheduling order, the moving party must establish good cause, which "primarily considers the diligence of the party seeking the amendment." *Id.* at 609. As a result, "if that party was not diligent, the inquiry should end." *Id.*

After nearly two years of litigation in this case – and, most importantly, **almost 14 months after the deadline to amend pleadings** – Plaintiff seeks to add breach of contract and promissory estoppel claims that he knowingly and voluntarily chose not to pursue earlier in this action. Mot. at 1. He provides no valid justification for his undue delay, particularly after his counsel consciously chose to leave these already-pending claims in *Cornet* rather than pleading them in his initial Complaint here. Over the past nearly two years, Plaintiff never uttered a word about

---

[3] The Court entered a Second Amended Scheduling Order on May 7, 2024, but that Order did not modify the already-lapsed deadline for any further amendment of the pleadings. ECF No. 59. On October 10, 2024, following the hearing on Adler's Motion to Certify Class, this Court issued an Order vacating "[a]ll *remaining* case management deadlines" pending further order. See ECF No. 89 (emphasis added). But this Order similarly did not revive or extend any deadlines that had already passed, including the January 31, 2024 deadline to amend the pleadings. ECF No. 89.

these new claims despite multiple opportunities to do so – including in the Parties' joint Case Management Conference Statement filed on August 17, 2023 (ECF No. 30); at the August 24, 2023 Case Management Conference (ECF No. 37); when this Court extended the pleading amendment deadline to January 31, 2024 due to the Parties' mediation (ECF Nos. 41, 44); or at the October 10, 2024 hearing on Plaintiff's class certification motion (ECF No. 89).

To the contrary, as detailed above, his counsel repeatedly assured this Court that the contract and estoppel claims pending in *Cornet* were separate and distinct from this case. *See supra* at 7: 6-20; ECF No. 37 at 2:23-3:1 ("We actually have a number of these cases, each now raising *different* claims. *This claim does not have the contract claim which you transferred to Delaware in the Cornet case*.") (emphasis added); *id.* at 4:10-16 ("Again, we thought the discrimination cases were most directly the same types of facts and legal theories. *These other cases such as this one and the bonus claim raise different legal theories*.") (emphasis added).

Plaintiff's delay is inexcusable, particularly given the pendency of *Cornet*, which asserts the very same claims on behalf of a putative class to which Plaintiff belongs. Plaintiff's main explanation for his very late amendment request here is: "Now that this case is a single plaintiff case, Plaintiff wishes to add his other claims he has against Twitter related to his failure to receive promised severance after his termination, as well as WARN Act notice. There is good reason for Plaintiff to seek to add these claims, now that this is a single plaintiff case." Mot. at 2. But that is no justification at all. First, Plaintiff is wrong – this is not a "single plaintiff" case. Plaintiff has not, for example, unilaterally dismissed his still-pending class claim under the California Labor Code or his related PAGA claim. His assertion that "he is willing to forgo [these claims] should this amendment be permitted" does not give him license to "horse trade" and add brand new claims long after the Court's "firm" amendment deadline. Mot. at 1-2 and 1 n.1.

Even if this were a "single plaintiff case," however, that too would not excuse his late amendment. It is not uncommon for a named plaintiff in a class or collective action to assert individual claims beyond their class claims, and nothing prevented Adler from doing so here. He consciously chose not to do so, and must now abide by that choice. The Court's January 31, 2024 pleading amendment deadline also did not distinguish between the type of claims being pleaded

(individual or class), and has long passed, despite the Court's admonition that "All dates set by the Court should be regarded as firm." ECF No. 44. Tellingly, Plaintiff fails to cite a single case for his assertion that these are permissible bases for seeking leave to amend. If anything, the fact that Plaintiff now "wishes" to belatedly add new claims merely underscores that his delay has been knowing and tactical, which cannot support his "good cause" showing.

Plaintiff's claims that further discovery is largely unnecessary and that "Twitter will not be prejudiced by this amendment" – while both false as discussed below – are equally irrelevant to the Rule 16 analysis. As the Ninth Circuit has made clear, to receive relief from a scheduling order, the moving party must establish good cause, which "primarily considers the diligence of the party seeking the amendment," and "if that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. Moreover, nothing here would prevent Plaintiff from assisting his counsel in *Cornet*, nor from receiving a recovery in *Cornet* should a class be certified and prevail. And if a class is not certified, he can consider his options at that time. Furthermore, Plaintiff's contract and promissory estoppel claims would face the same res judicata issues regardless of whether this Action proceeds on a class or individual basis. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) ("the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' 28 U.S.C. § 2072(b)"). To the extent Plaintiff is concerned about extinguishing or otherwise splitting his breach of contract and promissory estoppel claims, Defendant is willing to stipulate that if his Motion is denied, it will not raise the prior adjudication of this Action as a basis to exclude Plaintiff from any certified class in *Cornet*.[4]

---

[4] Plaintiff also asserts in a footnote that "if this amendment were not permitted, Plaintiff could simply file a new complaint to raise the breach of contract and promissory estoppel claims (and that complaint would likely be related to this case)." Mot. at 4 n.7. This too is irrelevant and wrong on the law. Any such "new complaint" would be subject to immediate dismissal under res judicata and/or claim splitting principles. As another court in this Circuit aptly noted:

> When a plaintiff sues a defendant, unsuccessfully seeks leave to amend the complaint in the first lawsuit to add transactionally related new claims, and has judgment entered against her in the first lawsuit, the doctrine of res judicata precludes that plaintiff from later initiating a second lawsuit against the defendant to assert the claims that were the subject of the unsuccessful amendment request in the first lawsuit. This was the precise scenario addressed by the Ninth Circuit in *Mpoyo* [*v. Litton Electro-Optical Sys.*, 430 F.3d 985 (9th Cir. 2005)].

*Gonzalez v. US Human Rights Network Inc.*, 2022 WL 3575305, at *4 (D. Ariz. July 21, 2022) (dismissing claim in second action that was filed after leave to add same claim in first action was denied due to untimeliness); *id.* at *6 ("'To ascertain whether successive causes of action are the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-10-

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND
Case No. 3:23-cv-01788-JD

Because Plaintiff cannot show the requisite good cause to amend the Court's prior Scheduling Order, his Motion should be denied. *See, e.g., Rabb v. Figueroa,* 2024 WL 1253855, at *3 (E.D. Cal. Mar. 24, 2024), *rep't adopted and recom.,* 2024 WL 1974473 (E.D. Cal. May 3, 2024) (denying motion to amend pleadings where plaintiff filed motion to amend three months after the deadline and "offer[ed] no explanation why the motion to amend was filed late or how he has diligently pursued amending his complaint, especially in light of the fact that he was aware of all the claims asserted in the [proposed] FAC by at least [seven weeks prior to the deadline]," and sought to incorporate the additional allegations in a separate litigation on "essentially the same grounds" prior to the deadline); *Giuliano v. SanDisk Corp.*, 2014 WL 4685012, at *4 (N.D. Cal. 2014) (finding no good cause under Rule 16 because plaintiffs "provide[d] no explanation for why they waited until approximately five months after the deadline to amend pleadings to request permission to amend their pleading to allege facts showing that they did not and could not have discovered the existence of their claims through the exercise of reasonable diligence.").

### B.   Even If Plaintiff Met Rule 16 Requirements, His Motion Fails Under Rule 15.

Plaintiff's Motion also fails under Rule 15, which considers: (1) bad faith, (2) undue delay, (3) prejudice to defendants, (4) futility of amendment, and (5) whether plaintiff has previously amended. *Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend under Rule 15(a) is proper where court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."); *AmerisourceBergen Corp. v. Dialysis West, Inc.*,

---

same' in the context of claim-splitting, courts 'use the transaction test, developed in the context of claim preclusion.'") (citing *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007)). In *Mpoyo*, the Ninth Circuit stated that "[w]e have often held the common nucleus [of operative fact] criterion to be outcome determinative" for res judicata purposes, and found in that case that "[b]ecause both sets of Mpoyo's claims arise from Litton's conduct while Mpoyo was an employee and specifically from the events leading to his termination, his claims relate to the same set of facts." *Mpoyo*, 430 F.3d at 987-88. Here too, Adler's WARN Act and severance-based contract and estoppel claims all arise out of the same "transaction" and "common nucleus of operative fact" – they all stem from his "conduct while [h]e was an employee and specifically from the events leading to his termination," including his allegations that his termination was pretextual and without cause. *See* Mot. at 1 ("Plaintiff seeks leave to amend the operative complaint to *add two other claims related to his termination*") (emphasis added).

445 F.3d 1132, 1137 (9th Cir. 2006). A "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, Inc., 637 F.3d 1047, 1058 (9th Cir. 2011); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990); *Fidelity Fin. Corp. v. Fed. Home Loan Bank*, 79 F.3d 1432, 1438 (9th Cir. 1986). Plaintiff cannot satisfy this standard.

*First*, as detailed above, Plaintiff's inaction on his proposed contract and estoppel claims for nearly two years, including nearly fourteen months after the amendment deadline passed, constitutes significant undue delay. Even in the Rule 15 context, "[u]ndue delay has occurred when a party has filed a motion for leave to amend long after it should have become aware of the information that underlies that motion." *SanDisk Corp.*, 2014 WL 4685012, at *4; *see also Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) ("Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading."); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming denial of leave to amend in part due to "delay of nearly two years").

"[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action" – which is precisely the case here. *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (citations omitted); *see also Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) (denying leave to amend where the plaintiff "has known all of the underlying facts and theories he now wishes to allege since the commencement of the litigation."); *Pettit v. Ariz. Bd. of Regents*, 525 Fed.Appx. 625, 626 (9th Cir. 2013) ("[a]mendments attempting to add new claims when the theories and facts supporting them have long been known to the party seeking amendment are viewed with disfavor"); *M/V American Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (affirming denial of leave to amend when amendment premised on same facts known at the time of original complaint, stating that it is a "proper exercise of discretion [to refuse] to allow amendment" where "there was a delay in making the motion of one and one-half years after the case was filed" and "[n]o facts, newly discovered in that period, were alleged."). As discussed, neither Plaintiff's offer to dismiss his remaining class claims nor any

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

-12-

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND
Case No. 3:23-cv-01788-JD

purported *res judicata* concerns justifies his extended period of inaction here. *See supra* at III.A.

*Second*, Plaintiff's late Motion demonstrates his bad faith effort to gain an unfair tactical advantage, including forum shopping. "'[B]ad faith' generally refers to efforts to amend the pleadings late in the litigation in order to obtain an unfair tactical advantage." *SanDisk Corp.*, 2014 WL 4685012, at *7; *see also Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995) (bad faith shown where petitioner sought leave to amend late in the litigation after suffering an adverse ruling); *Acri*, 781 F.2d at 1398 (amendment not allowed where the delay in amendment was a tactical choice brought specifically to avoid the possibility of an adverse summary judgment ruling). Plaintiff had nearly two years to raise these issues, but said nothing. As Plaintiff and his counsel are well aware, the Delaware federal court in *Cornet* court heard oral argument on Defendant's motion to dismiss on January 16, 2025, which remains pending. Plaintiff clearly has made a late decision to hedge his bets and seek to have this Court decide his breach of contract and promissory estoppel claims, rather than allowing the Judge in *Cornet* to continue with the litigation process to which Plaintiff and his counsel have submitted for over two years.

These tactics by Plaintiff and his counsel are far from an isolated occurrence. His counsel recently moved to add new breach of contract and promissory estoppel claims in two other long-pending lawsuits against Defendant, whose plaintiffs similarly are covered by the *Cornet* class claims. *See Borodaenko v. Twitter, Inc., et al.* ("*Borodaenko*"), No. 3:22-cv-07226-AMO (claims for alleged disability discrimination, filed Nov. 16, 2022); RFJN, Ex. 9 (motion to amend in *Borodaenko* filed March 13, 2025); *Zeman v. Twitter, Inc., et al.* ("*Zeman*"), No. 3:23-cv-1786-SI (age discrimination claims, filed Apr. 13, 2023); RFJN, Ex. 10 (motion to amend in *Zeman* filed March 26, 2025); RFJN, Ex. 4; RFJN, Ex. 5. Defendant is opposing these efforts as well, which constitute gamesmanship that this Court should not countenance here.[5]

---

[5] As further evidence of Plaintiff's and his counsel's bad faith here, another Court in this district expressly found in *Borodaenko* that Plaintiff's counsel apparently made "an effort to engage in judge shopping" in a similar context. RFJN, Ex. 11. Plaintiff's counsel initially attempted to relate *Zeman* as well as *Carolina Strifling, et al. v. Twitter, Inc., et al.* ("*Strifling*"), Case No. 4:22-cv-07739-JST (asserting class claims for alleged sex discrimination), also filed by Plaintiff's counsel, to the *Borodaenko* action pending before Judge Martinez-Olguin. RFJN, Ex. 12. Mere months after Judge Martinez-Olguin denied that Motion, Plaintiff's counsel moved to consolidate *Strifling* and *Zeman* into the *Borodaenko* action, again seeking to get all such cases before Judge Martinez-Olguin. RFJN, Ex. 13. In denying consolidation, Judge Martinez-Olguin specifically found it

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-13-

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND
Case No. 3:23-cv-01788-JD

*Third*, granting Plaintiff's Motion would materially prejudice Defendant. Notably, prejudice to the defendant is not necessary to deny leave to amend where, as in this case, other factors weigh in favor of denial. *See, e.g.*, *SanDisk Corp.*, 2014 WL 4685012, at *4. But amendment is even more unwarranted where, as in this case, it *would* prejudice the defendant. Plaintiff's assertion that amendment will not cause any prejudice because discovery is still open, and that Plaintiff could be deposed *again* on his new claims, is legally wrong. Prejudice is not limited to cases where discovery has already closed or a case schedule leaves insufficient time for a defendant to develop its defenses. The Ninth Circuit affirmed the denial of an amendment roughly two years after the initial complaint was filed – even though new discovery *could* have proceeded – where, in relevant part, "[t]he new claims set forth in the amended complaint *would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense*." *Morongo Band*, 893 F.2d at 1079 (emphasis added). Again, this is exactly what Plaintiff's Motion seeks to accomplish here. *See also Trans Video Elec. Ltd. v. Sony Elec., Inc.*, 278 F.R.D. 505, 509 (N.D. Cal. 2011) (denying motion to amend, even though plaintiff argued discovery closed in nine months and defendant "already investigated the invalidity of [the] claim," where plaintiff's motion was four months delayed).

Plaintiff's self-serving assertion that little or no discovery on his new claims would be needed similarly is wrong and irrelevant. Plaintiff has already been deposed, *without* addressing the claims he seeks to raise here. Mot. at 2 n.4. And irrespective of discovery conducted on *other* employees' severance pay claims, Defendant would need to take focused discovery on facts *specific to Plaintiff's own* breach of contract and promissory estoppel claims – such as what "promises" Plaintiff claims were made; whether he personally heard or read any such alleged promises; whether he reasonably understood any such alleged statement(s) to constitute a binding "promise" based on the surrounding circumstances; and whether he actually and reasonably relied on any such statement(s) to his detriment, including in not quitting his job before Elon Musk acquired the Company). These issues involve different facts and theories from those presented by his age

---

"difficult to disagree" with Defendant's position that "Plaintiffs' motion to consolidate is an effort to engage in judge shopping." RFJN, Ex. 11 at 5:27-28, n. 2.

discrimination claims, even though they arise out of the same transactional nucleus of facts (*i.e.*, the circumstances of his termination). *See* ECF No. 37 at 4:10-16 ("Again, we thought the discrimination cases were most directly the same types of facts and legal theories. *These other cases such as this one and the bonus claim raise different legal theories*.") (emphasis added).

*Fourth*, the requested amendment likely would be futile. As detailed above, in its order transferring the *Cornet* breach of contract and promissory estoppel claims to the Delaware federal court, this Court held that the *Cornet* plaintiffs' claims based on alleged promises, including FAQs, *outside* the Merger Agreement nonetheless fell within the scope of the Merger Agreement's forum selection clause: "Even if these claims might not "require interpretation of" the merger agreement, *Yei A. Sun*, 901 F.3d at 1086, the dispute that they encompass is at the very least logically connected to it, and to some extent grows out of it. Consequently, Counts I through III fall within the scope of the forum-selection clause." RFJN, Ex. 7 at 4-5; *supra* at 5:19-6:11. Defendant respectfully submits that, were Plaintiff to file his contract and estoppel claims in this Court, there should be a high likelihood of those claims being transferred the Delaware court under the same principles.

*Fifth and finally*, Plaintiff filed his Complaint, amended it the same day, and was given a deadline for any further amendments which then was extended to January 31, 2024.

Accordingly, even if this Court looked past Plaintiff's abject failure to justify a late amendment under Rule 16, he fails to meet his Rule 15 burden, and his Motion should be denied.

### IV.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion to Amend.

Dated: April 10, 2025            MORGAN, LEWIS & BOCKIUS LLP

By   */s/ Eric Meckley*
Eric Meckley
Brian D. Berry
Ashlee N. Cherry

Attorneys for Defendant
X CORP. f/k/a TWITTER, INC.