1

MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley (State Bar No. 168181)

2

Brian D. Berry (State Bar No. 229893)

3

One Market, Spear Street Tower
San Francisco, CA 94105-1596

4

Telephone: (415) 442-1000
Facsimile: (415) 442-1001

5

eric.meckley@morganlewis.com

6

brian.berry@morganlewis.com

7

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry (State Bar No. 312731)

8

1400 Page Mill Road
Palo Alto, CA  94304

9

Tel:    +1.650.843.4000
Fax:    +1.650.843.4001

10

ashlee.cherry@morganlewis.com

11

Attorneys for Defendant
X CORP. f/k/a TWITTER, INC.

12

13

UNITED STATES DISTRICT COURT

14

NORTHERN DISTRICT OF CALIFORNIA

15

16

EITAN ADLER,

Case No. 3:23-cv-01788-JD

17

Plaintiff,

**DEFENDANT'S NOTICE OF MOTION
AND MOTION FOR SUMMARY
JUDGMENT**

18

vs.

19

TWITTER, INC. and X CORP.,

**SUPPORTING MEMORANDUM OF
POINTS AND AUTHORITIES**

20

Defendants.

Date:        August 21, 2025

21

Time:        10 am
Judge:       Hon. James Donato

22

23

24

25

26

27

28

1    **PLEASE TAKE NOTICE** that on August 21, 2025, at 10:00 a.m., or as soon thereafter as

2    the matter may be heard in Courtroom 11 of the above-entitled court, located at 450 Golden Gate

3    Avenue, San Francisco, CA 94102, Defendant X Corp., formerly known as Twitter, Inc.

4    (hereinafter "Defendant" or "X"), will, and hereby does, move this Court for an order granting

5    summary judgment in favor of Defendant and against Plaintiff Eitan Adler ("Plaintiff") pursuant to

6    Rule 56 of the Federal Rules of Civil Procedure.

7    In the operative Complaint, which was filed on April 13, 2023, Plaintiff asserts the

8    following four causes of action on behalf of himself and a putative class:  (1) alleged violations of

9    the federal WARN Act (Compl., p. 4, Count I); (2) alleged violations of the California WARN Act

10   (Compl., p. 5, Count II); (3) alleged failure to pay all wages due upon termination (Compl., p. 5,

11   Count III); and penalties for alleged violations of the California Labor Code Private Attorneys

12   General Act ("PAGA") (Compl., pp. 5-6, Count IV).[1]  *See* ECF No. 3.  At the May 8, 2025 hearing

13   regarding Plaintiff's Motion, Plaintiff confirmed that he was only asserting individual claims for

14   violations of the federal WARN Act and California WARN Act.  *See* Declaration of Eric Meckley

15   ("Meckley Decl."), ¶ 8, Ex. 7 at 8 ("The Court: So the only issue is whether he was fired for cause

16   or should have gotten the [WARN] Act – Ms. Liss-Riordan: Correct.  The Court: -- notice?  Ms.

17   Liss-Riordan: Yes.").

18   Plaintiff's first and second claims for violation of the federal and California WARN Acts

19   fail as a matter of law because the undisputed evidence demonstrates that Defendant fired Plaintiff

20   for cause and did not lay him off.  As a result, Plaintiff was not entitled to WARN notice and/or

21   pay under either the federal or California WARN Act.

22   This Motion is based upon the accompanying Memorandum of Points and Authorities, the

23   Declaration of Eric Meckley and all exhibits attached thereto, the Request for Judicial Notice and

24   all exhibits attached thereto, the pleadings and the Court's record on file herein, and on such other

25   and further argument and evidence as may be presented at or prior to the time of the hearing, and

26   ---

[1] On March 27, 2025, Plaintiff filed a Motion for Leave to File a Second Amended Complaint alleging individual claims for: (1) an alleged violation of the federal WARN Act; (2) an alleged violation of the California WARN Act; (3) breach of contract; and (4) promissory estoppel.  ECF No. 95.  The Court denied Plaintiff's Motion on May 8, 2025.  ECF No. 103; *see also* Meckley Decl., ¶ 8, Ex. 7 at 5.

1    all matters of which this Court may properly take notice.

2    Dated: July 17, 2025                    MORGAN, LEWIS & BOCKIUS LLP

3

4                                            By      /s/ Eric Meckley

5                                                 Eric Meckley
                                                 Brian D. Berry
6                                                 Ashlee Cherry

7                                                 Attorneys for Defendants
                                                 X CORP. f/k/a TWITTER, INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR SUMMARY JUDGMENT
                                       CASE NO. 3:23-CV-01788-JD

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................................. 1

II.    PLAINTIFF'S CLAIMS FOR WARN ACT VIOLATIONS ........................................ 2

III.   STATEMENT OF RELEVANT FACTS ..................................................................... 2

       A.     Plaintiff Eitan Adler Begins Working for Twitter in 2015. ................................ 2

       B.     Plaintiff is Promoted to a Staff Software Engineer in 2020. ............................... 3

       C.     Twitter is Acquired and Concerns Regarding Insider Threats Are
              Paramount. .......................................................................................................... 3

       D.     Plaintiff is Fired for Cause on November 15 Based on Twitter's
              Determination that His Slack Posts Violated Company Policy. ........................... 4

IV.    LEGAL STANDARD .................................................................................................. 6

V.     ARGUMENT ............................................................................................................. 7

       A.     Plaintiff's First and Second Claims Fail Because Plaintiff Was Terminated
              "For Cause." ....................................................................................................... 7

VI.    CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alter v. SCM Off. Supplies, Inc.*,
  906 F. Supp. 1243 (N.D. Ind. 1995) ........................................................................ 7

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ...................................... 6

*Collins v. Gee West Seattle, LLC*,
  631 F.3d 1001 (9th Cir. 2011)................................................................................ 7

*Cornwell v. Electra Cent. Credit Union*
  (9th Cir. 2006) 439 F.3d 1018................................................................................. 9

*Guido v. Mount Lemmon Fire District*,
  859 F.3d 1168 (9th Cir. 2017)................................................................................ 8

*Gunderson v. Alta Devices, Inc.*,
  2021 WL 4461569 (N.D. Cal. Sept. 29, 2021) ...................................................... 7

*Jones v. Barnhart*,
  349 F.3d 1260 (10th Cir. 2003).............................................................................. 9

*Lamie v. U.S. Trustee*,
  540 U.S. 526 (2004).................................................................................................. 8

*Leeper v. All. Res. Partners, L.P.*,
  356 F. Supp. 3d 761 (S.D. Ill. 2018), *aff'd sub nom. Leeper v. Hamilton Cnty.*
  *Coal, LLC*, 939 F.3d 866 (7th Cir. 2019) ............................................................. 7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................................................................................. 6

*Meacham v. Knolls Atomic Power Lab.*,
  554 U.S. 84 (2008) ................................................................................................... 8

*Moore v. Warehouse Club, Inc.*,
  1992 WL 318560 (W.D. Pa. July 27, 1992), *aff'd*, 992 F.2d 27 (3d Cir. 1993) ...... 7

*Solarcity Corp. v. Doria*,
  2018 WL 2229397 (S.D. Cal. May 16, 2018)........................................................ 7

*Triton Energy Corp. v. Square D Co.*,
  68 F.3d 1216 (9th Cir. 1995).................................................................................. 6

*Wiltz v. M/G Transp. Servs., Inc.,*
   128 F.3d 957 (6th Cir. 1997) ................................................................................................ 7

**Statutes**

29 U.S.C. § 623(f)(3) ....................................................................................................................... 8

29 U.S.C. § 2101(a)(6) ..................................................................................................................... 7

29 U.S.C. § 2102(a) .......................................................................................................................... 7

Cal. Lab. Code § 1400 ...................................................................................................................... 7

Cal. Lab. Code § 1400.5(f) ............................................................................................................... 7

20 C.F.R. § 639.2 .............................................................................................................................. 7

20 C.F.R. § 1002.248 ........................................................................................................................ 8

Fed. R. Civ. P. 56 ............................................................................................................................. 2

Fed. R. Civ. P. 56(c) ........................................................................................................................ 6

Fed. R. Civ. P. 56(e) ........................................................................................................................ 6

**Other Authorities**

Webster's Dictionary ........................................................................................................................ 8

1    I.    **INTRODUCTION**

2        This case involves one straightforward issue:  Was Plaintiff fired or was he laid off as part

3    of a mass layoff?  The undisputed material evidence demonstrates that Plaintiff was fired. That fact

4    is readily apparent from the email Twitter sent to Plaintiff on November 15, 2022, expressly

5    notifying him:

6        "We regret to inform you that your employment is terminated effective immediately.
         Your recent behavior has violated company policy."

7

8        Plaintiff has admitted no one from Twitter ever told him that he was laid off or terminated

9    as part of a reduction in force and further admitted that he never received any documentation from

10    Twitter stating that to be the case.  The basic undisputed fact is that Twitter fired Plaintiff because

11    the Company perceived him to be a security risk.  Specifically, on November 14, 2022, Plaintiff

12    and a coworker posted into a company Slack channel open to all Twitter employees a computer

13    code command that, if deployed, would disable Twitter's operating system, shutting down the entire

14    service.  Plaintiff's Slack posts occurred at a time when internal hostility toward the Company was

15    at an all-time high and management was concerned about potential "insider threats"—particularly

16    from a skilled engineer like Plaintiff, who had extraordinary levels of system access and the ability

17    to run computer commands that would damage or even kill Twitter's operations. Given these

18    circumstances, Twitter determined that Plaintiff posed a security threat and needed to be fired

19    immediately.

20        These facts underlying Twitter's decision to fire Plaintiff are undisputed. Plaintiff's only

21    argument is that he did not believe his conduct warranted being fired.  He claims his Slack posts

22    were just jokes.  But that argument is simply immaterial to the analysis, which considers only

23    whether an employee was fired or laid off, *not* whether the decision to fire him constituted a good

24    business decision.  Given these undisputed material facts, Plaintiff's claims for violations of the

25    federal and California WARN Acts must be dismissed at the summary judgment stage, because

26    being fired for cause specifically exempts an employee from coverage under the federal and

27    California WARN Acts.  Stated differently, if Plaintiff was not laid off as part of a mass layoff,

28    then the WARN Acts do not apply to him.  Because the evidence here demonstrates that he was

1    fired, not laid off, the Court should grant Defendant's Motion for Summary Judgment in its entirety.

2    **II.    PLAINTIFF'S CLAIMS FOR WARN ACT VIOLATIONS**

3        Plaintiff's first and second claims allege violation of the federal and California WARN Acts.

4    Compl., Counts I and II.  Plaintiff alleges that "Twitter did not give 60 days' advance written notice

5    to all employees who were being laid off, as required by the federal WARN Act, and for employees

6    in California, the California WARN Act.  Nor were all affected employees given pay in substitution

7    for federal or California or WARN Act notice."  Compl. ¶ 15.  Plaintiff alleges that he was "laid

8    off on November 15, 2022" and "did not receive 60 days' advance written notice required by the

9    federal WARN Act and the California WARN Act. Nor did he receive pay in lieu of notice."  *Id.*,

10    16.

11    **III.    STATEMENT OF RELEVANT FACTS**

12        **A.    Plaintiff Eitan Adler Begins Working for Twitter in 2015.**

13        Twitter, Inc.[2] ("Twitter" or the "Company") hired Plaintiff Eitan Adler on or about May 27,

14    2015 as an at-will Software Engineer II.  Meckley Decl., ¶ 2, Ex. 1 (Deposition of Eitan Adler),

15    29:12-29:25, 31:3-32:25 and Ex. 2 thereto.

16        During his employment, Plaintiff reviewed various employment policies and understood he

17    was required to comply with them.  *Id.* at 62:23-63:11, Ex. 4; 73:20-74:8, Ex. 6.  Some of these

18    policies were set forth in the "Playbook," which is Twitter's Employee Handbook.  *Id.* at 62:6-63:1,

19    Ex. 4.  The Playbook includes the "Confidential Information" and "Keeping Twitter Safe" policies,

20    which pertained to Twitter's confidential and proprietary property and outlined the consequences

21    for the destruction of same.  *Id.* at 70:25-73:10, Ex. 4.  These policies prohibited employees from

22    abusing their "access for reasons unrelated to a legitimate business purpose" and from intentionally

23    destroying or threatening to destroy Twitter's property, among other conduct, and stated that

24    engaging in such conduct could lead to discipline, including termination.  *Id.*  Plaintiff understood

25    that these policies applied to the destruction of Twitter's infrastructure, and further understood that

26

27    _____

28    [2] Defendant X Corp. is the successor-in-interest to Twitter, Inc.  At all times relevant to this Motion, the Company was still known as "Twitter, Inc."

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-01788-JD

under these policies, *Twitter was able to make the sole determination* of whether a threat of destruction of its property violated a policy.  *Id.* at 72:8-73:10.

In addition to the policies set forth in the Playbook, Plaintiff also reviewed Twitter's Code of Business Conduct and understood and agreed to be bound by its terms.  *Id.* at 73:20-74:8, Ex. 6.

### B.    Plaintiff is Promoted to a Staff Software Engineer in 2020.

In or around July 2020, Plaintiff was promoted to a Staff Software Engineer.  *Id.* at 45:25-46:4.  In this role, Plaintiff was a technical lead for the ads core platform, which was a "business critical" part of operations as Twitter generated revenue from ads.  *Id.* at 46:5-47:12, Ex. 1.  To perform his job duties as a software engineer, Plaintiff had broad access to critical/sensitive aspects of Twitter's infrastructure, which is the underlying architecture that supports the functioning of the website.  *Id.* at 60:22-62:5.  In addition, Plaintiff also had "sudo access," a form of "super user" access that allowed Plaintiff to function as a system administrator and run commands within a system.  *Id.* at 60:6-13; 76:8-77:5.  Specifically, Plaintiff had sudo access "to operate … [and] manipulate the ad services" and "to manipulate some of the other services that were required to operate the ad services," and other types of sudo access as well.  *Id.* at 76:18-77:5.

### C.    Twitter is Acquired and Concerns Regarding Insider Threats Are Paramount.

On or about October 28, 2022, X Holdings I, Inc. and X Holdings II, Inc. acquired Twitter pursuant to the terms of a Merger Agreement.  Request for Judicial Notice ("RFJN"), Ex. 1. Following the acquisition, the company conducted a mass layoff on November 4, 2022.  Meckley Decl., ¶ 6, Ex. 5 (Deposition of Elon Musk), 22:6-12; 24:4-19.  However, Plaintiff was *not* laid off in the November 4, 2022 reduction in force.  Meckley Decl., Ex. 1 (Adler Tr.) at 77:9-78:10, Ex. 8.

Following the acquisition and November 4 layoff, "there was … a lot of hostility and a lot of people were unhappy."  Meckley Decl., ¶ 7, Ex. 6 (Deposition of Christopher Stanley), 80:22-81:8; 142:23-143:16; 166:8-14, Ex. 3.  The "Social Watercooler" Slack channel,[3] which was a

---

[3] Slack is a messaging/chat program for employees.  Meckley Decl., Ex. 1 (Adler Tr.), 97:20-98:1. Slack "channels" allowed employees to organize messages that pertained to a specific topic.  *Id.* at 98:2-7.  Joining a Slack channel allowed employees to post to that channel and review posts.  *Id.* at 99:2-4.  With the exception of one channel not pertinent here, members of a Slack channel at Twitter did not need to obtain approval for their posts.  *Id.* at 99:16-100:1.

channel that any Twitter employee could view, became particularly "toxic[]." *Id.* at 166:8-23, Ex. 3; Meckley Decl., Ex. 1 (Adler Tr.) at 98:11-99:15. Twitter was concerned about security and, specifically, insider threat risks, or the possibility that an employee would intentionally cause harm to the Company. Meckley Decl., Ex. 6 (Stanley Tr.) at 45:9-16; 82:4-84:4; *see also* Meckley Decl., ¶ 5, Ex. 4 (Deposition of Ross Nordeen), 23:16-24:20; 32:19-33:6; Meckley Decl., ¶ 4, Ex. 3 (Deposition of Andrew Musk), 168:7-175:2; Meckley Decl., ¶ 3, Ex. 2 (Deposition of James Musk), 156:11-160:16, 162-172. Insider threat risks varied but could include destroying servers, disclosing confidential information, disrupting infrastructure, and hijacking Twitter user accounts. Meckley Decl., Ex. 6 (Stanley Tr.) at 51:3-52:5, 177:16-185:22; Meckley Decl., Ex. 5 (E. Musk Tr.) at 39:10-25. Such risks were particularly of concern with respect to engineers like Adler who had expansive access to platform infrastructure and could inflict substantial harm that could take the site down. Because of these concerns, management tasked the Information Security ("Info Sec") team with identifying potential insider threat risks. Meckley Decl., Ex. 6 (Stanley Tr.) at 82:4-84:16; Meckley Decl., Ex. 5 (E. Musk Tr.) at 39:10-25, 41:4-9. To assess insider threat risk, Info Sec reviewed network and system access, audited permissions and credentials, reviewed employee Slack messages, and Tweets on Twitter. Meckley Decl., Ex. 6 (Stanley Tr.) at 85:19-86:15, 87:13-92:7. One type of post that Info Sec found relevant was "[p]eople saying things that could destroy company property or disrupt systems[.]" *Id.* at 92:8-18.

**D.    Plaintiff is Fired for Cause on November 15 Based on Twitter's Determination that His Slack Posts Violated Company Policy.**

On November 13, 2022, Elon Musk tweeted: "Btw, I'd like to apologize for Twitter being super slow in many countries. App is doing greater than 1000 poorly batched RPCs just to render a home timeline." Meckley Decl., Ex. 1 (Adler Tr.) at 103:20-104:21, Ex. 12. This Tweet referred to Mr. Musk's assessment that there were too many "micro-services"[4] at Twitter. *Id.* at 103:9-105:17.

/ / /

---

[4] "Micro-services" refer to a subset of a particular functionality that is required to run a website or return a response. Meckley Decl., Ex. 1 (Adler Tr.) at 105:5-13.

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-01788-JD

In response to this Tweet, Plaintiff posted "time to kill useless services" to the Social Watercooler Slack channel on November 14, 2022. *Id.* at 102:15-103:19, Ex. 11; *id.* at 104:9-105:20. In response to Plaintiff's post, another employee, Jesse Feinman, wrote: "aurora kill all *, what could go wrong?" *Id.* at 107:6-9, Ex. 11. Plaintiff responded, "we tried this before, ended up changing the aurora client because of it." *Id.* at 108:9-110:1. According to Adler himself, Aurora is "a tool used to manage services running at Twitter" and if deployed, the "aurora kill all *" command would result in the Aurora services being "killed" and the Twitter website ceasing to function. *Id.* at 107:21-108:8, 108:15-109:21; 110:2-4; Meckley Decl., Ex. 5 (E. Musk Tr.) at 39:2-43:24.

Plaintiff admitted that a similar aurora command previously had been run accidentally and "[t]erminated many services at Twitter." Meckley Decl., Ex. 1 (Adler Tr.) at 108:15-110:17. The Company perceived Adler's Slack posts to present a severe threat that put the operation of the platform at risk. Meckley Decl., Ex. 6 (Stanley Tr.) at 102:13-16 ("Q: Did you consider Mr. Adler to be an internal threat to the company based on his Slack messages? A: Absolutely."); *id.* at 99:6-100:17, 105:1-5 (describing Plaintiff's messages as "quite severe" and recalling Adler as "talking about killing services and participating in causing harm to our systems"); *see also* Meckley Decl., Ex. 5 (E. Musk Tr.) at 39:2-43:24 (noting that "[a]t one point, we had some people actually put instructions on how to delete the entire Twitter database on the – on the Slack channel" and that "joking about destroying an entire Twitter system is not funny").[5]

Based on the Company's concerns regarding Plaintiff's Slack messages, Plaintiff's employment was terminated the very next day, November 15, 2022. Adler admitted to receiving an email from the Company on that date notifying him:

> "We regret to inform you that your employment is terminated effective immediately. Your recent behavior has violated company policy. Our operations team will be reaching out to you with offboarding instructions. If you have any follow up questions you can email alum@twitter.com."

/ / /

---

[5] In his deposition, Plaintiff attempted to downplay his posts as simply a joke. Meckley Decl., Ex. 1 (Adler Tr.) at 103:12-107:23.

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-01788-JD

1    Meckley Decl., Ex. 1 (Adler Tr.) at 129:12-24, Ex. 17; *see also* Meckley Decl., Ex. 6

2    (Stanley Tr.) at 108:17-109:11.

3        Plaintiff admitted that he *never* received any written documentation stating that he had been

4    laid off or was terminated as part of any reduction in force, nor could he recall being told that he

5    was being terminated as part of a layoff or reduction in force.  Meckley Decl., Ex. 1 (Adler Tr.) at

6    129:25-132:16.  Other than requesting his personnel file, Plaintiff made no effort to determine what

7    policy violation he had committed.  *Id.* at 132:22-136:23; *id.* at 161:17-163:18, Ex. 21.

8        Jesse Feinman, the employee who responded to Plaintiff regarding the "aurora kill all *"

9    command, was also fired for cause on the same date, November 15, 2022.  RFJN, Exs. 2-5.

10   Feinman filed a charge with the National Labor Relations Board ("NLRB") challenging being fired

11   for cause (Feinman, NLRB Case No. 02-CA-308119 (2023)).  RFJN, Ex. 2.  Feinman was

12   represented by Plaintiff's counsel.  The NLRB Regional Director dismissed Feinman's charge on

13   October 4, 2023, after which Plaintiff's counsel filed an appeal, including a brief that admitted the

14   facts cited here. RFJN, Ex. 3-4.  The NLRB's General Counsel affirmed the dismissal on December

15   18, 2023.  RFJN, Ex. 5.

16   **IV.    LEGAL STANDARD**

17       Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates

18   the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See*

19   Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed.

20   2d 265 (1986).  The moving party can satisfy this burden in two ways: (1) by presenting evidence

21   that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the

22   nonmoving party failed to make a showing sufficient to establish an element essential to that party's

23   case on which that party will bear the burden of proof at trial.  *Id.* at 322-23.  If the moving party

24   meets its initial burden, the nonmoving party cannot defeat summary judgment merely by

25   demonstrating "that there is some metaphysical doubt as to the material facts."  *Matsushita Elec.*

26   *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D*

27   *Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support

28   of the non-moving party's position is not sufficient.").  Rather, the nonmoving party must "go

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-01788-JD

beyond the pleadings" and by "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

## V.    ARGUMENT

### A.    Plaintiff's First and Second Claims Fail Because Plaintiff Was Terminated "For Cause."

The WARN Act only applies when an employer separates an employee as part of a mass layoff.  29 U.S.C. § 2102(a); 20 C.F.R. § 639.2; Cal. Lab. Code § 1400 *et seq*.  Terminations "for cause" are explicitly exempted from the WARN Act's requirements.  29 U.S.C. § 2101(a)(6) (defining "employment loss" as "an employment termination, *other than a discharge for cause*…") (emphasis added); *see also Collins v. Gee West Seattle, LLC*, 631 F.3d 1001, 1006 (9th Cir. 2011) ("The [federal WARN] Act, however, also excludes those who retire, *are discharged for cause*, or voluntarily depart from the definition of those experiencing employment loss.") (emphasis added). Similarly, the California WARN Act does not apply to terminations for cause.  *See* Cal. Lab. Code § 1400.5(f) (defining "termination" as "the cessation or substantial cessation of industrial or commercial operations in a covered establishment"); *see also Gunderson v. Alta Devices, Inc.*, 2021 WL 4461569, at *3 (N.D. Cal. Sept. 29, 2021) ("The California WARN Act is similar to the federal WARN Act in most respects.").

Where an individual is terminated for cause, the termination does not qualify as an "employment loss" under the WARN Act.  *See Wiltz v. M/G Transp. Servs., Inc*., 128 F.3d 957, 963 (6th Cir. 1997) ("The three who failed the drug test suffered termination for cause and therefore cannot be counted in the fifty"); *Alter v. SCM Off. Supplies, Inc*., 906 F. Supp. 1243, 1250–51 (N.D. Ind. 1995) (holding that employees who were terminated after they failed drug tests did not count as "employment losses" under the WARN Act); *Leeper v. All. Res. Partners, L.P.*, 356 F. Supp. 3d 761, 764 (S.D. Ill. 2018), *aff'd sub nom. Leeper v. Hamilton Cnty. Coal, LLC*, 939 F.3d 866 (7th Cir. 2019) (finding that employee who was fired for testing positive during a drug screen was discharged for cause); *Moore v. Warehouse Club, Inc*., 1992 WL 318560, at *4 (W.D. Pa. July 27, 1992), *aff'd*, 992 F.2d 27 (3d Cir. 1993) (finding no "employment loss" when an employee was

MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:23-CV-01788-JD

1    either terminated for cause for excessive absenteeism and tardiness or voluntarily quit); *Solarcity*

2    *Corp. v. Doria*, 2018 WL 2229397, at *5 (S.D. Cal. May 16, 2018) (finding employee lacked

3    standing to bring a WARN Act claim because he was terminated for cause before layoffs began).

4         The federal WARN Act does not define "for cause."  But the statutory language makes clear

5    that an employer need only have *a* reason to fire an employee in order to exempt that termination

6    from coverage under the WARN Act.  For example, the statute does not use the adjectives "*good*

7    cause" or "*just* cause;" rather it exempts any termination "for cause."  Webster's Dictionary defines

8    "cause" to mean "a reason for an action or condition."  It is axiomatic that "when the statute's

9    language is plain, the sole function of the courts—at least where the disposition required by the text

10   is not absurd—is to enforce it according to its terms."  *Lamie v. U.S. Trustee*, 540 U.S. 526, 534

11   (2004); *see also Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 102 (2008) ("We have to

12   read [the ADEA] the way Congress wrote it.").  "Courts should rarely depart from a statute's clear

13   meaning because it risks creating a perception that they are inserting their own policy preferences

14   into a law."  *Guido v. Mount Lemmon Fire District*, 859 F.3d 1168, 1174 (9th Cir. 2017) (citations

15   omitted).  Here, the plain language of the WARN Act exempts from coverage a termination "for

16   cause" – which means a termination for any bona fide reason.

17        The way in which Congress has chosen to use different language regarding "cause"

18   terminations in other employment-related statutes is instructive.  For example, the Uniformed

19   Services Employment and Reemployment Rights Act ("USERRA"), like the WARN Act, simply

20   uses the phrase "for cause."  *See* 38 U.S.C. § 4316(c); *see also* 20 C.F.R. § 1002.248 (defining a

21   "discharge *for cause*" under USERRA as a discharge "based either on conduct or, in some

22   circumstances, because of the application of other legitimate nondiscriminatory reasons.")

23   (emphasis added).  In contrast, the Age Discrimination in Employment Act ("ADEA") uses the

24   phrase "good cause."  *See* 29 U.S.C. § 623(f)(3) (Under the ADEA, "[i]t shall not be unlawful for

25   an employer, employment agency, or labor organization … to discharge or otherwise discipline an

26   individual for *good cause*") (emphasis added).

27        The Ninth Circuit has acknowledged that where "Congress use[s] different language" in

28   statutes, "such Congressional choice must be respected."  *Guido v. Mount Lemmon Fire District*,

1    859 F.3d 1168, 1174 (9th Cir. 2017) (citations omitted) ("Congress used different language [in the

2    1972 Title VII Amendment] than it used in the 1974 ADEA Amendment, which changes the

3    ADEA's meaning relative to Title VII, and such Congressional choice must be respected. [Citation]

4    If Congress had wanted the 1974 ADEA Amendment to achieve the same result as the 1972 Title

5    VII Amendment, it could have used the same language.").

6            In addition, the plain reading of the WARN Act's "for cause" language is entirely consistent

7    with the undisputed fact that, in the present case, Plaintiff was employed at-will and could be

8    terminated for *any* reason.  His argument that Twitter erred in deciding to fire him based on his

9    Slack posts is irrelevant.  As case law in the discrimination context has made clear, courts should

10   not analyze whether an employer's decision to fire an employee was *sound or erroneous*, but

11   instead must limit their analysis to whether the decision was discriminatory.  *See Cornwell v.*

12   *Electra Cent. Credit Union* (9th Cir. 2006) 439 F.3d 1018, 1029 (stating that a plaintiff cannot

13   "create a genuine issue of material fact by relying solely on the plaintiff's subjective belief that the

14   challenged employment action was unnecessary or unwarranted"); *see also Jones v. Barnhart*, 349

15   F.3d 1260, 1267 (10th Cir. 2003) (a court should not "act as a super personnel department that

16   second guesses employers' business judgments" (internal quotations omitted)).  By analogy here,

17   it is irrelevant whether Plaintiff's Slack posts warranted him being fired versus receiving a final

18   written warning or some lesser form of discipline; rather, the Court *only* needs to consider the

19   undisputed fact that Twitter had *a bona fide reason* to fire Plaintiff.

20           Ample evidence of such a reason exists here.  It is undisputed that Plaintiff made Slack

21   posts on the Social Watercooler channel, open to all Twitter employees, regarding the code

22   command that could shut down Twitter's system and cause the website to cease functioning.

23   Meckley Decl., Ex. 1 (Adler Tr.) at 102:15-103:19, Ex. 11, 104:9-105:20.  Concerns about internal

24   sabotage were extremely high at the time.  Meckley Decl., Ex. 6 (Stanley Tr.) at 45:9-16, 82:4-

25   84:4, 92:8-18; *see also* Meckley Decl., Ex. 4 (Nordeen Tr.) at 23:16-24:20; 32:19-33:6; Meckley

26   Decl., Ex. 3 (A. Musk Tr.) at 168:7-175:2; Meckley Decl., Ex. 2 (J. Musk Tr.) at 156:11-160:16,

27   162-172; Meckley Decl., Ex. 5 (E. Musk Tr.) at 39:2-42:1.  The Company had an actual reason for

28   firing Plaintiff – violating Company policy in the Playbook – and Plaintiff admitted that he was

told, in writing, that he was fired for violating company policy.  Meckley Decl., Ex. 1 (Adler Tr.) at 129:12-24, Ex. 17.  Because it is undisputed that he was fired "for cause," Plaintiff's WARN Act claims must be dismissed.

**VI.  CONCLUSION**

For the foregoing reasons, all of Plaintiff's claims against Defendant fail, and the Court should grant Defendant's motion for summary judgment in its entirety.

Dated: July 17, 2025                                    MORGAN, LEWIS & BOCKIUS LLP


                                                        By _____*/s/ Eric Meckley*_____
                                                           Eric Meckley
                                                           Brian D. Berry
                                                           Ashlee Cherry

                                                           Attorneys for Defendant
                                                           X CORP. f/k/a TWITTER, INC.