Shannon Liss-Riordan (SBN 310719)
*sliss@llrlaw.com*
Bradley Manewith (admitted *pro hac vice*)
*bmanewith@llrlaw.com*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801

*Attorneys for Plaintiff Eitan Adler*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| EITAN ADLER,<br><br>        Plaintiff,<br><br>    v.<br><br>TWITTER, INC. and X CORP.,<br><br>        Defendants. | Case No. 3:23-cv-01788-JD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>    REDACTED |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL OVERVIEW .....................................................................................4

    a.      Plaintiff's Position at Twitter .................................................................4

    b.      Elon Musk Signs a Merger Agreement to Acquire Twitter .................4

    c.      After the Acquisition, Mr. Musk Conducts Multiple Mass Layoffs and Circumvents Legal Obligations ...........................................................5

    d.      Mr. Adler Is Terminated Not for Real Cause and is Asked to Return Only Four Days Later ...........................................................................6

III.    LEGAL STANDARD............................................................................................8

IV.     ARGUMENT ........................................................................................................8

    a.      Defendants' Motion Fails to Address the California WARN Act, Which Covers Terminated Employees Such as Plaintiff .............................................8

    b.      Whether or Not Plaintiff Was Terminated for Cause Is a Material Factual Dispute Material to His Federal WARN Claim .................................10

    c.      Mr. Adler's Behavior Did Not Violate Company Policy; His Layoff Was Not for Real Cause and So He Should Have Received WARN Act Payments Like Thousands of Other Laid Off Employees ...........................................13

V.      CONCLUSION....................................................................................................16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Agrawal v. Musk*,
4
     C.A. No. 3:24-CV-01304 (N.D. Cal) ..............................................................5

5

*Beach v. JD Lumber, Inc.*,
6
     2010 WL 678955 (D. Idaho Feb. 23, 2010) ................................................12

7

*Butler v. Giant Markets, Inc.*,
     960 F. Supp. 884 (M.D. Pa. 1997) .............................................................11

8

*Collins v. Gee W. Seattle LLC*,
9
     631 F.3d 1001 (9th Cir. 2011 ..............................................................11, 12

10

*Cornet v. Twitter, Inc.*,
     2023 WL 187498 (N.D. Cal. 2023) ..........................................................2, 6

11

*Dias v. Nationwide Life Ins. Co.*,
12
     700 F. Supp. 2d 1204 (E.D. Cal. 2010) .......................................................8

13

*E.E.O.C. v. Timeless Invs., Inc.*,
14
     734 F. Supp. 2d 1035 (E.D. Cal. 2010) .....................................................16

15

*Gomez v. Am. Garment Finishers Corp.*,
16
     2000 WL 33348730 (W.D. Tex. Oct. 12, 2000) .......................................12

17

*Johnson v. TeleSpectrum Worldwide, Inc.*,
     61 F. Supp. 2d 116 (D. Del. 1999) ............................................................12

18

*MacIsaac v. Waste Mgmt. Collection & Recycling, Inc.*,
19
     134 Cal.App.4th 1076, 1088 (2005) ...........................................................9

20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
21
     475 U.S. 574, 585 (1986) ............................................................................8

22

*Persian Broad. Serv. Glob., Inc. v. Walsh*,
     75 F.4th 1108 (9th Cir. 2023) ...................................................................10

23

*Powell v. Union Pac. R. Co.*,
24
     864 F. Supp. 2d 949 (E.D. Cal. 2012) .........................................................8

25

*The Internat. Bhd. of Boilermakers, etc. v. NASSCO Holdings Inc.*,
26
     17 Cal.App.5th 1105 (2017) ......................................................................10

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-cv-01788-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

29 U.S.C. § 2101 ..................................................................................................9, 10, 14

29 U.S.C. § 2102(a) ..................................................................................................... passim

Cal. Lab. Code §§ 1400 *et seq.* ................................................................................ passim

Fed. R. Civ. P. 56 .........................................................................................................8

**Regulations**

20 C.F.R. § 639.2 ....................................................................................................1, 9

20 C.F.R. § 639.3 .....................................................................................................16

1

## I.    INTRODUCTION

At the conference in this case held on May 8, 2025, in response to the Court's question, both parties agreed that the issue to be tried in this case is whether or not Plaintiff Eitan Adler can properly be said to have been terminated for cause, thus exempting Defendants from being required to pay him 60 days pay, pursuant to the WARN Act.[1] 29 U.S.C. § 2102(a); 20 C.F.R. § 639.2; Cal. Lab. Code §§ 1400 *et seq.*[2] This issue is clearly a question of fact that should be tried at the upcoming trial, scheduled to begin on September 17, 2025.[3]

In November 2022, Plaintiff Eitan Adler was terminated by his employer Twitter (now known as X Corp., and referred to collectively herein as "Twitter"), along with thousands of his co-workers, only days after Elon Musk's chaotic purchase of the company. Along with more than two thousand of his peers, Mr. Adler has brought claims related to Mr. Musk and

---

[1]    *See* May 8, 2025, Hr'g Tr. (Dkt. 101), 6:24-7:1; 8:7-8:

THE COURT: Is the only issue whether he was fired for cause? That's all we're trying?

MS. LISS-RIORDAN: Yes

[]

MR. MECKLEY: If there's no pending class claims, I'm happy with that.

[2]    As discussed in *Section IV.A* below, the California WARN Act is broadly construed to also cover employees terminated "for cause," so the factual context surrounding Mr. Adler's termination is material only for his federal WARN Act claim.

[3]    When the Court set the trial date for September, and particularly after both parties agreed this was the fact issue to be tried, it did not appear to contemplate that a summary judgment motion would be filed.

Moreover, Plaintiff has not opposed Defendants' motion to have this case proceed as a bench trial without a jury (<u>see</u> Dkt. 107). Thus, this issue will be decided by the Court. It will be far easier for the Court to assess this factual issue by hearing from witnesses in the courtroom, rather than trying to make the factual determination based on the papers through a summary judgment motion.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-cv-01788-JD

1  Defendants' failure to comply with required laws.[4]

2     Misinterpreting the federal WARN Act and failing to analyze the California WARN Act,

3  Defendants have brought this Motion for Summary Judgment in an attempt to forestall a trial in

4  which clear material disputes of fact surrounding Mr. Adler's termination would be aired

5  publicly.

6     Following his purchase of Twitter, beginning in November 2022 and into the spring of

7  2023, Mr. Musk engaged in vast company-wide layoffs, until nearly 80% of Twitter employees

8  were no longer with the company. The majority of those laid off employees properly received

9  WARN Act notice (providing the employees with 60 days pay after their notice of layoff, or 90

10 days for employees in New York), as required under state and federal law in the event of mass

11 layoffs. It is undisputed that Twitter is covered by the federal and California WARN Act for

12 those mass layoffs.

13    Mr. Adler was terminated during this period of mass layoffs, but was not given WARN

14 Act notice, like most of his peers. Instead, Mr. Adler was one of a group of employees for whom

15 Twitter claimed it had cause to terminate him, thus exempting him from WARN Act

16 requirements. This issue in this case (under the federal WARN Act) is thus whether Twitter truly

17 had "cause" to terminate Mr. Adler. Under the California WARN Act, even employees

18 terminated for cause during a mass layoff are still entitled to 60 days notice or pay in lieu of

19 notice.

---

[4]    The Court previously compelled arbitration in the initial case filed by Plaintiff's counsel, *Cornet v. Twitter, Inc.*, 2023 WL 187498 (N.D. Cal. 2023), and so Plaintiff's counsel has been pursuing approximately 2,000 of these cases in arbitration. To date, the parties have completed 174 arbitration hearings.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-cv-01788-JD

On November 15, 2022, Twitter informed Mr. Adler that he was terminated for violating a "company policy," yet never identified what policy he allegedly violated. It was only during the litigation that Twitter indicated the alleged reason why it terminated Mr. Adler (that he was a "security threat"). In his deposition, Mr. Adler explained that the words that he posted that allegedly made him a "security threat" were simply a joke, and had no relation to the company's security. Mr. Adler was a high-performing and very highly regarded software engineer throughout his seven-year tenure at the company, and he never received a warning or notice that he had violated company policy. It is clear that his termination was not truly for cause, given that only four days after Mr. Adler was terminated, company leadership scrambled to figure out how to convince Mr. Adler to return to his job.

In their motion, Defendants argue that Twitter has *carte blanche* to terminate employees regardless of cause—or for no cause at all—and based exclusively on the company's characterization of the termination, they should be able to avoid California and federal WARN Act liability, so no material dispute of fact exists. This contention is clearly incorrect. The California WARN Act broadly covers any type of separation (including terminations "for cause") that otherwise triggers the statute (which would include the mass layoffs that began in November 2022). Cal. Lab. Code § 1400.5(c). Mr. Adler squarely fits within the California WARN Act's protections. Under the federal WARN Act, employees who are terminated "for cause" are exempted from the Act's requirements. However, as explained in *Section IV.B* below, courts routinely deny employers' motions for summary judgment in federal WARN Act cases because the question of whether a termination is truly for cause is clearly a fact-based inquiry. Indeed, it would clearly violate the federal WARN Act if an employer could simply manufacture an alleged "cause" to terminate employees and thereby avoid complying with the Act's

1    requirements. Yet, this is precisely what Defendants contend in their motion that Twitter was

2    permitted to do.

3    **II.      FACTUAL OVERVIEW**

4        **A.  Plaintiff's Position at Twitter**

5            Plaintiff Eitan Adler worked as a Software Engineer at Twitter from May 27, 2015, until

6    he was abruptly terminated (without warning) on November 15, 2022. Liss-Riordan Decl., ¶ 3

7    Ex. 1 (Deposition of Eitan Adler), 29:16-21. Mr. Adler was a strong performer throughout his

8    seven years at the company and was promoted several times. *Id.* at 40:23-41:9. Eventually, Mr.

9    Adler was promoted to a Staff Software Engineer in July 2020, where he acted as a technical

10   lead for the ads core platform. *Id.* at 45:25-47:7. In this role, Mr. Adler fixed business, cross-

11   microservices issues including operational, privacy, and product issues. *Id.* at 46:8-13. Mr. Adler

12   was considered one of the top software engineers at Twitter. Indeed, ███████████████

13   ████████████████████████████████████████████████████

14   ███████████████████████████████ shows Mr. Adler at

15   the very top of the list. Liss-Riordan Decl., ¶ 7(b) Ex. 10.

16       **B.  Elon Musk Signs a Merger Agreement to Acquire Twitter**

17           On April 25, 2022, Elon Musk and Twitter entered into a merger agreement, through

18   which Mr. Musk would purchase the company. Liss-Riordan Decl., ¶ 4 Ex. 2 (Deposition of

19   Elon Musk), 133. After Mr. Musk entered into the merger agreement, he began a series of

20   actions that created significant chaos and uncertainty at the company. For example, in the lead up

21   to the acquisition, Mr. Musk disparaged Twitter regarding the presence of accounts that he

22   claimed were actually "bots," ████████████████████████. *Id.* at 185-86. Mr.

23   Musk admitted ████████████████████████████████████

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-cv-01788-JD

████████████████████████████. Liss-Riordan Decl., ¶ 4 Ex. 2 (Deposition of Elon Musk),

221-24. He maintained that the ██████████████████████████████ *Id.*

       After committing to purchase Twitter, Mr. Musk tried to back out from the agreement but

Twitter sued to proceed with the merger. *Id.* at 11-12. ██████████████████████

██████████████████████████. *Id.*

### C. After the Acquisition, Mr. Musk Conducts Multiple Mass Layoffs and Circumvents Legal Obligations

       Just after the closing of his purchase of Twitter, Mr. Musk began massively cutting costs

and employees. Mr. Musk immediately terminated Twitter's four top executives—CEO Parag

Agrawal, CFO Ned Segal, Chief Legal Officer Vijaya Gadde, and General Counsel Sean

Edgett— allegedly "for cause"—and used that as an excuse not to pay them severance. *Id.* at

359-359.[5] Mr. Musk also immediately paused rent payments to landlords as well as vendors

(which have also resulted in multiple lawsuits); ████████████████████████████████

██████████████████████████████████████████████████████████████

████████ *Id.* at 91-99, 265; Liss-Riordan Decl., ¶ 5 Ex. 6 (Deposition of Steve Davis), 88-91;

Liss-Riordan Decl., ¶ 5(a) Ex. 7.

       ████████████████████████████████████████████

██████████████████████████████████████ Liss-Riordan Decl., ¶ 4 Ex.

2 (Deposition of Elon Musk), 13-14. Ultimately, about 50% of Twitter's workforce was notified

of their layoff on November 4, 2022. *Id.* at. 36-37. ████████████████████████████

████████████████████████████████████████████████████. *Id.*

---

[5]     The executives have brought their own suit to seek their severance. *See Agrawal v. Musk*, C.A. No. 3:24-CV-01304 (N.D. Cal).

On November 18, 2022, Mr. Musk conducted another company-wide layoff, in which employees were given the option of whether to be part of the layoff (through an email he sent to the workforce with the subject line "A Fork in the Road"). *Id.* at 36-38, 167. ███████ ██████████████████████████████████████████████ Liss-Riordan Decl., ¶ 7(g).

Employees who had been notified of their layoffs on November 4, 2022, and November 18, 2022 (for not clicking "yes" in response to the "Fork in the Road" email), were not paid their promised severance (████████████████████████████████████████ █████). *See Cornet*, 2023 WL 187498. However, ██████████████████████ ██████████████████████████████. Liss-Riordan Decl., ¶ 7 Ex. 11, Ex. 12. Mr. Adler, as well ███████████████, was terminated on November 15, 2022, right in the midst of these company-wide layoffs. Liss-Riordan Decl., ¶ 7(e) Ex.13. Mr. Musk continued the layoffs through the spring of 2023, until about 80% of the workforce was no longer employed. Liss-Riordan Decl., ¶ 4 Ex. 2 (Deposition of Elon Musk), 34-35.

### D. Mr. Adler Is Terminated Not for Real Cause and is Asked to Return Only Four Days Later

Although Mr. Adler was never informed of the reason for his termination, Twitter indicated in discovery why it contended he was terminated. On November 13, 2022, Mr. Musk tweeted that the company platform was running "super slow" due to too many services running at the same time. Liss-Riordan Decl., ¶ 3 Ex. 1 (Deposition of Eitan Adler), 132-34; 103:3-19. Indeed, throughout the summer and fall of 2022, Mr. Musk █████████████████████ ██████████████████████████ *See* Liss-Riordan Decl., ¶ 7(f) Ex. 14. Mr. Musk also frequently used humor in his tweets and other public statements and claimed that ██████████████████████ Liss-Riordan Decl., ¶ 4 Ex. 2 (Deposition of Elon

Musk), 34, 221-24.

Mr. Musk's tweet denigrating the speed of the platform was widely shared and sparked significant discussion inside and outside of the company. Liss-Riordan Decl., ¶ 3 Ex. 1 (Deposition of Eitan Adler), 104:9-25. Many Twitter employees made jokes and comments about Mr. Musk's tweet in an internal Slack[6] channel called the "Social Watercooler." *Id.* at 106:3-20. The Slack channel, named after the "watercooler" where employees could have casual conversations related and unrelated to work, was where Twitter employees regularly posted jokes, commiserated, and spoke casually among their peers. *Id.*[7]

In response to Mr. Musk's tweet, on November 14, 2022, Mr. Adler posted in the Social Watercooler Slack channel: "time to kill useless services" (suggesting that the engineers would likely be asked to delete the services that Mr. Musk was blaming were slowing the platform down). *Id.* at 103:3-19. Furthering the joke, another employee wrote: "aurora kill all *, what could go wrong?" Mr. Adler responded to that post: "we tried this before, ended up changing the aurora client because of it." *Id.* at 107:6-109:10. At his deposition, Mr. Adler explained that the "aurora" command the other employee referenced "will do nothing" if used, but that jokes like this about various coding commands were funny and common among software engineers. *Id.* at 111:4-5.

On November 15, 2022, just three days before the second major round of layoffs, Mr. Adler was terminated without warning. Liss-Riordan Decl., ¶ 3 Ex. 1 (Deposition of Eitan Adler), 132:17-133:3. He was vaguely told he violated company policy, but no specific policy

---

[6]    Slack is a workplace instant messaging platform that Twitter used as a communications channel among its employees.

[7]    *See* the Social Watercooler description, Liss-Riordan Decl., ¶ 7(a) Ex. 9 ("This room is for shitposting, memes, jokes, and Cool Stories….just the usual bullshittery.").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-cv-01788-JD

was cited. *Id.*

On November 19, 2022, Behnam Rezaei, Twitter's then-head of product and engineering, asked James Musk (Elon Musk's young cousin, who was helping Elon with the Twitter transition) if he could bring Mr. Adler back to Twitter. Liss-Riordan Decl., ¶ 8 Ex. 15. "Bringing him back can turn the tide for a lot of outstanding engineers in our critical list," Mr. Rezaei suggested. *Id.* James Musk agreed: "Yes, will try to bring him back. Can you reach out?" *Id.*

Mr. Adler refused to return to Twitter, unsure whether or not it was "a trick." Liss-Riordan Decl., ¶ 3 Ex. 1 (Deposition of Eitan Adler), 158:6-159:1.

## III.    LEGAL STANDARD

Summary judgment shall not be granted when there is a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The moving party bears the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Powell v. Union Pac. R. Co.*, 864 F. Supp. 2d 949, 953 (E.D. Cal. 2012). The nonmoving party only need show that "there is a genuine issue of material fact…" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In reviewing a motion for summary judgment, the evidence of the non-moving party "is to be believed," and the court "must" draw all inferences and view all evidence in the light most favorable to the nonmoving party. *Dias v. Nationwide Life Ins. Co.*, 700 F. Supp. 2d 1204, 1214 (E.D. Cal. 2010).

## IV.    ARGUMENT

### A.  Defendants' Motion Fails to Address the California WARN Act, Which Covers Terminated Employees Such as Plaintiff

The WARN Act applies when an employer separates its employees as part of a mass layoff. 29 U.S.C. § 2102(a); 20 C.F.R. § 639.2; Cal. Lab. Code §§ 1400 *et seq.* A "mass layoff" occurs within the meaning of the federal WARN Act when a covered employer lays off either:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(1) at least 33 percent of the full-time employees at a single site of employment over a 30-day period, provided that the total number of laid off employees is 50 or more (29 U.S.C. § 2101(a)(3)(B)(i)(I)–(II)); or (2) at least 500 full-time employees at a single site of employment over a 30-day period (29 U.S.C. § 2101(a)(3)(B)(ii)). The California WARN Act provides similar protection as its federal counterpart but under more expansive circumstances: under the California WARN Act, a mass layoff occurs anytime 50 or more employees are laid off at a "covered establishment," which the Act defines as "any industrial or commercial facility or part thereof that employs, or has employed within the preceding 12 months, 75 or more persons." Cal Lab. Code §§ 1400.5(a), (d).

In order to receive the protection of the federal WARN Act, an employee must have suffered an "employment loss," which is defined as "an employment termination, other than a discharge for cause, voluntary departure, or retirement." 29 U.S.C. § 2101(a)(6). Under the California WARN Act, however, an employer is liable to an employee "who lost his or her employment." Cal. Lab. Code § 1402(a).

Defendants' Motion is exclusively focused on the federal WARN Act. They fail to make any substantive arguments about Plaintiff's California WARN Act claims and instead merely suggest that the California and federal WARN Acts are "similar," citing only one unpublished federal court case. Motion at 7, Dkt. 108. This argument "misses the mark," as it "fails to account for differences in the language of the two statutory schemes." *MacIsaac v. Waste Mgmt. Collection & Recycling, Inc.*, 134 Cal.App.4th 1076, 1088 (2005) (advising caution in comparing the federal and California WARN statutes). Defendants' statutory interpretation of the federal WARN Act is both incorrect and inapplicable to the California WARN Act.

The California WARN Act (unlike its federal counterpart) does not include termination

for cause as an affirmative defense. *Compare* 29 U.S.C. § 2101(a)(6) (excluding discharges "for cause" from the definition of "employment loss"), *with* Cal. Lab. Code § 1400.5(c) (defining "layoff" as "a separation from a position for lack of funds or lack of work," but not excluding from the definition terminations for cause). The California statute goes on to exclude certain categories of employees protected under the Act but does not carve out exceptions for employees terminated "for cause." Cal. Lab. Code § 1400.5(g)(2).

Basic rules of statutory interpretation demand that additional exceptions cannot simply be read into the statute, particularly when exceptions are already articulated. *Persian Broad. Serv. Glob., Inc. v. Walsh*, 75 F.4th 1108, 1113 (9th Cir. 2023) ("When a provision contains express exceptions, "the familiar judicial maxim *expressio unius est exclusio alterius* counsels against finding additional, implied, exceptions."') (internal citations omitted). Thus, the lack of any language specifically excluding employees terminated for cause from California WARN Act coverage indicates that these employees are protected by the statute. *See id.*

Employees who are terminated during a mass layoff, such as Mr. Adler, instead fit squarely within the statute's broad definition of covered employees. *See The Internat. Bhd. of Boilermakers, etc. v. NASSCO Holdings Inc.*, 17 Cal.App.5th 1105, 1125 (2017) (finding that a temporary work stoppage was sufficient to trigger California WARN requirements because the Legislature did not intentionally include limitations on the duration of separation from work (unlike the federal WARN Act) and instead intended the California WARN act be "broader" in applicability).

### B. Whether or Not Plaintiff Was Terminated for Cause Is a Material Factual Dispute Material to His Federal WARN Claim

The fact that Mr. Adler was terminated during a mass layoff that triggered the WARN Act is undisputed and sufficient for his California WARN Act claims. *See* Section IV. A., *supra.*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-cv-01788-JD

Yet the question of whether Mr. Adler's termination was truly for cause is a disputed issue and material to his claim under the federal WARN Act. Thus, summary judgment would be clearly inappropriate here.

Defendants suggest that, under the federal WARN Act, "the Court *only* needs to consider the undisputed fact that Twitter had *a bona fide reason* to fire Plaintiff," and not whether that reason is for "good cause" or for "just cause" (emphasis original). Motion at 8. Without citing a single, specific company policy Mr. Adler allegedly violated, Defendants' argument suggests that employers can manufacture vague causes to terminate employees to circumvent WARN Act obligations. *Id.* This argument is clearly incorrect.

Under the federal WARN Act, in evaluating whether an employee's separation is covered by the Act, courts do not uncritically accept the employer's description of the separation. Even when an employer claims an employee's separation was based on a resignation or alleged termination for cause (such as Mr. Adler's termination here), courts seek to discern whether the employee was in reality part of a mass layoff. Indeed, courts routinely deny employers' motions for summary judgment in federal WARN Act cases, because such questions require factual inquiries as to whether a separation triggers the WARN Act. *See, e.g., Collins v. Gee W. Seattle LLC*, 631 F.3d 1001 (9th Cir. 2011) (reversing a district court's decision to grant the employer summary judgment in federal WARN Act claims, finding that, while employees who voluntarily depart are specifically excluded from the Act, the context surrounding their departure could suggest that they should have in fact been covered by the Act). *See also Butler v. Giant Markets, Inc.*, 960 F. Supp. 884, 886 (M.D. Pa. 1997) ("As to Giant's claim that plaintiff Polacheck was terminated for cause and not protected under WARN, I will deny the motion for summary judgment as there is a genuine issue of fact as to whether Polacheck had been laid off or

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-cv-01788-JD

terminated for cause."); *Johnson v. TeleSpectrum Worldwide, Inc.*, 61 F. Supp. 2d 116, 124 (D. Del. 1999) (denying summary judgment where "[t]here is a genuine issue of material fact as to whether a plant closing occurred; that is, whether 50 employees, exclusive of part-time employees, suffered an employment loss," where defendants asserted "that plaintiff has offered no proof as to whether the employees were terminated as a result of the shutdown, as opposed to discharge for cause, voluntary departure or retirement"); *Gomez v. Am. Garment Finishers Corp.*, 2000 WL 33348730, at *3 (W.D. Tex. Oct. 12, 2000) (denying summary judgment because "[s]uch conflicting evidence makes it impossible for the Court to determine . . . whether such employees were 'affected employees' as a matter of law" such that they were entitled to the protections of the WARN Act); *Beach v. JD Lumber, Inc.*, 2010 WL 678955, at *11 (D. Idaho Feb. 23, 2010) ("To succeed on their claims, however, Plaintiffs must demonstrate that their terminations resulted from the lumber mill closure and 'mass layoff' identified in the August 2, 2008 notice. While there are facts in the record to support such a contention, these facts are disputed. . .The fact of such an alternative reason for the termination of Plaintiffs' employment. . .creates a genuine issue of material fact that precludes, for the purposes of summary judgment, the granting of Plaintiff's motion.").

Indeed, in drafting the WARN Act, Congress "intended to give terminated employees time to readjust without immediately searching for a new job," as the "unexpected and urgent need to find new employment is precisely the type of pressure that this Court held that Congress was attempting to eliminate by creating the WARN Act." *Collins*, 631 F.3d at 1006-07.

Thus, particularly at the summary judgment stage, the Court cannot simply assume that Defendants' stated reasons for terminating Mr. Adler are true, and that it had real (or "just" or "good") cause to terminate him.

1
2

    **C. Mr. Adler's Behavior Did Not Violate Company Policy; His Layoff Was Not for Real Cause and So He Should Have Received WARN Act Payments Like Thousands of Other Laid Off Employees**

3

    After acquiring Twitter in October 2022, Mr. Musk ███████████████████

4
5

██████████████████ Liss-Riordan Decl., ¶ 5 Ex. 6 (Deposition of Steve Davis), 88-

6

91; Liss-Riordan Decl., ¶ 5(a) Ex. 7. Indeed, Mr. Musk ███████████████████

7

████████. In the first days after he acquired Twitter, Mr. Musk: paused vendor payments

8

and rent payments to landlords and bragged that he terminated Twitter leadership allegedly "for

9

cause" (but apparently to avoid paying their hefty severance payments). Liss-Riordan Decl., ¶ 9

10

Ex. 16 (Walter Isaacson Decl.), Ex. 17. He then quickly laid off half of the company on

11

November 4, 2022, ████████████████████████████████

12
13

██████████████. Liss-Riordan Decl., ¶ 4 Ex. 2 (Deposition of Elon Musk) 196,

14

199. Soon after, Mr. Musk instructed ████████████████████████

15
16

███████████████████████████████████████████

17

██████████████. Liss-Riordan Decl., ¶ 4(c) Ex. 5. Less than a week later, Mr. Musk

18

███████████████████████████████████████████

19

███████████████████████████████

20

████. Liss-Riordan Decl., ¶ 4 Ex. 2 (Deposition of Elon Musk) 91-99.

21

    In this case, Twitter attempts to avoid paying 60 days of pay to Eitan Adler, contending

22

that he (█████████████████orkers) was terminated for "cause" in the midst of all these

23

layoffs (Motion at 4-5, Dkt. 108), and despite the fact that four days later Twitter tried to get

24

Mr. Adler to come back to work (thus showing the alleged "cause" that led to his termination

25

was not really anything very serious, even in Twitter's view) (Liss-Riordan Decl., ¶ 3 Ex. 1

26

(Deposition of Eitan Adler), 158:6-159:1).

27
28

1    It is undisputed in this matter that Twitter is subject to the federal and California WARN

2    Acts, as it is undoubtedly a "business enterprise" that employs more than 100 employees. 29

3    U.S.C. § 2101(a)(1); Cal. Lab. Code § 1400.5(a) (providing that a "covered establishment" must

4    employ 75 or more persons). Indeed, ███████████████████████████████

5    ███████████████████████████████████████████

6    ███████████████████████████████████████████

7    ███████████████████████████████████████████

8    ███████████████████. Liss-Riordan Decl., ¶ 7 Ex. 11, Ex. 12. Nor is it disputed that

9    Twitter was engaged in a mass layoff. On November 4, 2022, Twitter notified 50% of its

10   workforce, █████████████, that they were laid off, and two weeks later, on

11   November 18, 2022, Twitter notified another ████ employees that they would no longer be at

12   the company. Liss-Riordan Decl., ¶ 4 Ex. 2 (Deposition of Elon Musk), 36-38, 167; Liss-Riordan

13   Decl. ¶ 7(g). Those layoffs continued through spring 2023. Liss-Riordan Decl., ¶ 4 Ex. 2

14   (Deposition of Elon Musk), 34-35. Therefore, it is undisputed that Defendants are covered by the

15   WARN Act, and that the layoffs that began in November 2022 were triggering events.

16       Twitter alleges Mr. Adler was terminated on November 15, 2022, amid these layoffs for

17   "violating Company policy in the Playbook," yet has not pointed to a specific policy in the 54-

18   page handbook that he allegedly violated. Motion at 9, Dkt. 108. Instead, Twitter contends that a

19   single post and comment Mr. Adler made in the Social Watercooler Slack channel was the

20   reason for his termination, and that reason constitutes "cause" that exempts him from the

21   protections of the WARN Act. Motion at 4-5, Dkt. 108. However, Mr. Adler testified at his

22   deposition that his post was a joke (and irrelevant to Twitter's security) – and that anyone

23   familiar with the subject matter would recognize it as a joke. Liss-Riordan Decl., ¶ 3 Ex. 1

(Deposition of Eitan Adler), 105:14-106:20.[8] Further, the whole point of the "social water cooler" Slack channel was a place where employees could joke around and collectively blow off steam. *Id.*; Liss-Riordan Decl., ¶ 7(a) Ex. 9. Mr. Musk has been known to frequently make "jokes," particularly online, a number of which have gotten him into a good deal of trouble. Liss-Riordan Decl., ¶ 4 Ex. 3, Ex. 4.

Clearly there is a fact issue as to whether Mr. Adler's posting constituted just cause for his termination. That is not something that the Court can decide on summary judgment.

At trial, Mr. Adler intends to show that his post merely humorously reiterated Mr. Musk's tweet posted a few days earlier about reducing excessive services at Twitter. After Mr. Musk suggested there were too many services slowing down the Twitter website, Mr. Adler jokingly posted that, therefore, it was time to cut "useless services". Contrary to Defendants' absurd suggestions (Motion at 5, Dkt. 108), Mr. Adler's five-word comment on an internal, "social watercooler" Slack channel clearly did *not* include "instructions on how to delete the entire Twitter database." At the time of Mr. Adler's termination, there was no company policy that prohibited employees from making jokes. And indeed, Mr. Musk's ████████

████████████████████

That there was not good cause for Mr. Adler's termination is made even more clear given Mr. Adler's strong performance – as well as Twitter's attempt to bring him back to the job four days after his termination. *See* Liss-Riordan Decl., ¶ 8 Ex. 15.

Mr. Adler survived the first round of company-wide layoffs that were announced on

---

[8]    Katie Marcotte, Twitter's former Senior Director of Human Resources, testified that ████████ ████████████████████ Liss-Riordan Decl., ¶ 6 Ex. 8 (Deposition of Katie Marcotte), 240:23-241:10.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-cv-01788-JD

November 4, 2022, and impacted half the company. Twitter has argued that it ██████████ ████████████████████████████████████████████████████████ Liss-Riordan Decl., ¶ 4 Ex. 2 (Deposition of Elon Musk), 26, 35-36, 138-39. Thus, Twitter ████████ ██████████████████████████████ Mr. Adler was such a strong performer that, after his termination, Twitter realized it was a mistake and attempted to hire him back just four days after he was terminated. On November 19, 2022, James Musk agrees that the company should "try to bring [Mr. Adler] back." Liss-Riordan Decl., ¶ 8 Ex. 15. Mr. Ajeet Grewal agrees, suggesting that "a different reporting chain" might be "more palatable to Eitan" and can help "bring back strong talent." *Id.*

Based on these facts, the Court should deny Twitter's motion for summary judgment. There is clearly a fact issue under the federal WARN Act as to whether Mr. Adler's termination was truly for cause, or whether the alleged cause was simply a pretext for Twitter to avoid its legal obligation to him under the WARN Act. *See* 20 C.F.R. § 639.3(i)(8) (strictly construing WARN Act definitions of covered employees "with the intent to evade the purpose of the Act to provide notice is not acceptable."); *E.E.O.C. v. Timeless Invs., Inc.*, 734 F. Supp. 2d 1035, 1063 (E.D. Cal. 2010) ("[W]eaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in an employer's statements or actions are "evidence of pretext") (internal quotations omitted).

## V.    CONCLUSION

For the reasons discussed above, the Court should deny Defendants' Motion for Summary Judgment. Under the California WARN Act, Mr. Adler should have received 60 days pay, or pay in lieu of notice, simply because he was terminated in the midst of a mass layoff. Under the federal WARN Act, there is a clear material dispute of fact as to whether Mr. Adler's

termination was for cause that should proceed to trial.

Dated: July 31, 2025                     Respectfully submitted,

EITAN ADLER,

By his attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan (SBN 310719)
*sliss@llrlaw.com*
Bradley Manewith (*pro hac vice*)
*bmanewith@llrlaw.com*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-cv-01788-JD