MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:    +1.415.442.1000
Fax:   +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304
Tel:    +1.650.843.4000
Fax:   +1.650.843.4001

Attorneys for Defendant
X CORP. f/k/a TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EITAN ADLER,<br><br>    Plaintiff,<br><br>vs.<br><br>TWITTER, INC. and X CORP.,<br><br>    Defendants. | Case No. 3:23-cv-01788-JD<br><br>**DEFENDANT X CORP.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date: August 21, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-CV-01788-JD

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................II

II. ARGUMENT ........................................................................................................................ 2

    A. The Basis for Plaintiff's Termination Remains Undisputed. .................................. 2

    B. Defendant is Entitled to Summary Judgment on Plaintiff's Federal WARN Act Claim. ........................................................................................................ 3

    C. Defendant is Entitled to Summary Judgment on Plaintiff's California WARN Act Claim. ................................................................................................. 8

III. DEFENDANT'S EVIDENTIARY OBJECTIONS .......................................................... 10

    A. Exhibit 2: Testimony from Elon Musk ................................................................. 11

    B. Exhibit 12: WARN Notice Sent to Employees Who Voluntarily Resigned In Response to the Fork in the Road Email ............................................ 12

    C. Exhibits 3, 4, 14: Communications from Elon Musk ........................................... 12

IV. CONCLUSION ................................................................................................................. 13

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

-i-

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-cv-01788-JD

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alter v. SCM Office Supplies, Inc.*,
  906 F. Supp. 1243 (N.D. Ind. 1995) .................................................................................... 4

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
  289 F.3d 589 (9th Cir. 2002) ................................................................................................ 3

*Beach v. JD Lumber, Inc.*,
  No. CV08-416-N-EJL, 2010 WL 678955 (D. Idaho Feb. 23, 2010) .................................... 4

*Beard v. Banks*,
  548 U.S. 521 (2006) .............................................................................................................. 2

*Butler v. Giant Markets, Inc.*
  960 F. Supp. 884 (M.D. Pa. 1977) ........................................................................................ 4

*Chain v. N.E. Freightways, Inc.*,
  2020 WL 7481142 (S.D.N.Y. Dec. 18, 2020) ...................................................................... 5

*Collins v. Gee West Seattle LLC*,
  631 F.3d 1001 (9th Cir. 2011) .............................................................................................. 4

*Cornwell v. Electra Cent. Credit Union*,
  439 F.3d 1018 (9th Cir. 2006) .............................................................................................. 6

*Gomez v. American Garment Finishers Corp.*,
  No. EP-99-CA-260-DB, 2000 WL 33348730 (W.D. Tex. Oct. 12, 2000) .......................... 4

*Guinn v. Timco Aviation Servs., Inc.*,
  317 F. Supp. 2d 888 (W.D. Ark. 2004) ................................................................................ 5

*Gunderson v. Alta Devices, Inc.*,
  2021 WL 4461569 (N.D. Cal. Sept. 29, 2021) ..................................................................... 8

*Johnson v. Telespectrum Worldwide, Inc.*,
  61 F.Supp.2d 116 (D. Del. 1999) .......................................................................................... 4

*Jones v. Barnhart*,
  349 F.3d 1260 (10th Cir. 2003) ............................................................................................ 8

*Kouame v. DAL Glob. Servs., LLC*,
  292 F. Supp. 3d 1154 (W.D. Wash. 2018) ........................................................................... 8

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

-ii-

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-cv-01788-JD

*Leeper v. All. Res. Partners, L.P.*,
   356 F. Supp. 3d 761 (S.D. Ill. 2018), *aff'd sub nom. Leeper v. Hamilton Cnty. Coal, LLC*, 939 F.3d 866 (7th Cir. 2019) .................................................................... 5

*MacIsaac v. Waste Management Collection & Recycling, Inc.*,
   134 Cal.App.4th 1076 (2005) ............................................................................... 10

*Pomeroy v. Wal-Mart Stores, Inc.*,
   834 F.Supp.2d 964 (E.D. Cal. 2011) ..................................................................... 7

*Shokri v. Boeing Co.*,
   311 F. Supp. 3d 1204 (W.D. Wash. 2018), *aff'd*, 777 F. App'x 886 (9th Cir. 2019) ........................................................................................................................ 8

*Smith v. Mack Trucks*,
   505 F.2d 1248 (9th Cir. 1974) ............................................................................... 3

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ............................................................................... 8

*Wiltz v. M/G Transp. Servs., Inc.*,
   128 F.3d 957 (6th Cir. 1997) ................................................................................. 4

*Winns v. Exela Enter. Sols., Inc.*,
   No. 4:20-CV-06762-YGR, 2022 WL 4094137 (N.D. Cal. Aug. 17, 2022),
   *aff'd*, No. 22-16342, 2023 WL 4992825 (9th Cir. Aug. 4, 2023) ............................ 5

**Statutes**

29 U.S.C. § 2101(a)(6) ................................................................................................ 5

Cal. Lab. Code § 1402(a) .......................................................................................... 10

California WARN Act ................................................................................... 2, 8, 9, 10

Federal WARN Act ............................................................................................ 3, 8, 10

Labor Code section 1400.5 ......................................................................................... 9

Labor Code section 1400.5(e) ..................................................................................... 9

Labor Code section 1401(a)(1) ................................................................................... 9

WARN Act ......................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. Proc. 56(e)(2) .......................................................................................... 2

Fed. R. Evid. 401 ........................................................................................... 11, 12, 13

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Fed. R. Evid. 402 .................................................................................................................. 11

Fed. R. Evid. 403 ........................................................................................................ 11, 12, 13

Fed. R. Evid. 801(c) .............................................................................................................. 12

Fed. R. Evid. 802 .................................................................................................................. 12

Fed. R. Evid. 805 .................................................................................................................. 12

Local Rule 7-3(c) .................................................................................................................. 11

Rule 56(c) ................................................................................................................................ 2

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

-iv-

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-cv-01788-JD

## I. INTRODUCTION

Plaintiff's Opposition raises no material fact dispute that would prevent entry of judgment in favor of Defendant. Plaintiff does not dispute that he posted on the "Social Water Cooler" Slack channel about a computer command that would shut down the Twitter website. Plaintiff also does not dispute that he possessed the type of super-user access to run such a command and shut down functioning of the site. Nor does he dispute that on November 15, 2022, the Company notified him in writing that he was being fired for violating Company policy. The reasons underlying the Company's decision to fire Plaintiff, as well as the fact that he was fired – not laid off – on November 15, are entirely undisputed.

Plaintiff's Opposition basically argues that Defendant "got it wrong," he was only joking, and his jokes did not warrant being fired. But that argument misses the point. Whether Plaintiff— or the Court—agrees with Defendant's judgment in deciding to fire Plaintiff is neither relevant nor material to the viability of his WARN claims. Rather, what matters is whether Defendant had a bona fide reason to fire Plaintiff. The undisputed evidence shows that it did. At the time that Plaintiff posted about the "kill command," tensions and hostility within Twitter were extremely high. The Company had bona fide concerns about insider threats, particularly the risk posed by engineers like Plaintiff who had the requisite access to disable the site's functioning. Twitter's Information Security Team found Plaintiff to be an insider threat risk and as a result he was fired.

Plaintiff's Opposition also argues that, even though Twitter unequivocally fired him on November 15, his firing should be considered a "layoff" because Twitter had laid off other employees earlier on November 4 and laid off other employees later in November and afterwards (as well as implementing other cost cutting measures). This argument fails, as it effectively would mean that no employee can be fired for cause at or around the time that other employees are being laid off by a company. Not surprisingly, Plaintiff has not cited any case law even suggesting that the WARN Act precludes an employer from firing some employees for cause while simultaneously laying off other employees as part of a reduction in force. The relevant case law holds exactly the opposite to what Plaintiff contends. Moreover, Plaintiff's argument would render meaningless the WARN Act's exclusion of terminations for cause from its scope.

Finally, Plaintiff argues that the California WARN Act does not exclude terminations for cause from its scope and that he was entitled to WARN notice under California law even though he was fired for cause. Plaintiff essentially argues that in California an employer *always* must provide 60 days' notice before *any* termination, regardless of the circumstances. If, for example, an employee stole from his company, or even threatened to kill his coworkers, he could not be terminated immediately -- he would first need 60 days of notice and non-working pay. That is clearly not the law in California, and Plaintiff has not cited any apposite case law adopting such an interpretation of the California WARN Act. Indeed, the plain language of the California WARN Act makes clear that it applies only to a layoff for "lack of funds or lack of work", not a firing for cause.

Because the undisputed evidence shows that Twitter fired Plaintiff for cause, neither the federal nor California WARN Acts apply, and the Court should grant summary judgment for Defendant.

## II. ARGUMENT

### A. The Basis for Plaintiff's Termination Remains Undisputed.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. Proc. 56(e)(2); *see also Beard v. Banks*, 548 U.S. 521, 527 (2006) ("[B]y failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, Banks is deemed to have admitted the validity of the facts contained in the Secretary's statement.").

Here, Plaintiff does not dispute *any* of the material facts supporting his firing for cause:

- On November 14, 2022, Plaintiff posted on Slack with Jesse Feinman regarding deploying the "aurora kill all *" command. *See* Declaration of Eric Meckley in Support of Defendant's Motion for Summary Judgment ("Meckley Decl."), ¶ 2 (Deposition of Eitan Adler), Ex. 1 at 102:15-103:19, Ex. 11.

- Plaintiff and Feinman had their discussion in writing in the "Social Watercooler" Slack channel, which was accessible to and could be viewed by all Twitter employees. *Id*.; *see*

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

-2-

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-cv-01788-JD

1  *also id*. at 104:9-105:20.

2  - If deployed, the "aurora kill all *" command would result in the Twitter website ceasing to function. *Id*. at 107:21-108:8, 108:15-109:21; 110:2-4.

- On November 15, 2022, Plaintiff received a termination email from Defendant that said: "We regret to inform you that your employment is terminated effective immediately. Your recent behavior has violated company policy." *Id*. at 129:12-24, Ex. 17.

- Plaintiff never received any documentation stating that he had been laid off or was otherwise terminated as part of a reduction in force. *Id*. at 129:25-132:16.

- Plaintiff never tried to determine what policy he had violated. *Id.* at 132:22-136:23; *id.* at 161:17-163:18, Ex. 21.

As explained below, Plaintiff's failure to rebut any of these undisputed facts renders his claims appropriate for summary judgment.

### B. Defendant is Entitled to Summary Judgment on Plaintiff's Federal WARN Act Claim.

Plaintiff argues that summary judgment would be "clearly inappropriate" because "the question of whether [his] termination was truly for cause is a disputed issue." Opp. at 11. But Plaintiff does not cite to facts that would create any such dispute. Nor could he, as he concedes that he was not impacted by the November 4 layoffs and that he did not receive or see any document characterizing his separation as a "layoff" or "reduction in force." Meckley Decl., ¶ 2, Ex. 1 (Adler Tr.) at 77:9-78:10, Ex. 8; 129:25-132:16. Rather than cite to any actual facts, Plaintiff instead speculates and hypothesizes about some hidden ulterior motive in terminating his employment. However, it is well settled that "arguments and statements of counsel 'are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment.'" *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) (quoting *Smith v. Mack Trucks*, 505 F.2d 1248, 1249 (9th Cir. 1974)). As explained below, each of Plaintiff's arguments has no merit.

First, Plaintiff argues that "courts routinely deny employers' motions for summary judgment in federal WARN Act cases, because such questions require factual inquiries as to

whether a separation triggers the WARN Act." Opp. at 11. That is not accurate. He cites to a single Pennsylvania district court case where the court denied summary judgment, but that case is clearly distinguishable. In *Butler v. Giant Markets, Inc.*, the defendant argued that the plaintiff had been terminated for cause and was not entitled to the protections of the WARN Act. 960 F. Supp. 884, 891 (M.D. Pa. 1997). The plaintiff had presented actual evidence that he had been temporarily laid off, not terminated, and he had received unemployment benefits without objection from defendant. *Id.* In denying summary judgment the court concluded on the record before it that there was a "lack of conclusive evidence," given that "[b]oth sides … submitted affidavits which contradict each other on all relevant points." *Id.* Here, unlike in *Butler*, Plaintiff has not presented any evidence that contradicts the evidence presented by Defendant as to the reason he was fired, and as explained *supra*, arguments from counsel and speculation are not evidence and cannot create a dispute of fact.[1]

In contrast to the inapposite cases upon which Plaintiff relies, Defendant cited several cases that directly undercut Plaintiff's arguments and show that, where no factual dispute exists regarding an employee's termination for cause, courts routinely grant summary judgment on WARN Act claims. *See* Mot. at 7-8 (collecting cases); *Wiltz v. M/G Transp. Servs., Inc.*, 128 F.3d 957, 963 (6th Cir. 1997) (granting summary judgment where it was undisputed that 50 employees did not suffer an "employment loss" because three of the 50 had been terminated for cause for failing a drug test); *Alter v. SCM Office Supplies, Inc.*, 906 F. Supp. 1243, 1250-1251 (N.D. Ind. 1995)

---

[1] The remaining cases cited by Plaintiff are not applicable here because they do not address the termination for cause exception to the WARN Act but rather involve other exceptions to the WARN Act that are not at issue here. *See, e.g. Collins v. Gee West Seattle LLC*, 631 F.3d 1001, 1008 (9th Cir. 2011) (reversing order granting summary judgment where "there was at least some evidence in the record that Employees left their jobs because the business was closing," which created a factual dispute as to whether employees had "voluntarily departed" within the meaning of the WARN Act); *Johnson v. Telespectrum Worldwide, Inc.*, 61 F.Supp.2d 116, 122-127 (D. Del. 1999) (denying cross-motions for summary judgment because factual disputes existed as to whether a "plant closing" had occurred and whether defendant had met the "offer to transfer" exclusion under the WARN Act); *Gomez v. American Garment Finishers Corp.*, No. EP-99-CA-260-DB, 2000 WL 33348730, at *4 (W.D. Tex. Oct. 12, 2000) (denying cross-motions for summary judgment because of factual disputes as to whether a layoff was temporary or permanent and whether defendant met the "business circumstances" exception); *Beach v. JD Lumber, Inc.*, No. CV08-416-N-EJL, 2010 WL 678955, at *12-16 (D. Idaho Feb. 23, 2010) (denying cross-motions for summary judgment because there was a factual dispute as to whether the "unforeseen business circumstance" exception to the WARN Act applied).

("Finally, with respect to the four employees who failed their pre-employment drug tests, and were thus terminated by Ampad, the court finds that these four employees were discharged for cause and, as a matter of law, do not count as 'employment losses.'"); *Leeper v. All. Res. Partners, L.P.*, 356 F. Supp. 3d 761, 764 (S.D. Ill. 2018), *aff'd sub nom. Leeper v. Hamilton Cnty. Coal, LLC*, 939 F.3d 866 (7th Cir. 2019) (granting summary judgment where the undisputed evidence showed that the requisite number of employees did not suffer an "employment loss" when there was evidence of a termination for cause).

Second, Plaintiff argues that because Twitter implemented other cost-cutting measures, including layoffs, before and after the time he was fired, the Court can conclude that he was laid off rather than fired for cause. Opp. at 13. This argument is not only based entirely on speculation (which is insufficient to create a triable dispute of material fact), it falsely presumes that an employer cannot simultaneously fire employees for cause during a period when it has also conducted layoffs. No statutory or case law supports such an argument. On the contrary, WARN-qualifying and non-WARN-qualifying terminations can occur in close proximity. For example, in the context of voluntary departures, courts have recognized that such departures are exempt from the WARN Act even where an employee voluntarily opts to take a severance payout in lieu of being laid off. *See Chain v. N.E. Freightways, Inc.*, 2020 WL 7481142, at *7 (S.D.N.Y. Dec. 18, 2020), *R. & R. adopted*, 2021 WL 5051656, (S.D.N.Y. Nov. 1, 2021) (WARN did not apply because plaintiff voluntarily departed before company shutdown); *Guinn v. Timco Aviation Servs., Inc.*, 317 F. Supp. 2d 888, 891 (W.D. Ark. 2004) ("voluntary resignation in lieu of being laid off is not an employment loss under the WARN Act"). Indeed, the WARN Act exempts all terminations for cause from the definition of "employment loss" without any qualifier for whether layoffs occurred shortly before or after. *See* 29 U.S.C. § 2101(a)(6); *see also Winns v. Exela Enter. Sols., Inc.*, No. 4:20-CV-06762-YGR, 2022 WL 4094137, at *11 (N.D. Cal. Aug. 17, 2022), *aff'd*, No. 22-16342, 2023 WL 4992825 (9th Cir. Aug. 4, 2023) ("Of note, the WARN Act does not prohibit an employer from terminating employees."). The question is simply whether the termination for cause was bona fide, and there is nothing in the record even suggesting (much less proving) otherwise here, where Plaintiff was terminated for suggesting the deletion of the entire Twitter site.

Third, Plaintiff argues that his posts with Feinman about the "aurora kill all *" command were just jokes, which "anyone familiar with the subject matter would [have] recognize[d]," and were "irrelevant to Twitter's security." Opp. at 14. This argument fails for the following reasons: It is factually unsupported and, in fact, directly contradicted by Plaintiff's deposition in which he testified that the "aurora kill all *" code command could "kill" the functioning of the site. Meckley Decl., ¶ 2, Ex. 1 (Adler Tr.) at 104:1-110:17. Plaintiff also fails to recognize that *he* does not get to decide what is "relevant" to Twitter's security – that is an issue for Twitter's management and Information Security Team to decide. The relevant question is not Plaintiff's subjective motive but whether Twitter had a bona fide concern, which it did. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006) (stating a plaintiff cannot "create a genuine issue of material fact by relying solely on the plaintiff's subjective belief that the challenged employment action was unnecessary or unwarranted" in the context of a discrimination case). Twitter made its decision regarding the import of Plaintiff's posts within a context that Plaintiff has not disputed, *i.e.*, the Company was on heightened alert about insider threat risks and facing much hostility internally following the acquisition by Elon Musk and the November 4 Reduction in Force. Meckley Decl., ¶ 7, Ex. 6 (Deposition of Christopher Stanley), 45:9-16; 80:22-81:8; 82:4-84:4; 142:23-143:16; 166:8-23, Ex. 3; *see also* Meckley Decl., ¶ 5, Ex. 4 (Deposition of Ross Nordeen), 23:16-24:20; 32:19-33:6; Meckley Decl., ¶ 4, Ex. 3 (Deposition of Andrew Musk), 168:7-175:2; Meckley Decl., ¶ 3, Ex. 2 (Deposition of James Musk), 156:11-160:16, 162-172. Twitter had actual, bona fide concerns about the insider threat risks posed by an engineer like Plaintiff, who had expansive super-user access to platform infrastructure. Meckley Decl., Ex. 6 (Stanley Tr.) at 82:4-84:16; Meckley Decl., ¶ 6, Ex. 5 (Deposition of Elon Musk) at 39:10-25, 41:4-9. Given the level of hostility within the company at that time, management interpreted Plaintiff's November 14, 2022 Slack conversation as presenting a security risk. *See* Meckley Decl., ¶ 7, Ex. 6 (Stanley Tr.) at 102:13-16 ("Q: Did you consider Mr. Adler to be an internal threat to the company based on his Slack messages? A: Absolutely."); *id.* at 99:6-100:17, 105:1-5 (describing Plaintiff's messages as "quite severe" and recalling Adler as "talking about killing services and participating in causing harm to our systems"); *see also id.* at ¶ 6, Ex. 5 (E. Musk Tr.) at 39:2-43:24 (noting that "[a]t one point, we

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco

-6-

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-cv-01788-JD

had some people actually put instructions on how to delete the entire Twitter database on the – on the Slack channel" and that "joking about destroying an entire Twitter system is not funny").

Plaintiff's purported lack of malicious intent in making the Slack posts is similarly irrelevant and immaterial. *See Pomeroy v. Wal-Mart Stores, Inc.*, 834 F.Supp.2d 964, 977 (E.D. Cal. 2011) ("Wal-Mart responds that Ms. Pomeroy's comments about her actions and intentions 'are irrelevant to whether management possessed good cause in making the termination decision.' […] Wal-Mart is correct."). In the context of a termination for good cause—which carries a higher burden than needs be met here under the WARN Act, which only requires "cause"—an employer only needs to present evidence that it acted in good faith and had reasonable grounds to believe that an employee had engaged in misconduct. *Id*. Here, Defendant has presented ample undisputed evidence that it believed Plaintiff's Slack posts posed a risk of potential harm to the Company and violated Company policy. Plaintiff claims that Defendant "has not pointed to a specific policy in the 54-page handbook that he allegedly violated." *See* Opp. at 14. Plaintiff is flat out wrong. As set forth in Defendant's Motion, his conduct violated the Company's "Confidential Information," "Keeping Twitter Safe," and "Code of Business Conduct" policies. *See* Mot. at 2-3; Meckley Decl., ¶ 2 (Adler Tr.), Ex. 1 at 70:25-73:10, Ex. 4; 73:20-74:8, Ex. 6. To the extent that Plaintiff argues that he was never told that he violated these specific policies, the undisputed evidence shows that *he never asked*. *Id.* at 132:22-136:23; *id.* at 161:17-163:18, Ex. 21. In any event, and as evidenced by the dearth of any authority in support of such an assertion in Plaintiff's Opposition—the WARN Act contains no obligation to notify an employee of the specific policies they violated before they can be terminated for cause.

Plaintiff points to the fact that Twitter "attempt[ed] to bring him back to the job" after he was terminated. Opp. at 15-16. However, the fact that a different manager, Behnam Rezaei, emailed Plaintiff to inquire whether he would consider returning after he was terminated is immaterial and does not retroactively convert Plaintiff's *firing* on November 15 into a *layoff*. Notably, Plaintiff never responded to Rezaei's email and learned nothing about whether Twitter was actually interested in having him return to work, or under what circumstances. Meckley Decl., ¶ 2, Ex. 1 (Adler Tr.) at 158:6-19. Plaintiff has not presented any evidence other than the email

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco

-7-

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
Case No. 3:23-cv-01788-JD

from Rezaei and nothing that indicates Plaintiff's November 15 termination was a layoff, as opposed to a firing for cause. At most, any potential reconsideration as to the level of appropriate discipline for Plaintiff's Slack posts is an issue that falls squarely within the Company's business judgment, and it is well settled that a court should not "act as a super personnel department that second guesses employers' business judgments." *Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003) (internal quotations omitted); *see also Shokri v. Boeing Co.*, 311 F. Supp. 3d 1204, 1221 (W.D. Wash. 2018), *aff'd*, 777 F. App'x 886 (9th Cir. 2019) (internal citations omitted) ("The Court's role is to remedy discrimination, not to assume the role of a super personnel department[ ], assessing the merits—or even rationality—of employers' nondiscriminatory business decisions."). Even "foolish or trivial or even baseless" reasons for a termination are valid if honestly believed by an employer. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (internal citation omitted); *Kouame v. DAL Glob. Servs., LLC*, 292 F. Supp. 3d 1154, 1164 (W.D. Wash. 2018) ("DGS only needed to 'honestly believe' its legitimate, nondiscriminatory reasons for terminating Mr. Kouame; the reasons do not have to be objectively true."). Here, no dispute exists that Plaintiff made the Social Watercooler Slack posts or that these posts led Twitter to fire Plaintiff. And while Plaintiff self-servingly argues that his posts were meant as a "joke," the undisputed evidence from Mr. Stanley's testimony shows that the Twitter Information Security Team did not interpret them as such.

### C. Defendant is Entitled to Summary Judgment on Plaintiff's California WARN Act Claim.

Plaintiff argues that Defendant failed to address the California WARN Act in its Motion. Opp. at 8-10. That is clearly not the case. Defendant cited the California WARN Act and Defendant's arguments applied equally to Plaintiff's claims under both the federal and California WARN Acts, as "[t]he California WARN Act is similar to the federal WARN Act in most respects." *See Gunderson v. Alta Devices, Inc.*, 2021 WL 4461569, at *3 (N.D. Cal. Sept. 29, 2021); *see also* Mot. at 7-10.

Plaintiff also argues that employees fired for cause are not exempt from the California WARN Act's protections. *See, e.g.,* Opp. at 10 ("Thus, the lack of any language specifically

excluding employees terminated for cause from California WARN Act coverage indicates that these employees are protected by the statute."). Plaintiff's argument lacks merit for multiple reasons.

First, the argument is contradicted by the plain language of the statute. Specifically, the California WARN Act states:

> An employer may not order a *mass layoff*, relocation, or *termination* at a covered establishment unless, 60 days before the order takes effect, the employer gives written notice of the order to the following: (1) The employees of the covered establishment affected by the order.

Labor Code section 1401(a)(1) (emphasis added).

The terms "mass layoff" and "termination" have precise meanings as defined in Labor Code section 1400.5:

> (c) "Layoff" means a separation from a position for lack of funds or lack of work.
> (d) "Mass layoff" means a layoff during any 30-day period of 50 or more employees at a covered establishment.
> (e) "Relocation" means the removal of all or substantially all of the industrial or commercial operations in a covered establishment to a different location 100 miles or more away.
> (f) "Termination" means the cessation or substantial cessation of industrial or commercial operations in a covered establishment.

Here, it is undisputed that Plaintiff did not lose his employment because of a "layoff" as defined in the statute because he has not presented any evidence that he was separated from his position "for lack of funds or lack of work." Rather, the only admissible evidence in the record is that Twitter fired Plaintiff from his position because the Information Security Team determined that his Slack posts created an insider threat risk that violated Company policy.

Nor was Plaintiff subject to a "termination" as defined in the California WARN Act. The statute defines "termination" narrowly to mean "the cessation or substantial cessation of industrial or commercial operations in a covered establishment." *Id.* § 1400.5(f). There is no dispute that X did not cease operations in Adler's place of employment, nor is there any dispute that Plaintiff's employment did not end due to a cessation of operations.[2] Thus, based upon the plain language of

---

[2] Similarly, no dispute exists that a "relocation" has not occurred here. A "relocation" means the removal of all or substantially all of the industrial or commercial operations in a covered establishment to a different location 100 miles or more away. Labor Code section 1400.5(e).

the statute, Plaintiff's termination was outside the coverage of the California WARN Act. Indeed, Plaintiff cites no cases applying California WARN Act requirements to an employee fired for cause, which is not surprising given the statutory language quoted above.

Second, under Plaintiff's interpretation of the statute, a company undergoing a mass layoff could *never* simultaneously fire an employee without first providing 60 days' notice. *See* Opp. at 9 ("Under the California WARN Act, however, an employer is liable to an employee 'who lost his or her employment.' Cal. Lab. Code § 1402(a)."). Such an interpretation would lead to absurd results clearly inconsistent with the intent underlying the statute. For example, under Plaintiff's interpretation a company could conduct a mass layoff, but at the same time, a worker not subject to the layoff stabs a co-worker. The company could not immediately fire the attacker for cause and instead would have to provide the knife-wielding employee with 60 days' California WARN notice. Neither the legislative history behind the California WARN Act nor the relevant case law supports such an absurd result.

Third, the California WARN Act was intended simply to supplement the federal WARN Act by requiring notification for layoffs, terminations, and relocations affecting fewer employees than the federal threshold and to "give communities a chance to prepare for the impact of large layoffs which do not trigger notification under the [federal] WARN Act." *MacIsaac v. Waste Management Collection & Recycling, Inc.*, 134 Cal.App.4th 1076 (2005) (quoting S. Rules Comm., Third Reading Floor Analysis of Assemb. Bill No. 2957, at 1, 4 (Aug. 27, 2002)). Nothing in the legislative history indicates an intent to apply the California WARN notice requirements to employees fired for cause. On the contrary, both the federal and California statutory texts are entirely consistent on this point, *e.g.*, an employee "discharge[d] for cause" (federal WARN Act language) equally was not fired for "lack of funds or lack of work" (CA WARN Act language) – and thus an employee like Plaintiff Adler who was fired for violating a company policy would be exempt from coverage under both Acts.

### III.   DEFENDANT'S EVIDENTIARY OBJECTIONS

Plaintiff's Opposition is replete with citations to evidence that is wholly irrelevant to Plaintiff's WARN Act claims and has nothing at all to do with his termination. Given its total

lack of relevance, Defendant can only assume Plaintiff's introduction of this evidence is simply an attempt by his counsel to smear Defendant in a prejudicial and inflammatory manner to further his counsel's so-called "subspeciality in billionaire justice."[3]  Pursuant to Local Rule 7-3(c), Defendant submits the following objections to **Exhibits 2, 3, 4, 12, and 14** pursuant to Federal Rules of Evidence 401, 402, and 403. This evidence is not admissible and should not be considered when ruling on Defendant's Motion.

### A.   Exhibit 2: Testimony from Elon Musk

Plaintiff attempts to cloud the record with irrelevant testimony from Elon Musk, including:

34:2-35:1: Testimony regarding Twitter's financial condition in late October 2022 has no bearing on whether Plaintiff's November 15 termination was a layoff, as opposed to a firing for cause. Fed. R. Evid. 401, 403.

37:13-38:23; 167:1-20: Plaintiff was fired on November 15, 2022.  Yet inexplicably, Plaintiff seeks to introduce Mr. Musk's testimony relating to the "Fork in the Road" email that was sent to employees on November 16, 2022 – *after Plaintiff was fired*.  It is undisputed that Plaintiff never received the Fork in the Road email, and it has zero relevance to his being fired for his Slack posts.  Fed. R. Evid. 401, 403.

91:12-99:24: Plaintiff cites eight pages of deposition testimony for the proposition that Musk engaged in "extreme cost-cutting" after the acquisition.  This testimony almost exclusively focuses on Musk's impressions of prior management's spending on various vendor contracts. ECF 111-3, Ex. 2 to Opp., at 91-99.  But Musk's assessment of prior management's wasteful spending and his assessment of the necessity of certain vendor costs is completely irrelevant to Plaintiff's termination and has no bearing whatsoever to Plaintiff being fired for his Slack posts. Fed. R. Evid. 401, 403.

196:5-24; 199:1-20: Plaintiff cites to Musk testimony regarding whether Twitter conducted a disparate impact analysis related to the November 4 RIF.  However, it is undisputed

---

[3] Issie Lapowsky, *Elon Musk Keeps Stiffing People. She Keeps Suing Him*, VANITY FAIR, Jun. 20, 2025, https://www.vanityfair.com/news/story/shannon-liss-riordan-elon-musk?srsltid=AfmBOop1smRX0aD5faH-UMideJXiP2DipSRrrR5KcQOLfEFCNaokyHGy ("'I've developed a subspecialty in billionaire justice,' Liss-Riordan says.").

that Plaintiff was not laid off in the November 4 RIF, and it is further undisputed that Plaintiff is a white male under age 40 and has not alleged any claim for discrimination. Whether any disparate impact analysis was performed for the November 4 RIF is clearly not relevant to any issue in this case. Fed. R. Evid. 401, 403.

### B. Exhibit 12: WARN Notice Sent to Employees Who Voluntarily Resigned In Response to the Fork in the Road Email

Plaintiff seeks to introduce a WARN Notice related to the "Fork in the Road" email that was sent to on November 16, 2022 – *the day after Plaintiff was fired*. *See* Plaintiff's Ex. 12. It is undisputed that Plaintiff never received the Fork in the Road email and it has zero relevance to his being fired for his Slack posts. Any evidence relating to the Fork in the Road offer is not relevant to the resolution of Plaintiff's federal and California WARN claims.

### C. Exhibits 3, 4, 14: Communications from Elon Musk

Exhibit 3: Plaintiff cites Exhibit 3, which pertains to Musk's repainting of the "w" in the Twitter sign, as an example of Musk's "humor." This exhibit has nothing to do with the circumstances of Plaintiff's separation from Twitter. Further, the prejudice of admitting this exhibit far outweighs any probative value that it may have. Fed. R. Evid. 401, 403. It should therefore be excluded.

Exhibit 4: Plaintiff cites to Exhibit 4, which contains Musk's musings—prior to his acquisition of Twitter—on a potential institute for higher education as another example of Musk's "humor." Again, this social media post has no bearing whatsoever on the sole issue in this case: whether Plaintiff was terminated for cause or laid off. Moreover, Exhibit 4 predates Musk's ownership of Twitter. Exhibit 4 is therefore irrelevant. Fed. R. Evid. 401, 403. Exhibit 4 is also inadmissible hearsay to which no exception applies. Fed. R. Evid. 801(c), 802, 805. Exhibit 4 is not admissible as a party-opponent statement because Musk made this Tweet in his personal capacity when he was not an officer or director of Twitter. And Musk is not (nor has he ever been) a party to this proceeding. Musk's earlier statement as a private citizen is not admissible.

Exhibit 14: Exhibit 14, which is a text message discussing the dietary habits of some segment of Twitter employees, has no bearing on whether Plaintiff was fired because his Slack

posts in November 2022 raised concerns of insider threat risk for Twitter's Information Security Team and violated Company policy. The only conceivable purpose of introducing this exhibit is to present Musk in an unfavorable light. This exhibit is irrelevant to this case, and the prejudice of admitting it far outweighs any probative value. It should therefore be held inadmissible. Fed. R. Evid. 401, 403.

### IV. CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion for summary judgment in its entirety and dismiss Plaintiff's claims.

Dated: August 7, 2025

MORGAN, LEWIS & BOCKIUS LLP

By  */s/ Eric Meckley*
Eric Meckley
Brian D. Berry
Ashlee Cherry
Attorneys for Defendant
X CORP. f/k/a TWITTER, INC.