MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
1400 Page Mill Road
Palo Alto, CA 94304
Tel:    +1.650.843.4000
Fax:    +1.650.843.4001

Attorneys for Defendant
X CORP. f/k/a TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EITAN ADLER,<br><br>                 Plaintiff,<br><br>           vs.<br><br>TWITTER, INC. and X CORP.,<br><br>                 Defendants. | Case No. 3:23-cv-01788-JD<br><br>**DEFENDANT X CORP.'S OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER COMPELLING ELON MUSK TO APPEAR AND TESTIFY AT TRIAL**<br><br>Date:   August 28, 2025<br>Time:   10:00 a.m.<br>Judge:  Hon. James Donato |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S OPPOSITION TO
MOTION TO COMPEL RE: ELON MUSK
Case No. 3:23-CV-01788-JD

## I. INTRODUCTION

Plaintiff Eitan Adler's attempt to force Elon Musk to testify in this case is clearly improper, both procedurally and substantively, and should be denied.

First, from a procedural standpoint, Plaintiff has not served Musk with any subpoena, which is a condition precedent to seeking to compel his appearance at trial. Plaintiff's Motion is fatally premature in seeking to compel compliance with a subpoena that has never been served. Given this undisputed fact, the Court need not look further and should deny of the Motion outright. Even if Plaintiff had served Musk with a trial subpoena (which has not occurred), Musk is not a party to this action and is outside the Court's subpoena power under F.R.C.P. 45(c) and, as a result, he cannot be called as a witness to testify at trial. In any event, Musk has already appeared for a deposition in this case and been questioned by Plaintiff's counsel for an entire day, and his deposition testimony can be played at trial in lieu of in-person testimony.

Second, from a substantive standpoint, the ultimate issue in this case is whether Plaintiff was fired for cause on November 15, 2022 as a result of his posts on a Company Slack channel in which Plaintiff supported the use of a computer command that would shut down the entire Twitter site. Any contemplated testimony from Musk has no real bearing on the decision to fire Plaintiff, because *other* witnesses identified Plaintiff as a security risk/insider threat and *other* witnesses decided to fire Plaintiff. Musk had no direct involvement in either of these actions. Musk is an apex witness who has no unique, non-repetitive firsthand knowledge of any facts relevant to the issues in this case, as demonstrated by his deposition testimony (discussed *infra*). Other witnesses, whom Plaintiff's counsel already has deposed at length, can and will testify to the circumstances surrounding and reasons for Plaintiff's termination – Musk has nothing to say about those issues. Indeed, Plaintiff's counsel has not identified and cannot produce any evidence that Musk has even heard of Plaintiff let alone possesses any unique first-hand knowledge of the reasons for Plaintiff's firing.

As should be obvious, Plaintiff's effort to compel Musk to appear at trial in this case is simply a transparent attempt by his counsel to harass and inconvenience Musk and advance Plaintiff

counsel's so-called "subspeciality in billionaire justice."[1] Given Musk's status as an apex witness with no unique knowledge of Plaintiff's termination, the Court should not indulge Plaintiff counsel's desire to turn a straightforward trial on a single issue into a publicity side-show. For these reasons, Plaintiff's Motion for an Order Compelling Elon Musk to Appear and Testify at Trial must be denied.

## II.     ARGUMENT

### A.     Plaintiff's Motion is Premature and Procedurally Improper.

Plaintiff's Motion places the proverbial "cart before the horse." While Plaintiff seeks an order compelling Elon Musk to testify at trial, Plaintiff has missed the critical first step of the process, which is actually serving Musk with a trial subpoena pursuant to F.R.C.P. 45 – a necessary prerequisite for the relief that Plaintiff seeks. *See Fausto v. Credigy Servs. Corp.*, No. C 07-05658 JW, 2009 WL 701012, at *1 (N.D. Cal. Mar. 11, 2009) (Rule 45 "requires an issuance of a subpoena in order to compel a non-party witness to appear for deposition or trial."). Plaintiff's motion to compel Musk to testify at trial is premature and missing the key procedural prerequisite (*i.e.*, actual service of a trial subpoena), and therefore his motion should be denied on this basis. *See, e.g., Pegoraro v. Marrero*, 281 F.R.D. 122, 128 (S.D.N.Y. 2012) ("Absent evidence that the witnesses at issue … failed to comply with subpoenas compelling their attendance, pursuant to Rule 45, the Court has no authority to compel witnesses, including the parties, to attend any depositions."); *see also Orraca v. Washborn*, 2011 WL 4352716, at *1 (W.D.N.Y. Sept. 15, 2011) ("In the absence of proof of demands actually being served upon defendants, a motion to compel [defendants'] response is premature."); *Creative Sci. Sys., Inc. v. Forex Cap. Markets, LLC*, No. C 04-3746 JF RS, 2006 WL 3826730, at *2 (N.D. Cal. Dec. 27, 2006) ("[D]efendant is correct that because no subpoenas have yet been served, it would be premature to conclude that any or all of the individuals plaintiff proposes to subpoena should in fact be required to appear.").

///

---

[1] Issie Lapowsky, *Elon Musk Keeps Stiffing People. She Keeps Suing Him*, VANITY FAIR, Jun. 20, 2025, https://www.vanityfair.com/news/story/shannon-liss-riordan-elon-musk?srsltid=AfmBOop1smRX0aD5faH-UMideJXiP2DipSRrrR5KcQOLfEFCNaokyHGy ("'I've developed a subspecialty in billionaire justice,' Liss-Riordan says.").

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-2-

DEFENDANT'S OPPOSITION TO MOTION
TO COMPEL RE: ELON MUSK Case No.
3:23-cv-01788-JD

### B.  Elon Musk is Outside of the Court's Subpoena Power.

Even if Plaintiff had served Musk with a subpoena (Plaintiff has failed to do so), Plaintiff has not shown that Musk is subject to the Rule 45 subpoena power.  A subpoena may compel a person's attendance at trial only if the trial is "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or "within the state where the person resides, is employed, or regularly transacts business in person, if the person is a party or a party's officer or is commanded to attend a trial and would not incur substantial expense." F.R.C.P. 45(c)(1)(A)-(B). Musk does not reside in California nor is he employed in California.  Nor is there any evidence that he "regularly transacts business in person" in California.  For quite some time now, X Corp. has been incorporated in Nevada and had its headquarters and principal place of business in Texas.  The mere presence of some of Musk's businesses in California, without more, is insufficient.  To properly subpoena Musk for trial, Plaintiff needed to make a showing as to Musk's presence in the state of California.  *See, e.g., In re NFL's*, No. ML 15-02668 PSG (SKX), 2024 WL 3915910, at *3 (C.D. Cal. May 15, 2024) ("Mr. Schroeder's number of in-person business trips to Los Angeles in his current position is insufficient to qualify as regularly transacting business in Los Angeles."); *see also Perez v. Progenics Pharms., Inc.*, No. 10-CV-08278 LAP, 2015 WL 4111551, at *2 (S.D.N.Y. June 24, 2015) (finding attendance at quarterly meetings to "not appear to fit within the meaning of Rule 45(c)(1)(A)'s requirement that a witness only be forced to appear at trial in person within 100 miles of where she 'regularly transacts business in person'").  Plaintiff has not made any showing at all to establish that Musk's regularly transacted business in-person in California.

In his Motion, Plaintiff also argues that "Mr. Musk is *effectively* a party to this litigation (even though he is not named individually as a defendant)" and therefore "Federal Rule of Civil Procedure 45's subpoena requirement (for nonparty witnesses) does not apply to Mr. Musk[.]" Mot. at 4 (emphasis added).  Plaintiff is wrong on multiple counts. First, there is no evidence to suggest that Musk is "effectively a party" and it is unclear what that characterization even means or how it could be measured.  The simple fact is that Musk is *not* a party to this action and no tortured argument by Plaintiff can change that fact.  Plaintiff's attempt to insert the work "effectively a party" into the plain language of Rule 45 has no legal basis whatsoever. Second, the authorities to

which Plaintiff cites in support of this argument are inapposite. Plaintiff's citation to *Fausto v. Credigy Services Corporation* is clearly distinguishable. There, the court determined that the subpoena requirements of Rule 45 did not apply because the witness at issue had been designated as a Rule 30(b)(6) corporate witness and was planning to testify on behalf of the defendants regardless. No. C 07-05658, 2009 WL 701012, at *1 (N.D. Cal. Mar. 11, 2009). Here, Defendant has not designated Musk as a Rule 30(b)(6) witness because Musk has no specific or unique knowledge relating to Plaintiff's termination. Nor is Defendant planning to call Musk to testify at trial. As a result, *Fausto* does not apply here.

Plaintiff's citation to *Cadent Ltd. v. 3M Unitek Corp.* is even more misplaced, as *Cadent* does not discuss Rule 45 at all. The footnote to which Plaintiff cites in his Motion discusses whether it is necessary to subpoena an individual who has been served with a *deposition notice* pursuant to Rule 30(b)(1)—not Rule 45. *See* Mot. at 4 (citing footnote 1 in *Cadent* and stating that "'[i]t is not necessary to subpoena' an officer of a party corporation"); *see Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 628 n. 1 (C.D. Cal. 2005) ("Under Rule 30(b)(1), it is well recognized that if the corporation is a party, the notice compels it to produce any officer, director or managing agent named in the deposition notice. It is not necessary to subpoena such individual.") (internal quotations omitted). Plaintiff's attempt to mislead the Court with incorrect citations should not be countenanced.

So, in addition to the fact that Plaintiff has not served Musk with a subpoena to appear at trial and thus has no basis to compel his testimony, Plaintiff also has not demonstrated that the strict requirements set forth in Rule 45 have been satisfied. As a result, ordering Musk to testify at trial would be procedurally improper.

### C. Elon Musk is an Apex Witness Who Should Not Be Called to Testify.

It is the moving party's burden to demonstrate the relevance of information sought by way of a motion to compel. *See, e.g., Vasudevan Software, Inc. v. Microstrategy Inc.*, No. 11-CV-06637-RS-PSG, 2013 WL 1366041, at *1 (N.D. Cal. Apr. 3, 2013) ("Upon a motion to compel pursuant to Fed.R.Civ.P. 37(a)(3), the moving party has the burden of demonstrating relevance."). Plaintiff has made no such showing here. Elon Musk represents the quintessential "apex" witness

given his role as X Corp.'s Executive Chairman. *See, e.g., Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) ("On the proverbial sliding scale, the closer that a proposed witness is to the apex of some particular peak in the corporate mountain range[,] the more appropriate the protections of the apex doctrine become."); *Amazon.com, Inc. v. C.I.R.*, 108 T.C.M. (CCH) 588 (T.C. 2014) (quashing subpoena to take the testimony of Jeff Bezos under Federal Rule of Civil Procedure 45 because Bezos "is the CEO of one of the largest companies in the United States"); *Affinity Labs of Tex. v. Apple, Inc.*, No. 09-4436 (CW) (JL), 2011 WL 1753982, at *17 (N.D. Cal. May 9, 2011) (denying motion to compel deposition of Steve Jobs). Accordingly, to compel Musk to testify at trial, Plaintiff must demonstrate that Musk "has unique first-hand, non-repetitive knowledge of the facts at issue in the case" *and* that Plaintiff has "exhausted other less intrusive discovery methods." *K.C.R. v. Cty. L.A.*, No. CV 13-3806 PSG (SSx), 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014) (Segal, J.).

Plaintiff cannot make the requisite showing. Here, Plaintiff has deposed four other witnesses (Christopher Stanley, James Musk, Andrew Musk, and Ross Nordeen) who were each personally involved in some capacity with the insider threat review that led to Plaintiff's termination from the company, and Plaintiff also has deposed a Rule 30(b)(6) corporate designee (Lauren Wegman) regarding the reasons for Plaintiff's termination and the fact that he was not laid off and thus not entitled to WARN Act notice. Any live testimony that Plaintiff would attempt to elicit from Elon Musk at trial would add nothing to the prior testimony of these other witnesses and, at most, would be entirely repetitive of this prior testimony, particularly because there is no evidence whatsoever that Elon Musk possesses any unique knowledge related to Plaintiff, the circumstances of his separation from Twitter, or his WARN Act claims.

Notably, there are also far less intrusive means for presenting Musk's testimony, because Plaintiff *has already deposed Musk*. Specifically, Plaintiff has a 377-page deposition transcript of Musk's testimony and a six-hour and thirty-six-minute video of Musk's testifying regarding any of the potentially relevant information known to Musk, including Musk's lack of knowledge regarding the basis for Plaintiff's termination from the Company. To the extent that Plaintiff contends that he needs Musk's testimony at trial (he does not), he can play Musk's videotaped deposition

testimony.

### i. Plaintiff Has Not Shown That Elon Musk Has Unique, Non-Repetitive Firsthand Knowledge of Relevant Facts.

The simple fact is that Musk has no firsthand knowledge of the relevant facts that underlie the WARN Act claims at issue in this case. Indeed, Plaintiff has not provided any explanation or description regarding the supposed "firsthand knowledge" that Musk has relating to the facts of this case. Mot. at 4. This is not surprising, because Musk has none. In May 2024, Plaintiff's counsel deposed Musk for nearly seven hours regarding his acquisition of Twitter and the ensuing personnel and policy changes at the Company. The only testimony from Musk that arguably could be construed as bearing upon the process that led to Plaintiff's termination was the following:

> Q: Who did you ask to try to find those people?
>
> A: I asked the [ ] information security team. . . . I just simply said, "We clearly have people who are violating the nondisclosure -- nondisclosure agreement, leaking confidential information."
> At one point, we had some people actually put instructions on how to delete the entire Twitter database on the -- on the Slack channel. . . . How to delete and destroy the company on the public Slack channel. Now, I'm sure you would agree that such people should not continue to be employed.

Declaration of Eric Meckley ("Meckley Decl."), ¶ 5, Ex. 4 (E. Musk Dep. Tr.), 41:4-42:1.

This constitutes the only testimony from Musk that could be considered remotely relevant to Plaintiff's claims. There is nothing to suggest that Musk knows that Plaintiff Adler was terminated for posting the "kill command" for the website in Slack, and there is nothing to suggest that Musk was aware of Plaintiff's termination at the time that it happened. Nor is there any evidence to suggest that Musk even knew who Eitan Adler was. Plaintiff has made no showing that Musk has any additional knowledge relating to Plaintiff beyond that about which he has already testified. Thus, compelling Musk's testimony would be completely improper, given his apex witness status. *Sale v. Merrill Lynch*, No. CV171904SJOMRWX, 2017 WL 10562586, at *1 (C.D. Cal. Nov. 29, 2017) ("[W]hen a senior corporate executive is removed from the daily subjects of the litigation and demonstrably has no unique personal knowledge of the fact at issue," compelling that official's testimony is "improper.").

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-6-

DEFENDANT'S OPPOSITION TO MOTION
TO COMPEL RE: ELON MUSK Case No.
3:23-cv-01788-JD

      Plaintiff makes the ludicrous argument that Elon Musk is the only witness who has relevant knowledge. The contrary is true – he is the witness who *lacks* any relevant knowledge. Numerous other witnesses have first-hand knowledge regarding the circumstances that led to Plaintiff's termination and whether he was fired or laid off. During their depositions, James Musk, Andrew Musk, and Ross Nordeen each testified that they personally participated in the security review for inside threats, and described the methods used in the review (including, for example, the examination of Slack posts showing the employees making comments demonstrating security risk and/or insubordination). Meckley Decl., ¶ 2, Ex. 1 (J. Musk Dep.), 160:2-4; 160:11-16, 162:15-18, 163:2-164:3, 164:14-20; *id.* at ¶ 3, Ex. 2 (A. Musk Dep.), 170:5-11, 170:13-171:10, 173:22-174:3; *id.* at ¶ 4, Ex. 3 (Nordeen Dep.), 23:16-24:20; 32:19-33:6. And each testified unequivocally that the employees who were found to be security risks and/or insubordinate like Plaintiff were not laid off but rather were terminated for cause. *Id.* at Ex. 1 (J. Musk Dep.), 159:2-160:1 ("No, those individuals weren't laid off. They were fired."); *id.* at Ex. 2 (A. Musk Dep.), 187:4-13 ("I understand that there was a group let go as a security threat [for] cause."); *id.* at Ex. 3 (Nordeen Dep.), 124:23-125:11 ("[T]hey were terminated for cause not let go.").

      In addition, Christopher Stanley testified at length as to the reasons why Plaintiff was fired for cause (as opposed to being laid off). Meckley Decl., ¶ 6, Ex. 5 (Stanley Dep.), 102:13-16 ("Q: Did you consider Mr. Adler to be an internal threat to the company based on his Slack messages? A: Absolutely."); *id.* at 99:6-100:17, 105:1-5 (describing Plaintiff's messages as "quite severe" and recalling Adler as "talking about killing services and participating in causing harm to our systems"); 108:17-109:11.

      Corporate designee Lauren Wegman testified in her deposition that Adler was terminated for cause and, accordingly, he did not receive WARN Act notice. *Id.* at ¶ 7, Ex. 6 (Wegman Dep.), 65:21-66:9; 84:12-22. Except for Wegman's deposition (which Plaintiff chose not to videotape), all of these witnesses' depositions were videotaped by Plaintiff and can be played at trial. Plaintiff has not shown that Musk has any unique, non-repetitive, firsthand knowledge separate and apart from the testimony of Stanley, J. Musk, A. Musk, Nordeen or Wegman.

      Plaintiff cites several cases to support his argument that the requirements of the apex

doctrine have been satisfied here.[2]  *See* Mot. at 5-6 (collecting cases).  But these cases are distinguishable because in each of these cases, the party seeking to compel testimony from the apex witness proffered evidence demonstrating that the apex witness had *firsthand knowledge* of relevant facts.  *See, e.g., Apple Inc.*, 282 F.R.D. at 264 (Samsung's CEO was compelled to testify at a deposition after Apple cited emails and meeting minutes indicating that Samsung's CEO presided over meetings and discussions involving the products that allegedly infringed on Apple's patents, including providing a specific directive that directly related to the alleged infringement at issue); *see also Opperman v. Path, Inc.*, No. 13-CV-00453-JST, 2015 WL 5852962, at *2 (N.D. Cal. Oct. 8, 2015) (the plaintiff proffered evidence that the apex witness to be examined—the CEO of a 41-person company—"personally participated in the decision" at issue in the case and was therefore a "percipient witness").  Here, Plaintiff has put forth no evidence that Musk "personally participated in the decision" to terminate Plaintiff.  Nor is there any evidence that Musk retained oversight of the security review exercise or made any specific directives to terminate any individual employees.  There is nothing in the record to suggest that Musk has any firsthand knowledge related to the facts of this case at all.  The apex doctrine therefore has not been satisfied, and there is no basis for compelling Musk's testimony.

### ii. Plaintiff Has Failed to Exhaust Less Intrusive Means for Obtaining Relevant Testimony.

In addition to the fact that Musk does not possess unique, non-repetitive firsthand knowledge relevant to this case, he should not be compelled to testify at trial because there are less intrusive means for obtaining relevant testimony.  As set forth above, Stanley, J. Musk, A. Musk, Nordeen and Wegman are all lower-level witnesses who possess firsthand knowledge regarding the insider threat review that led to Plaintiff's termination for cause from the company.  For this

---

[2] Plaintiff argues that the apex doctrine "usually applies to *depositions*."  Mot. at 5 (emphasis in original).  Again, Plaintiff is wrong.  The "apex doctrine" can also be applied to protect a senior executive from being compelled to appear at trial.  *See, e.g., Pinn, Inc. v. Apple Inc.*, No. SA19CV01805DOCJDE, 2021 WL 4775969, at *1 (C.D. Cal. Sept. 10, 2021) (granting motion in limine to preclude calling Apple's Senior Vice President to testify at trial under the apex doctrine); *see also Reddy v. Nuance Commc'ns, Inc.*, No. 5:11-CV-05632-PSG, 2015 WL 4648008, at *4 (N.D. Cal. Aug. 5, 2015) (Grewal, J.) (granting motion in limine to preclude calling chief executive officer as a witness, noting the witness's lack of apparent knowledge regarding the case).

1  reason alone, compelling Musk to testify at trial would be improper. *Groupion, LLC v. Groupon, Inc.*, No. 11-0870 MEJ, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012) ("Where a high-level decision maker 'removed from the daily subjects of the litigation' has no unique personal knowledge of the facts at issue, a deposition of the official is improper. This is especially so where the information sought in the deposition can be obtained … from depositions of lower-level employees with more direct knowledge of the facts at issue.") (internal citations omitted).

And even if the Court determines that Musk's testimony is necessary—which it should not – Musk does not need to testify live in court. Defendant does not dispute that relevant portions of Musk's deposition testimony may be offered in lieu of live testimony under Federal Rule of Civil Procedure 32(a)(4), and Defendant would not oppose the introduction into evidence in this proceeding of those portions of Musk's testimony that are relevant to Plaintiff's termination.

### iii. Compelling Elon Musk to Testify Would Condone Harassment.

Allowing for the testimony of high-level executives creates "a tremendous potential for abuse or harassment." *See Apple Inc.*, 282 F.R.D. at 263. Executives have a right to be protected, and the courts "have a duty to recognize his vulnerability." *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985) (denying Plaintiff's bid to depose Lee Iacocca, Chrysler's then-President, because he "is a singularly unique and important individual who can be easily subjected to unwarranted harassment and abuse.").

Plaintiff's motion to compel Musk to testify—despite his lack of unique knowledge of the relevant facts—underscores Plaintiff's flagrant attempt to usurp the judicial process to create a media side show and courtroom circus.[3] There can be no doubt that Plaintiff's counsel will publicize the fact that this Court compelled Musk to testify, thereby thrusting Defendant into wide and unsolicited media attention. Should Plaintiff's request be granted, Plaintiff's simple claims under the federal and California WARN Acts will no doubt be overshadowed by Musk's (limited) testimony, coopting this otherwise straightforward case into a dog and pony show. It should not be

---

[3] Plaintiff's counsel has admitted that she plans to question Musk regarding the "jokes" Musk allegedly makes online. Dkt. 117 at 6. This digression would devolve into whataboutisms. Whether Musk makes jokes online is irrelevant to whether Plaintiff was terminated for cause because he posed a security threat.

permitted.

### III. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion for Order Compelling Elon Musk to Appear and Testify at Trial.

Dated: August 21, 2025                                MORGAN, LEWIS & BOCKIUS LLP

By  */s/ Eric Meckley*
Eric Meckley
Brian D. Berry
Ashlee Cherry

Attorneys for Defendant
X CORP. f/k/a TWITTER, INC.