# EXHIBIT 5

Case 3:23-cv-01788-JD   Document 120-6   Filed 08/21/25   Page 2 of 14

Eitan Adler vs                    Attorneys Eyes Only              Christopher Stanley
Twitter, INC. and X Corp.                                          May 22, 2024

```
 1                        JAMS ARBITRATION
 2             BEFORE ARBITRATOR MICHAEL LOEB, ESQ.
 3
 4   JESSICA PAN,
 5                  Claimant,
                                         Jams No.: 1100115270
 6              v.
 7   TWITTER, INC.,
 8                  Respondent.
 9   _____
10
11
12        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
13
14            DEPOSITION OF CHRISTOPHER STANLEY
15
16                      May 22, 2024
17                       10:08 a.m.
18
19        1 Market Street, Spear Street Tower
20               San Francisco, California
21
22
23   REPORTED BY:
24   Siew G. Ung
25   CSR No. 13994, RPR, CSR
```

Eitan Adler vs                     Attorneys Eyes Only              Christopher Stanley
Twitter, INC. and X Corp.                                            May 22, 2024

2

```
 1   REMOTE APPEARANCES:

 2


 3       For Claimant:

 4           LICHTEN & LISS-RIORDAN, PC
             BRADLEY MANEWITH, ESQ.
 5           729 Boylston Street, Suite 2000
             Boston, Massachusetts 02116
 6           bmanewith@llrlaw.com
             617.994.5800
 7

 8       For Respondent:

 9           QUINN EMANUEL URQUHART & SULLIVAN, LLP
             ERIC MECKLEY, ESQ.
10           VICKI PARKER, ESQ.
             865 South Figueroa Street, Floor 10
11           Los Angeles, California 90017
             eric.meckley@morganlewis.com
12           vickiparker@quinnemanuel.com
             213.443.3000
13
             X
14           MARY HANSBURY, ESQ. (in-house)
             ADAM MEHES, ESQ. (in-house, remote)
15

16       Also Present:

17           Frank Quirarte, Videographer

18

19

20

21

22

23

24

25
```

3

1 INDEX TO EXAMINATIONS

2

3 WITNESS: CHRISTOPHER STANLEY

4 EXAMINATION                                                  PAGE

5 BY MR. MANEWITH                                                 6

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| Eitan Adler vs<br>Twitter, INC. and X Corp. | Attorneys Eyes Only | Christopher Stanley<br>May 22, 2024 |
|---|---|---|

```
                                                              4
1                    INDEX TO EXHIBITS
2                    CHRISTOPHER STANLEY
3                      May 22, 2024
4            Siew G. Ung, CSR No. 13994, RPR
5    MARKED            DESCRIPTION                  PAGE
6
7    Exhibit 1         November 16, 2022, Email from  146
8                      Elon Musk to team@twitter.com
9                      bcc paulb@twitter.com, Subject:
10                     A Fork in the Road
11                     (X_ARBS_000000288)
12
13   Exhibit 2         November 17, 2022, Direct      149
14                     Messages between Christopher
15                     Stanley and James Musk (X_CORP
16                     ADLR_000000594 to X_CORP
17                     ADLR_000000598)
18
19   Exhibit 3         Messages (X_ARBS_LLR_000000388  160
20                     to X_ARBS_LLR_000000389)
21
22
23
24
25
```

5

1            WEDNESDAY, MAY 22, 2024, 10:08 A.M.
2                       ***
3       THE VIDEOGRAPHER: All right. This is the
4 beginning of media labeled Number 1 in the
5 video-recorded deposition of Christopher Stanley in
6 the Eitan Adler v. Twitter, Inc., and X Corp. being
7 held in the United States District Court for the
8 Northern District of California, San Francisco
9 Division. It's case number 3.23-CV-01788.
10       This deposition is being held at 1 Market
11 Street in Spear Street Tower, San Francisco,
12 California, on May 22, 2024, at approximately
13 10:08 a.m.
14       My name is Frank Quirarte; I'm your legal
15 video specialist. I'm here from Magna Legal
16 Services. Our court reporter today is Siew Ung also
17 in association with Magna Legal Services.
18       At this time will counsel and all present
19 please identify yourself for the record.
20       MR. MANEWITH: Sure. Bradley Manewith on
21 behalf of Plaintiff.
22       MR. MECKLEY: Eric Meckley of Morgan Lewis
23 on behalf of Defendant.
24       MS. PARKER: Vicki Parker of Quinn Emanuel
25 also on behalf of Defendant.

Eitan Adler vs                           Attorneys Eyes Only                       Christopher Stanley
Twitter, INC. and X Corp.                                                          May 22, 2024

6

1           MS. HANSBURY:  Mary Hansbury for X Corp.
2           MR. MEHES:  Adam Mehes for X Corp.
3           THE VIDEOGRAPHER:  Madam Court Reporter,
4  will you please swear in the witness.
5                  CHRISTOPHER STANLEY,
6   having been first duly sworn, was examined and
7                  testified as follows:
8            EXAMINATION BY MR. MANEWITH
9       Q.  All right.  So good morning, Mr. Stanley.
10  As I said, my name is Bradley Manewith.  I represent
11  the plaintiff in this matter.
12           Just for record, I will state that this
13  deposition, while it's been captioned under the
14  Adler matter, pursuant to the party's agreement,
15  it's going to be used across a host of cases
16  between -- that -- between a number of former
17  Twitter employees and the company, so I just want to
18  put that onto the record.
19           Throughout the course of today's
20  deposition, if I refer to the company as Twitter or
21  X Corp., can we agree you understand we are talking
22  about the same entity?
23           I know there's been a name change.
24       A.  Yes.
25       Q.  Okay.  Have you ever been deposed before?

Case 3:23-cv-01788-JD   Document 120-6   Filed 08/21/25   Page 8 of 14

Eitan Adler vs                     Attorneys Eyes Only                Christopher Stanley
Twitter, INC. and X Corp.                                              May 22, 2024

99

1       A.   Not to my knowledge.
2       Q.   Did you send any emails to Steve Davis?
3       A.   It's possible that emails were sent
4  because that was a form of communication that I
5  leveraged.
6       Q.   Okay.  Do you know who Eitan Adler is?
7       A.   I know of him.
8       Q.   What -- how do you know Mr. Adler?
9       A.   I know that he's listed on the thing that
10 we're discussing today.
11      Q.   Okay.  Other than in the context that he
12 brought this lawsuit, do you know anything about
13 Mr. Adler?
14      A.   I am aware of the conversations that he
15 participated in within Slack.
16      Q.   Okay.  What communications or
17 conversations did he have in Slack?
18      A.   My understanding is he participated in a
19 conversation talking about having -- sorry -- having
20 harm to the company.
21      Q.   What specifically do you remember about
22 the supposed conversations on Slack?
23      A.   I specifically remember talking about
24 killing services and participating in causing harm
25 to our systems.

Case 3:23-cv-01788-JD   Document 120-6   Filed 08/21/25   Page 9 of 14

Eitan Adler vs                    Attorneys Eyes Only                Christopher Stanley
Twitter, INC. and X Corp.                                            May 22, 2024

100

1   Q. Was there anything more specifically that
2 you recall about his supposed conversations on
3 Slack?
4   A. The conversation was around killing aurora
5 services and removing data, basically.
6   Q. Anything more that you can recall?
7   A. I believe they were in relation to a post
8 that Elon had made publicly.
9   Q. What post that Elon made -- made -- excuse
10 me -- made public?
11   A. I believe it to be -- I -- I don't know
12 exactly verbatim what the post was, however, the
13 context was apologizing for the latency of some of
14 the system and that we need to fix it.
15   Q. Anything else that you recall about
16 Mr. Adler?
17   A. No.
18   Q. And did you then decide to cut his access?
19   A. I don't think I made that decision.
20   Q. Who do you understand made the decision to
21 cut Mr. Adler's access?
22   A. I don't recall who made it or who
23 initiated it. It's possible that I was given a -- a
24 list to deactivate and he was among them, but I
25 don't remember specifically doing it myself.

102

1  A. Not to my knowledge.
2  Q. Okay. You didn't speak to him with
3 respect to his Slack messages, correct?
4  A. Correct.
5  Q. And so Ross or James told you to cut off
6 Mr. Adler's access?
7  A. I don't recall specifics on exactly who
8 did or didn't tell me to cut specifically Eitan
9 Adler's access.
10  Q. You did cut Mr. Adler's access, though?
11  A. I don't recall if I did or I didn't. It
12 is possible that it was in a list.
13  Q. Okay. Did you consider Mr. Adler to be an
14 internal threat to the company based on his Slack
15 messages?
16  A. Absolutely.
17  Q. So if he was a risk to the company, would
18 you agree that he shouldn't be working there?
19  A. I don't make decisions on who or who
20 shouldn't be working; however, my recommendation
21 would have been, given that example, to cut access.
22  Q. Okay. By "cutting access," does
23 effectively mean terminate somebody?
24  A. Can you define "terminate"?
25  Q. Yeah. Fire them so they're no longer

| Eitan Adler vs Twitter, INC. and X Corp. | Attorneys Eyes Only | Christopher Stanley May 22, 2024 |

```
                                                                   105
 1        Q.  With respect to Mr. Adler, do you believe
 2   that he should have been interviewed to find out
 3   what his position was on the Slack messages?
 4        A.  The messages, as I understand them, were
 5   quite severe, so...
 6        Q.  Okay.  What -- what Slack channel was
 7   this -- were -- were these posted on?
 8        A.  I don't recall.
 9        Q.  Was it at the social watercooler Slack
10   message?
11        A.  I don't recall.  It's possible.
12        Q.  Are you familiar with the social
13   watercooler Slack message channel?
14        A.  I'm familiar with social watercooler
15   channel.
16        Q.  And isn't it true that the social
17   watercooler Slack message channel is a place that at
18   the very top it basically says this is a channel for
19   joking around?
20        A.  I don't recall whether -- what the
21   description of the channel was.
22        Q.  Okay.  Have you ever looked at it?
23        A.  Looked at what?
24        Q.  The social watercooler Slack message, what
25   the description is?
```

Case 3:23-cv-01788-JD   Document 120-6   Filed 08/21/25   Page 12 of 14

Eitan Adler vs                    Attorneys Eyes Only              Christopher Stanley
Twitter, INC. and X Corp.                                           May 22, 2024

108

1  during the very beginning of the acquisition, that
2  tensions were high.  Many people were not happy.
3  Many people were very angry at even my presence
4  being there.  People said many negative things in
5  passing.  It was a very hostile environment.  So
6  regardless of whether or not someone may or may not
7  have been joking, it's not -- it's my job to --
8  during that kind of environment, to assess real risk
9  to the actual company.
10 BY MR. MANEWITH:
11     Q.  Okay.  Without talking to the individual
12 to get context?
13         MR. MECKLEY:  Same objections.
14         THE WITNESS:  Depending on the severity,
15 the context matters.
16 BY MR. MANEWITH:
17     Q.  Okay.  And so given what you read about
18 Mr. Adler, you would -- you -- it is your opinion
19 that he should not be working at Twitter; is that
20 right?
21     A.  Based on the information that I read about
22 destroying the company's services and destroying
23 data, my recommendation for anybody posting about
24 that would be to cut their access.
25     Q.  Okay.  Cut their access and you said,

Eitan Adler vs
Twitter, INC. and X Corp.
Attorneys Eyes Only
Christopher Stanley
May 22, 2024

109

1 then, in your opinion, in your role as a senior
2 director of security of engineering, that you --
3 it's your opinion that they should not be working
4 there because they would be a threat, right?
5     A.  If people are talking about hurting the
6 company and I do not -- and I believe that they
7 should -- and they have the access to do so or even
8 without it, then, no, they should not -- their
9 access should be cut and they should not work for
10 the company if they're going to cause the company
11 harm or talking about causing the company harm.
12     Q.  Mr. Adler was, in fact, fired by Twitter,
13 correct?
14         MR. MECKLEY:  Objection.  Calls for
15 speculation.
16         THE WITNESS:  I don't know what happened
17 with him in regards to his employment.
18 BY MR. MANEWITH:
19     Q.  Okay.  Would it surprise you to know that
20 he was fired?
21     A.  If someone is talking about hurting the
22 company, and I -- my recommendation would be to cut
23 access and for them to no longer work at the company
24 because they have caused harm or are talking about
25 causing harm, I would not be surprised.

Case 3:23-cv-01788-JD   Document 120-6   Filed 08/21/25   Page 14 of 14

Eitan Adler vs
Twitter, INC. and X Corp.
Attorneys Eyes Only
Christopher Stanley
May 22, 2024

198

```
1                   CERTIFICATE OF REPORTER
2
3        I, Siew Ung, a Certified Shorthand Reporter, do
4   hereby certify:
5        That prior to being examined, the witness in the
6   foregoing proceedings was by me duly sworn to testify to
7   the truth, the whole truth, and nothing but the truth;
8        That said proceedings were taken before me at the
9   time therein set forth and were taken down by me in
10  shorthand and thereafter transcribed into typewriting
11  under my direction and supervision;
12       I further certify that I am neither counsel for,
13  nor related to, any party to said proceedings, nor in
14  any way interested in the outcome thereof.
15       In witness whereof, I have hereunto subscribed my
16  name.
17
18
19  5/30/2024
20
21
22
23  _Siew Ung_
24  _____
    Siew Ung
25  CSR No. 13994, RPR, CSR
```